Robert J. Giuffra, Jr.
Sergio J. Galvis
James L. Bromley
Christian P. Jensen
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TV AZTECA, S.A.B. DE C.V.,[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-12217 (__) |

**DECLARATION OF RAFAEL RODRÍGUEZ SÁNCHEZ IN SUPPORT OF THE VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND RELATED RELIEF**

I, Rafael Rodríguez Sánchez, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am the Chief Executive Officer of TV Azteca, S.A.B. de C.V. ("TV Azteca" or the "Debtor"), a *sociedad anónima bursátil de capital variable* organized under the laws of the United Mexican States, and the authorized foreign representative of TV Azteca (in such capacity, the "Foreign Representative") in the *concurso mercantil* proceeding (the "Concurso Mercantil") pending before the First District Court for *Concurso Mercantil* Matters (*Juzgado Primero de*

[1] The last four digits of the Debtor's Mexican federal tax identification number are 4V78. The location of the corporate headquarters and the service address for the Debtor is Periférico Sur 4121, Col. Fuentes del Pedregal, Alcaldía Tlalpan, 14140, Mexico City, Mexico.

*Distrito en Materia de Concursos Mercantiles*), sitting in Mexico City (the "Concurso Court"), Case No. 22/2026-II.

2. I submit this declaration (this "Declaration") in support of the *Verified Petition for Recognition of Foreign Main Proceeding and Related Relief* (the "Verified Petition") filed pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").

3. The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information supplied to me by other members of TV Azteca's senior management, its legal and financial advisors, and, with respect to matters of Mexican law and the Concurso Mercantil, the *Declaration of José Víctor Rodríguez Barrera on Mexican Law in Support of the Verified Petition for Recognition of Foreign Main Proceeding and Related Relief* filed contemporaneously herewith (the "Barrera Declaration"). Where I refer to facts based on information provided by others, such information is true to the best of my knowledge, information, and belief. I am duly authorized to submit this Declaration on behalf of TV Azteca and to act as its Foreign Representative in this chapter 15 case, and if called upon to testify, I could and would testify competently to the matters set forth herein.

4. This Declaration is organized as follows: Section I describes my professional background and authority to act as Foreign Representative. Section II describes TV Azteca and its business. Section III details the events leading to the Concurso Mercantil. Section IV describes prior U.S. proceedings and the New York Litigation, as well as related litigation in Mexico. Section V describes the Concurso Mercantil. Section VI identifies property and interests located in or connected to the United States. Section VII explains the need for chapter 15 relief. Section VIII sets forth the verification of the Verified Petition.

## I. PROFESSIONAL BACKGROUND AND EXPERIENCE

5. I hold a law degree from Universidad La Salle in Mexico City and have more than 25 years of professional experience in the telecommunications and media industries in Mexico and internationally.

6. I joined TV Azteca's legal department in 2000 and was appointed General Counsel in May 2013. In January 2021, I was appointed Chief Executive Officer ("CEO").

7. As CEO, I oversee TV Azteca's business operations and executive management and serve on the Company's Board of Directors. A complete list of TV Azteca's directors and officers is attached hereto as Exhibit A.

8. Through these responsibilities, I have acquired extensive first-hand knowledge of TV Azteca's corporate structure, governance, operations, assets, liabilities, financing arrangements, and strategic decision-making. I am not being offered as an independent expert on Mexican insolvency law; matters of Mexican law are addressed in the Barrera Declaration filed contemporaneously herewith. Barrera Decl. ¶¶ 4–6.

9. TV Azteca, through resolutions of its Board of Directors and a power of attorney dated August 13, 2026, appointed and authorized me to act as its Foreign Representative and to act on behalf of TV Azteca in any legal proceeding outside of Mexico, including this chapter 15 case. A true and correct copy and a certified English translation of each of the resolution and power of attorney are attached hereto as Exhibit B and Exhibit C, respectively. During the conciliation (*conciliación*) stage of the Concurso Mercantil, TV Azteca ordinarily retains the administration of its enterprise under the *conciliador*'s supervision, unless the judge orders its removal under Articles 81 through 83 of the LCM, and no order of the Concurso Court limits the authority of TV Azteca's Board of Directors to grant the appointment and power of attorney described above. Barrera Decl. ¶¶ 70–74.

## II. THE DEBTOR AND ITS BUSINESS OPERATIONS

10. TV Azteca is a Mexican corporation (*sociedad anónima bursátil de capital variable*) with its registered office and principal place of business at Periférico Sur 4121, Colonia Fuentes del Pedregal, Alcaldía Tlalpan, C.P. 14140, Mexico City, Mexico.

11. TV Azteca is majority owned by Comunicaciones Avanzadas, S.A. de C.V., which is the only entity that holds 10% or more of TV Azteca's outstanding equity.

12. TV Azteca is one of the largest producers of Spanish-language television programming in the world. Through its subsidiaries, TV Azteca operates television networks in Mexico, Guatemala, and Honduras, produces entertainment, news, and sports programming, commercializes advertising inventory, and holds valuable broadcasting concessions issued by the Mexican government.

13. TV Azteca is the direct or indirect parent of numerous subsidiaries located principally in Mexico, as well as in Guatemala and Honduras. TV Azteca's corporate structure includes certain Delaware-organized entities, including two effectively inactive direct subsidiaries—Azteca International Corporation and Azteca Sport Rights, LLC—as well as additional indirect subsidiaries, as reflected in the organizational chart attached hereto as Exhibit D.

14. TV Azteca generates revenues from several sources, including advertising sales, content distribution, content licensing, and related media activities. Historically, advertising sales have represented the Company's principal source of revenue.

15. The Company's headquarters, senior management, principal operations, primary assets, books and records, and the overwhelming majority of its employees are located in Mexico. TV Azteca derives the substantial majority of its revenues from Mexico and is heavily regulated by Mexican governmental authorities. Its primary Mexican assets include broadcasting

concessions, production facilities, television networks, real estate, and intellectual property, and its management functions are centered in Mexico.

## III. EVENTS LEADING TO THE COMMENCEMENT OF THE MEXICAN PROCEEDING

16. The traditional television broadcasting industry has undergone a structural, secular decline over the past decade, driven by the rapid proliferation of streaming services, accelerating cord-cutting by consumers, and the migration of advertising expenditures to digital platforms. These industry-wide forces have fundamentally disrupted the economics of linear television broadcasting globally, affecting broadcasters across markets regardless of their individual operational performance. TV Azteca, like other traditional broadcasters, has been directly impacted by these systemic changes. Beginning in approximately 2020, TV Azteca experienced increasing financial and operational pressures arising from a combination of these industry-wide factors and company-specific circumstances, including (a) the ongoing structural transformation of the media industry and the decline of traditional linear television viewership; (b) the accelerating migration of advertising expenditures from linear television to digital and streaming platforms; (c) intensified competition from global streaming services and other digital content providers; (d) the effects of the COVID-19 pandemic on advertising revenues and production activities; (e) increased programming and content acquisition costs; and (f) inflationary pressures, higher interest rates, and broader macroeconomic conditions affecting the television broadcasting industry.

17. These pressures were compounded by significant tax disputes with the Mexican federal tax authority (*Servicio de Administración Tributaria*) and disputes with certain holders of the Notes (as defined below).

18. In August 2017, TV Azteca issued USD $400 million aggregate principal amount of 8.25% Senior Notes due 2024 (the "<u>Notes</u>"), pursuant to an Indenture dated August 9, 2017 (the

"Indenture"), among TV Azteca, thirty-four (34) direct and indirect subsidiaries of TV Azteca as joint and several guarantors of the Notes (the "Subsidiary Guarantors"), and The Bank of New York Mellon, as trustee (the "Trustee"). The Notes matured on August 9, 2024. None of the Subsidiary Guarantors has filed, or is the subject of, any insolvency or *concurso mercantil* proceeding, and TV Azteca is the sole debtor in the Concurso Mercantil.

19. On November 13, 2025, the Mexican Supreme Court issued a final ruling denying several challenges that TV Azteca filed against a series of tax assessments (*créditos fiscales*) levied against it by the Mexican federal tax authority. This caused TV Azteca to become indebted for approximately MXN $8.7 *mil millones* (approximately USD $500 million) to the Mexican federal government, subjecting TV Azteca and its subsidiaries to enforcement measures.

20. On January 29, 2026, to avoid seizure of the Company's operations and assets, TV Azteca obtained a credit facility from AlterBank Ltd. (the "AlterBank Facility") for up to MXN $5 *mil millones* (approximately USD $290 million). Approximately MXN $4.1 *mil millones* (approximately USD $240 million) of the proceeds of the AlterBank Facility were used to satisfy the tax liability owed to the Mexican federal tax authority arising from the Mexican Supreme Court's November 13, 2025 ruling, as well as financial costs related to such facility.

21. In response to its deteriorating financial position, TV Azteca pursued discussions with creditors and other measures intended to address its liabilities outside of a formal insolvency proceeding. TV Azteca implemented cost-reduction initiatives, reviewed programming expenditures, and renegotiated commercial arrangements. Those efforts proved insufficient.

22. As of July 6, 2026, TV Azteca had aggregate liabilities of approximately MXN $25.2 *mil millones* (approximately USD $1.47 billion). The Notes represented approximately 41% of total liabilities; the AlterBank Facility represented approximately 17%. As of July 6, 2026, TV

Azteca's total liabilities exceeded total assets, reflecting negative equity of approximately MXN $2.98 *mil millones* (approximately USD $175 million).

23. On March 10, 2026, TV Azteca filed a petition seeking commencement of a *concurso mercantil* proceeding before the Concurso Court (the "Concurso Petition").

## IV. PRIOR U.S. AND MEXICO PROCEEDINGS

### *A. The Involuntary Cases*

24. On March 20, 2023, certain holders of the Notes, including Plenisfer Investments SICAV – Destination Value Total Return, Cyrus Opportunities Master Fund II, Ltd., and Sandpiper Limited (collectively, the "Petitioning Creditors"), commenced involuntary chapter 11 cases against TV Azteca and certain of its affiliates in the United States Bankruptcy Court for the Southern District of New York. *In re TV Azteca, S.A.B. de C.V.*, Case No. 23-10385 (LGB) (Bankr. S.D.N.Y. Mar. 20, 2023) (the "Involuntary Cases"). After conducting a multi-day evidentiary hearing, the Bankruptcy Court dismissed the involuntary petitions, concluding that the Petitioning Creditors' claims were subject to a bona fide dispute under section 303(b)(1) of the Bankruptcy Code.

### *B. The New York Litigation*

25. On August 26, 2022, the Trustee filed a motion summary judgment in lieu of complaint against TV Azteca and the Subsidiary Guarantors in New York state court, seeking recovery of amounts allegedly due under the Notes. The action was removed to the United States District Court for the Southern District of New York. *The Bank of New York Mellon* v. *TV Azteca, S.A.B. de C.V. et al.*, Case No. 22-08164 (PGG) (S.D.N.Y. Sep. 23, 2022) (the "New York Litigation"). The New York Litigation was stayed while the Involuntary Cases were pending. Following the dismissal of the Involuntary Cases and the maturity of the Notes in August 2024, the Trustee withdrew its pending motion for summary judgment and filed a formal complaint on

July 11, 2025, naming as defendants TV Azteca and the Subsidiary Guarantors and seeking approximately USD $580 million in unpaid principal and interest. TV Azteca answered and filed an amended answer with third-party complaint on December 17, 2025.

26. The Trustee's summary judgment motion, which seeks approximately USD $634 million, is currently fully briefed. The Trustee has also moved to amend the complaint to add four new causes of action, including claims relating to guarantor obligations, the AlterBank Facility, and voting of intercompany claims in the *Concurso* plan. That motion is also pending.

### *C. The Antisuit Order and Pending Appeals*

27. On September 22, 2025, the District Court issued an order (the "Antisuit Order") granting the Trustee's motion to enjoin TV Azteca from continuing or prosecuting claims in Mexico in connection with the Indenture. The District Court held that the Indenture's forum-selection clause conferred exclusive jurisdiction on New York courts and that comity considerations did not justify denying relief. TV Azteca moved for reconsideration, which the District Court denied.

28. TV Azteca's appeal of the Antisuit Order to the Second Circuit has been briefed and is pending scheduling of oral argument. *The Bank of New York Mellon* v. *TV Azteca, S.A.B. de C.V.*, Case No. 25-2666 (2d Cir. Oct. 24, 2025).

### *D. The Florida Ex Parte Discovery Application*

29. On June 2, 2026, the Trustee filed an *ex parte* application under 28 U.S.C. § 1782 in the United States District Court for the Southern District of Florida, seeking leave to serve subpoenas on AlterBank Ltd. and its current and former directors and officers for discovery into alleged fraudulent transfer of funds in connection to the AlterBank Facility. *In re Application of The Bank of New York Mellon* v. *Santander et al.*, Case No. 26-23885 (JEM) (S.D. Fla. Jun. 2, 2026).

30. On August 3, 2026, TV Azteca presented a non-party expedited motion to intervene, with additional requests for a protective order limiting the scope of deposition, quashing the deposition notice, and postponing the deposition of Juan Ramirez, a former director of AlterBank Ltd. On August 17, 2026, the Trustee filed an opposition to TV Azteca's motion to intervene, and on August 27, 2026, TV Azteca submitted a reply in support of its motion, which is fully briefed and pending before the Southern District of Florida.

### *E. Mexican Litigation History*

31. Prior to and during the New York Litigation, the parties were involved in multiple actions in Mexican courts concerning the Notes and Indenture.

32. In July 2022, TV Azteca obtained an injunction from the Ninth Civil Court prohibiting collection of the Notes. In September 2022, TV Azteca obtained a separate *ex parte* injunction from the Sixty-Third Civil Court on force majeure grounds. The Trustee challenged both injunctions through *amparo* proceedings—constitutional actions under Mexican law that permit a party to seek relief in federal court against judicial orders or government acts that allegedly violate rights under Mexico's Constitution. Barrera Decl. ¶ 81. In October and November 2025, Mexican courts vacated both injunctions. Consistent with the Antisuit Order, TV Azteca has dismissed both Mexican actions.

## V. THE CONCURSO MERCANTIL

33. In the Concurso Petition, TV Azteca sought commencement of a *concurso mercantil* to preserve its business enterprise operations as a going concern, maximize enterprise value, and facilitate an orderly restructuring for the benefit of creditors and other stakeholders. A true and correct copy and a certified English translation of the Concurso Petition is attached hereto as Exhibit E.

34. By order dated March 20, 2026 (the "Admission Order"), the Concurso Court admitted the Concurso Petition, which was premised on TV Azteca's generalized default in the payment of its obligations within the meaning of Article 10 of the *Ley de Concursos Mercantiles* (the "LCM"), and ordered the commencement of the inspection (*visita*) stage. The Admission Order directed IFECOM[2] to appoint an examiner (*visitador*) and imposed precautionary measures, including a prohibition on payments arising from pre-admission obligations and a stay of enforcement proceedings against TV Azteca's assets. Barrera Decl. ¶ 18. A true and correct copy and a certified English translation of the Admission Order is attached hereto as Exhibit F.

35. On April 7, 2026, IFECOM appointed Samuel Ricardo Egure Lascano to serve as *visitador*. Mr. Egure Lascano duly completed his engagement, having conducted the *visita* of the Company's financial condition and rendered the expert opinion (*dictamen*) that served as the basis for the insolvency judgment.

36. On July 6, 2026, the Concurso Court entered a judgment, on the basis of the *visitador*'s *dictamen* and upon finding that TV Azteca had incurred generalized default in the payment of its obligations within the meaning of Article 10 of the LCM, declaring TV Azteca in *concurso mercantil* (*Sentencia de Declaración de Concurso Mercantil*, the "Sentencia"), concluding the *visita* stage and commencing the *conciliación* stage. The Sentencia continued the precautionary measures imposed by the Admission Order, including the prohibition on payments arising from pre-admission obligations and the stay of enforcement proceedings against TV Azteca's assets, and ordered the *conciliador* to commence the claims recognition procedure. An extract of the Sentencia was published in the Official Gazette of the Federation (*Diario Oficial de la Federación*) and in a newspaper of national circulation, the last such publication having

[2] "IFECOM" stands for the Federal Institute of Business Reorganization Specialists (*Instituto Federal de Especialistas de Concursos Mercantiles*), a branch of the Mexican federal judiciary.

occurred on August 10, 2026, which is the date from which the statutory terms of the *conciliación* stage and of the claims-recognition procedure are computed under the LCM. Barrera Decl. ¶¶ 22, 24, 33, 36–37.

37. On July 13, 2026, IFECOM designated Sergio Francisco Hermida Guerrero as *conciliador*, through appointment communication IFECOM/DG/1560/2026. Mr. Hermida Guerrero accepted the designation and has been conducting the claims-recognition process and performing his duties in relation to the Concurso Mercantil. Certified copies, together with certified English translations, of the July 6, 2026 Sentencia and the IFECOM communication IFECOM/DG/1560/2026 designating Sergio Francisco Hermida Guerrero as *conciliador* are attached hereto as Exhibit G and Exhibit H.

38. The Concurso Mercantil is a collective, court-supervised insolvency proceeding under the LCM that provides creditor notice, stays collection efforts, establishes claim-filing deadlines, and provides procedures for voting on a restructuring plan. The *conciliación* stage has a statutory duration of 185 calendar days (extendable in the circumstances and for the periods contemplated in Article 145 of the LCM, but in no event beyond 365 calendar days), and its purpose is the execution of a restructuring agreement (*convenio*) which, once approved by the Concurso Court, terminates the insolvency proceeding. Barrera Decl. ¶¶ 28–42, 48.

39. TV Azteca continues to operate under the supervision of the Concurso Court and in coordination with the *conciliador* and remains in possession of and continues to manage its business in the ordinary course during the *conciliación* stage. TV Azteca, with the participation of the *conciliador*, intends to propose to its recognized creditors a *convenio* in accordance with the LCM.

## VI. PROPERTY AND INTERESTS LOCATED IN OR CONNECTED TO THE UNITED STATES

40. TV Azteca owns certain property, holds rights, and maintains interests located in or connected to the United States.

41. TV Azteca's rights and claims under the Indenture governing the Notes, which are the subject of the New York Litigation, constitute property connected to the United States. As of July 6, 2026, TV Azteca also has accounts receivable from its U.S. customers amounting to approximately USD $21.3 million and accounts payable due to its U.S. creditors amounting to approximately USD $66.7 million.

42. TV Azteca maintains deposit accounts located in New York and New Jersey, amounting to approximately USD $33,870 as of July 6, 2026. TV Azteca holds a ratable interest in an advance-payment retainer of approximately USD $500,000 held by Sullivan & Cromwell LLP, counsel to the Foreign Representative, in a client trust account located in New York, New York.

43. As described in paragraph 13 above, TV Azteca's corporate structure includes certain Delaware-organized entities, including two effectively inactive direct subsidiaries—Azteca International Corporation and Azteca Sport Rights, LLC—as well as additional indirect subsidiaries, as reflected in the organizational chart attached hereto as Exhibit D.

44. One such subsidiary of TV Azteca, Azteca International Corporation, previously operated television stations in the United States serving Hispanic markets but ceased those operations prior to 2020. Today, Azteca International Corporation maintains a U.S. bank account with a balance of less than USD $100,000 and no day-to-day operations. Its only material ongoing arrangement is a soccer content licensing agreement with Univision, under which payments are made to a trust located in Mexico.

## VII. THE NEED FOR CHAPTER 15 RELIEF

45. I believe that recognition of the Concurso Mercantil as a foreign main proceeding is necessary to (a) protect TV Azteca and its assets in the United States; (b) ensure the Concurso Mercantil is conducted for the benefit of all the approximately 389 creditors and stakeholders rather than for a subset of creditors acting unilaterally; and (c) provide critical assistance to the Concurso Court and the Foreign Representative in maximizing enterprise value for all creditors.

46. ***Piecemeal-Litigation Risk***. The New York Litigation, and in particular the pending summary judgment motion and the pending motion to amend to add specific-performance and declaratory-relief claims regarding the AlterBank Facility and TV Azteca's voting of its intercompany claims in the Concurso plan, threatens equal treatment of TV Azteca's approximately 389 creditors and the orderly administration of the Concurso Mercantil. In my judgment, recognition is necessary to ensure that disputes concerning the restructuring of TV Azteca's enterprise are resolved in a single centralized proceeding before the Concurso Court, rather than through piecemeal litigation in multiple jurisdictions.

47. ***Asset-Dissipation Risk***. Absent the automatic stay under sections 362(a) and 1520(a) of the Bankruptcy Code, individual creditors (including the Trustee and certain holders of the Notes) could seize, attach, or otherwise obtain a disproportionate recovery from U.S.-located property to the detriment of all other creditors and the orderly administration of the Concurso Mercantil.

48. Based on my consultation with U.S. counsel and the Barrera Declaration, I understand that the Concurso Mercantil is a "foreign proceeding" and a "foreign main proceeding" within the meaning of sections 101(23) and 1502(4) of the Bankruptcy Code, respectively, and that I, as the authorized foreign representative, am a "person or body" under section 101(24) of the Bankruptcy Code.

49. TV Azteca's center of main interests is in Mexico, and that center is readily ascertainable by third parties. The factors supporting this conclusion include: (i) senior management (including the CEO and Chief Financial Officer) is based in Mexico; (ii) TV Azteca's headquarters is in Mexico City; (iii) primary assets—including broadcasting concessions, production facilities, television networks, real estate, and intellectual property—are located in Mexico; (iv) the substantial majority of TV Azteca's approximately 389 creditors are Mexican creditors; and (v) Mexican law governs most disputes involving TV Azteca. Books and records, restructuring efforts, and regulatory oversight are also centered in Mexico. TV Azteca is a Mexican corporation, heavily regulated by Mexican governmental authorities, is subject to publicly noticed proceedings before the Concurso Court, and is identified in public disclosures as headquartered in Mexico City. Barrera Decl. ¶¶ 49–54.

50. I believe that recognition is consistent with the principles of comity and cross-border cooperation reflected in the UNCITRAL Model Law on Cross-Border Insolvency, which is implemented in chapter 15 of the Bankruptcy Code, and is not manifestly contrary to the public policy of the United States.

## VIII. VERIFICATION OF THE VERIFIED PETITION

51. I have reviewed the Verified Petition filed contemporaneously herewith. The statements of fact contained therein are true and correct to the best of my knowledge, information, and belief.

52. I am aware of no foreign proceeding pending with respect to TV Azteca other than the Concurso Mercantil. 11 U.S.C. § 1515(c).

IN WITNESS WHEREOF, I declare, under penalty of perjury under the laws of the United States of America, that the information set forth above is based on my current knowledge, information and belief after reasonable inquiry and, in contemplation of and subject to supplementation, true and correct.

Dated: September 9, 2026
Mexico City, Mexico

Rafael Rodríguez Sánchez
Foreign Representative of the Debtor