Robert J. Giuffra, Jr.
Sergio J. Galvis
James L. Bromley
Christian P. Jensen
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TV AZTECA, S.A.B. DE C.V.,[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-12217 (__) |

**DECLARATION OF JOSÉ VÍCTOR RODRÍGUEZ BARRERA ON MEXICAN LAW IN SUPPORT OF THE VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND RELATED RELIEF**

I, José Víctor Rodríguez Barrera, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief:

## I. QUALIFICATIONS AND BACKGROUND

1. I am an attorney duly licensed to practice law in the United Mexican States ("Mexico"). I am a partner at Carrasco | Barrera | Rodríguez | Heredia | Mora Abogados, with offices at Aristóteles 222, Polanco IV Sección, Mexico City, Mexico. My practice concentrates

[1] The last four digits of the Debtor's Mexican federal tax identification number are 4V78. The location of the corporate headquarters and the service address for the Debtor is Periférico Sur 4121, Col. Fuentes del Pedregal, Alcaldía Tlalpan, 14140, Mexico City, Mexico.

on *concurso mercantil* (Mexican commercial insolvency) proceedings, cross-border insolvency, corporate transactions, and commercial litigation.

2. From April 2004 to March 2025, I was a partner at Rodríguez y Orendain, S.C., in Mexico City, in the same practice areas. From July 1991 to March 2004, I was a partner at Guerra González y Asociados, S.C., in Mexico City and Guadalajara, Jalisco, practicing civil and commercial litigation, bankruptcy, corporate litigation, and real estate litigation. In total, I have practiced Mexican civil and commercial law, including insolvency and *concurso mercantil* matters, for over thirty years.

3. I have previously served as an expert on Mexican law in cross-border insolvency and restructuring proceedings before U.S. and foreign courts and tribunals, including: (a) the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in connection with the foreign proceeding of Vitro, S.A.B. de C.V. (Case No. 11-33335, August 2011 and March 2012); (b) the Supreme Court of the State of New York, New York County, in *Wilmington Trust, N.A.* v. *Vitro Automotriz, S.A. de C.V., et al.* (Case No. 653459/2011, January 2012); and (c) the High Court of Justice, Chancery Division, Companies Court, of the United Kingdom, in connection with the scheme of arrangement of Codere Finance, S.A. under Part 26 of the United Kingdom Companies Act 2006 (2012). I have also served as a member of an arbitration panel under the International Chamber of Commerce Rules of Arbitration (Case No. 20328/ASM, May–September 2015).

4. I have been retained by TV Azteca, S.A.B. de C.V. to provide this Court with an explanation, as a matter of Mexican law, of (a) the nature and effects of the *concurso mercantil* proceeding of TV Azteca, S.A.B. de C.V. ("TV Azteca" or the "Comerciante") pending in Mexico, and (b) the provisions of Mexican law governing cooperation in international insolvency

proceedings. I am being compensated at my customary hourly rates. My compensation does not depend on the outcome of this or any related proceeding, and I have no financial interest in that outcome. My duty in providing this declaration is to assist this Court.

5. This declaration is based on my professional training and experience in Mexican insolvency law; on the *Ley de Concursos Mercantiles* (the "LCM"), Mexico's federal commercial insolvency statute; on other Mexican statutes cited herein; and on my review of the judgment declaring TV Azteca in *concurso mercantil* issued on July 6, 2026 by the *Juzgado Primero de Distrito en Materia de Concursos Mercantiles*, sitting in Mexico City and with jurisdiction throughout the Mexican Republic (the "Concurso Court"), Case No. 22/2026-II (the "Concurso Judgment," and the proceeding, the "Concurso Proceeding"). A copy of the Concurso Judgment, together with a certified English translation, is submitted with the *Declaration of Rafael Rodríguez Sánchez in Support of the Verified Petition for Recognition of Foreign Main Proceeding and Related Relief* filed contemporaneously herewith (the "Rodríguez Declaration").

6. I express no opinion on United States law. Where I refer below to concepts of chapter 15 of title 11 of the United States Code (the "Bankruptcy Code"), I do so solely to identify the questions of Mexican law that I understand to be relevant, and I leave their application entirely to this Court.

## II. SUMMARY OF OPINIONS

7. My opinions, as a matter of Mexican law, are summarized as follows:

(a) The Concurso Proceeding is a collective judicial proceeding conducted in Mexico under the LCM, a Mexican federal statute relating to insolvency, in which the assets and affairs of TV Azteca are subject to the control and supervision of the Concurso Court, for the purpose of reorganizing TV Azteca or, failing that, liquidating it.

(b) Mexico is the jurisdiction in which TV Azteca has its statutory domicile (*domicilio social*) and, in my opinion, the center of its main interests as that concept is used in Mexican law.

(c) Mexican law expressly authorizes representatives of a Mexican *concurso mercantil* to act abroad on behalf of that proceeding, to the extent the applicable foreign law so permits.

(d) Title Twelve of the LCM (Articles 278 through 310) is Mexico's enactment of the UNCITRAL Model Law on Cross-Border Insolvency (the "Model Law"). It directs Mexican judges and insolvency officials to cooperate to the maximum extent possible with foreign courts and foreign representatives, and to communicate with them directly, without letters rogatory or other formalities. The assistance sought from this Court is therefore assistance that Mexican law would itself extend to a United States proceeding.

(e) The LCM guarantees foreign creditors the same rights of access and participation as Mexican creditors, requires that they be given notice, and—as the Concurso Judgment itself ordered—affords them a period of forty-five calendar days to file their claims. Nothing in the Concurso Proceeding, in my opinion, is inconsistent with fundamental notions of procedural fairness.

## III. THE LEY DE CONCURSOS MERCANTILES AND THE MEXICAN CONCURSO SYSTEM

8. The LCM was published in the *Diario Oficial de la Federación* (the "DOF") on May 12, 2000, replacing the *Ley de Quiebras y Suspensión de Pagos* of 1943. It is a federal statute of general application throughout Mexico. Relevant excerpts of the LCM, together with English translations, are attached hereto as Exhibit A.

9. Article 1 declares the LCM to be of public interest (*de interés público*), and its stated object is to preserve going-concern enterprises and to avoid the harm that a generalized default causes both to the enterprise and to those who do business with it.

10. Under Article 2 of the LCM, a *concurso mercantil* consists of two successive stages: (i) *conciliación* (conciliation), during which the debtor remains in possession and the conciliator (*conciliador*) supervises the negotiation of a restructuring agreement (*convenio*) with creditors; and (ii) if no *convenio* is reached, the *quiebra* (bankruptcy or liquidation). Article 3 provides that the purpose of the conciliation stage is for the *comerciante* (merchant) and its recognized creditors to reach a court-approved restructuring agreement (*convenio*), and that the purpose of the *quiebra* stage is the sale of the enterprise, its productive units, or its assets in order to pay the recognized creditors.

11. Jurisdiction is federal. Article 104, section II, of the Mexican Constitution and Article 17 of the LCM vest jurisdiction over a *concurso mercantil* in the federal district court of the place where the *comerciante* has its domicile. Pursuant to General Agreement 4/2022 of the Plenary of the Federal Judiciary Council and Article 56, section II, of the *Ley Orgánica del Poder Judicial de la Federación*, the First and Second District Courts Specialized in Commercial Insolvency Matters (*Juzgados Primero y Segundo de Distrito en Materia de Concursos Mercantiles*) sit in Mexico City and exercise jurisdiction over *concurso* matters throughout the Mexican Republic. The Concurso Court is one of those two specialized courts, and it so held in the First Considerandum of the Concurso Judgment.

12. Article 7 of the LCM makes the judge the rector—that is, the director—of the proceeding. The judge opens the proceeding, appoints or orders the appointment of the insolvency officials, fixes the retroaction date, supervises the claims process, authorizes or refuses the acts described below, approves the restructuring agreement, declares the *quiebra*, approves distributions, and declares the proceeding concluded. No stage of a *concurso mercantil* advances without judicial action.

13. Three insolvency officials may intervene, each of them a court-supervised professional and none of them selected by the debtor: (i) the *visitador* (examiner), who reviews the debtor's finances and renders a non-binding *dictamen*, (ii) the *conciliador* (conciliator), who—upon a declaration of *concurso*—oversees the reorganization and prepares a list of recognized claims, and (iii) the *síndico* (trustee), who is appointed in the event of a liquidation to oversee the liquidation process. They are registered with, and designated by, the Instituto Federal de Especialistas de Concursos Mercantiles ("IFECOM"), an auxiliary organ of the Federal Judiciary Council created by Article 311 of the LCM. Designations are made from IFECOM's register through a random selection procedure, and the officials are subject to statutory duties, bonding requirements, and IFECOM's disciplinary authority (Articles 325 through 338).

14. The proceeding is collective in both its procedure and its effects. All creditors of the *comerciante*—Mexican and foreign, secured and unsecured—must have their claims determined in a single, centralized recognition, ranking, and priority process conducted under Articles 121 through 135 of the LCM. Creditors are classified and paid in accordance with the statutory ranking of Articles 217 through 224, which makes no distinction based on the nationality, residence, or domicile of the creditor. A *convenio* approved by the judge binds all common creditors, including those who did not sign it and those who did not appear (Article 165).

15. The declaration of *concurso mercantil* also produces immediate and generalized effects on the *comerciante*'s estate, described in Part V below, which operate in favor of all creditors rather than any individual creditor.

## IV. THE CONCURSO PROCEEDING OF TV AZTECA

16. On March 10, 2026, TV Azteca filed a voluntary petition (*solicitud*) seeking its own declaration of *concurso mercantil*, requesting that it be declared in the conciliation stage. Under

Article 20 of the LCM, a *comerciante* that considers itself to have generally defaulted on its payment obligations under Article 10 may request such a declaration.

17. The petition was filed with the Common Correspondence Office of the District Courts Specialized in Commercial Insolvency Matters and assigned to the Concurso Court on the following business day. By order of March 13, 2026, the matter was docketed as file No. 22/2026-II.

18. By order of March 20, 2026, after the cure of a *prevención*, the Concurso Court admitted the petition and directed IFECOM to designate a *visitador*. The Concurso Court also granted certain precautionary measures (*providencias precautorias*) under Article 37 of the LCM, including, among others, a prohibition on the disposal or encumbrance of the principal assets of the enterprise; a prohibition on transfers of funds or securities to third parties; a prohibition on suspending, revoking, rescinding, terminating or cancelling executory contracts to which TV Azteca is a party; an order that any contractual provision worsening the Comerciante's position by reason of the filing or declaration of concurso be deemed not written; a prohibition on suspending, revoking, cancelling, modifying, limiting or affecting any concession, permit, license, authorization or other enabling title granted in favor of TV Azteca that allows it to operate; a stay of any enforcement proceedings (judicial, administrative, contractual or extracontractual) or levy of attachment against the assets and rights of the debtor; and a prohibition on Mexican financial institutions transferring, attaching, retaining, setting off or otherwise applying funds held in TV Azteca's accounts.

19. The Concurso Court denied certain other precautionary measures TV Azteca had requested, including a stay of enforcement against TV Azteca's jointly and severally liable obligors, guarantors, and subsidiaries under Article 37 of the LCM. TV Azteca timely moved for

reconsideration, but on May 14, 2026, the Concurso Court affirmed those denials. In denying the measures relating to the subsidiaries, the Concurso Court considered that further information and documentation was required as to the existence of the subsidiaries and the need to preserve them as going concerns. The denial was therefore without prejudice to renewal upon a properly evidenced record.

20. By official letter IFECOM/DG/0810/2026, IFECOM designated Mr. Samuel Ricardo Egure Lascano as *visitador*. By order of April 10, 2026, the Concurso Court accepted his appointment and oath. The visit—the statutory examination provided for in Articles 30 and 31 of the LCM—commenced on April 20, 2026.

21. By order of May 20, 2026, the Concurso Court received the *visitador*'s reasoned and detailed opinion (*dictamen razonado y circunstanciado*) and made it available to the Comerciante for five days to present its arguments, in accordance with Article 41 of the LCM. By order of June 1, 2026, the record was submitted to the judge for judgment.

22. On July 6, 2026, the Concurso Court issued the Concurso Judgment. Having found that TV Azteca had generally defaulted on its payment obligations within the meaning of Article 10 of the LCM, the court declared TV Azteca in *concurso mercantil* and opened the conciliation stage for a statutory duration of 185 calendar days from publication in the *Diario Oficial de la Federación*, extendable up to a maximum of 365 calendar days. The Concurso Court also recorded TV Azteca's domicile as Periférico Sur No. 4121, Colonia Fuentes del Pedregal, Alcaldía Tlalpan, C.P. 14140, Mexico City. The Concurso Judgment was signed electronically by Judge Tessy del Rocío Covarrubias Torres.

23. The declaration of *concurso mercantil* is appealable, but only in the devolutive effect (e*fecto devolutivo*, meaning the appeal does not stay the proceeding). Under Article 49 of

the LCM, an appeal against a judgment denying a *concurso mercantil* is admitted in both effects (it suspends or stays the procedure), whereas an appeal against a judgment declaring one is admitted only in the devolutive effect. The Concurso Judgment is therefore fully effective in Mexico notwithstanding any appeal that may be taken from it.

24. On August 10, 2026, an extract of the *Sentencia* was published in the *Diario Oficial de la Federación* and in a newspaper of national circulation, as ordered by the Concurso Court. Under the LCM, that publication marks the commencement of the 185-calendar-day conciliation stage (which may be extended up to a maximum of 365 calendar days) and of the claims-recognition procedure conducted by the *conciliador*.

25. The publication also opened the first statutory window for creditors to file with the *conciliador* their requests for recognition of claims. Pursuant to Article 122, section I, of the LCM, creditors have twenty calendar days from the publication of the *Sentencia* in the *Diario Oficial de la Federación* to do so; that period ran through August 30, 2026. Creditors located abroad are afforded a longer period: under Articles 290 and 291 of the LCM, the notice of the commencement of the proceeding given to foreign creditors must grant them forty-five calendar days to present their claims and must indicate the place where the claims are to be presented. On August 28, 2026, The Bank of New York Mellon, in its capacity as trustee for the 8.25% Senior Notes due 2024 issued by TV Azteca under an indenture, filed a proof of claim (*solicitud de reconocimiento de crédito*) in the Concurso Proceeding.

26. Pursuant to Article 121 of the LCM, the *conciliador* was required to file a provisional list of claims within thirty calendar days of the publication of the *Sentencia* in the *Diario Oficial de la Federación*. That period expired on September 9, 2026, and on that date the

*conciliador* filed the provisional list of claims with the Concurso Court, together with his reasoned report and the list of claims he proposes not to recognize.

27. The Concurso Court is expected shortly to enter an order making the provisional list available to TV Azteca and its creditors. Under Article 129 of the LCM, TV Azteca and any creditor will then have a non-extendable period of five business days to file written objections to the provisional list. Thereafter, the *conciliador* must file a definitive list of claims within ten business days (Article 130 of the LCM), and the Concurso Court will enter the judgment on recognition, ranking and priority of claims (*sentencia de reconocimiento, graduación y prelación de créditos*), which determines the recognized creditors, the amount of each claim and its rank and priority, and which is the basis for the creditor majorities required to approve a *convenio* (Article 132 of the LCM). Any appeal from that judgment is admitted with devolutive effect only and does not suspend the conciliation stage (Article 135 of the LCM). In parallel, the *conciliador* and TV Azteca continue to pursue the negotiation of a *convenio* with creditors that, once approved by the Concurso Court, will terminate the Concurso Proceeding.

## V. THE EFFECTS ORDERED BY THE CONCURSO JUDGMENT

28. The operative provisions of the Concurso Judgment illustrate the degree of control and supervision that the Concurso Court exercises over TV Azteca's assets and affairs. Those provisions, in summary, are the following.

29. *Conciliation stage*. The Concurso Court declared the conciliation stage open for 185 calendar days, counted from the date of publication of the Concurso Judgment in the DOF, pursuant to Article 145 of the LCM. That period may be extended in the circumstances and for the periods contemplated in Article 145, but in no event beyond a total of 365 calendar days.

30. *Conciliador*. Pursuant to Article 43, section IV, of the LCM, the Concurso Court ordered IFECOM to designate a *conciliador* within five days through its previously established

random procedure, and directed that the *conciliador*, within three days of designation, notify creditors of the appointment and designate a domicile within the Concurso Court's jurisdiction. Pending that designation, the Comerciante and its directors, officers, and employees hold the obligations that Mexican law imposes on depositaries.

31. *Retroaction date*. Pursuant to Articles 43, section X, and 112 of the LCM, the Concurso Court fixed October 9, 2025 as the retroaction date (*fecha de retroacción*) of the concurso—that is, 270 calendar days prior to the Concurso Judgment. Acts performed in fraud of creditors within that period are subject to challenge and may be declared ineffective as against the estate under Articles 112 through 119 of the LCM.

32. *Arraigo*. Pursuant to Article 47 of the LCM, the Concurso Judgment produces the effect of *arraigo* as to the members of TV Azteca's board of directors, or those otherwise responsible for its administration, for the sole purpose that they may not leave their domicile without appointing a duly instructed and funded attorney-in-fact.

33. *Claims process*. The Concurso Court directed the *conciliador* to commence the claims recognition process, and to prepare on its own initiative, under Articles 121 and 123 of the LCM, the provisional list of claims it proposes to recognize, based on the Comerciante's books and records, the information the Comerciante and its personnel are obliged to provide, the *visitador*'s opinion, and the claim requests submitted to it. Under Article 122 of the LCM, creditors resident in Mexico have twenty calendar days from publication of the insolvency judgment in the DOF to file their proofs of claim. The *conciliador* must submit the provisional list to the Concurso Court within thirty calendar days of publication. Creditors may then object to the provisional list within five business days, after which the *conciliador* submits a definitive list.

34. *Foreign creditors*. The Concurso Court expressly informed creditors resident abroad that they may submit their claim requests, if it suits their interests, to the *conciliador* at the domicile the *conciliador* designates, within a period of forty-five calendar days, in accordance with Article 291 of the LCM. This provision is discussed further in Part VIII below.

35. *Books and records*. Pursuant to Article 43 of the LCM, the Concurso Court ordered that the Comerciante's books, records, and other documents be placed immediately at the *conciliador*'s disposal, together with the funds necessary to cover registration and publication expenses, and ordered the Comerciante to permit the *conciliador* and any *interventores* to carry out the activities proper to their offices.

36. *Suspension of payments*. The Concurso Court ordered TV Azteca to suspend payment of debts contracted prior to the effectiveness of the Concurso Judgment, except those indispensable to the ordinary operation of the enterprise, including any credit necessary to maintain ordinary operations and the liquidity required during the proceeding, which must be reported within seventy-two hours to the judge and, once designated, directly to the *conciliador*, who is charged with supervising the Comerciante's accounting and all of its transactions under Article 75 of the LCM. Ordinary labor obligations and ordinary tax and social security contributions are not interrupted, pursuant to Articles 66 and 69 of the LCM.

37. *Stay of enforcement*. The Concurso Court ordered that, during the conciliation stage, all attachment or enforcement orders against TV Azteca's assets and rights be stayed, with the sole exception provided in Article 65 of the LCM for labor attachments or enforcement corresponding to wages for the two years preceding the concurso, under Article 123, part A, section XXIII of the Mexican Constitution and its implementing provisions.

38. *Publication and registration*. Pursuant to Articles 43 and 44 of the LCM, the Concurso Court ordered the *conciliador*, within five days of designation, to publish an extract of the Concurso Judgment once in the DOF and in one of the newspapers of largest circulation in Mexico, and to record the Concurso Judgment in the public registry of commerce of the Comerciante's domicile and in every place where it maintains an agency, branch, or assets subject to registration. Under Article 44, creditors and other parties are deemed notified upon publication in the DOF.

39. *Pending litigation*. Pursuant to Article 84 of the LCM, actions and proceedings of a patrimonial nature brought by or against the Comerciante that were pending when the Concurso Judgment was rendered are not consolidated into the *concurso*, but continue to be prosecuted or defended by the Comerciante under the *conciliador*'s supervision, and the Comerciante must inform the *conciliador* of their existence.

40. *Interest and conversion*. Pursuant to Article 89 of the LCM, and irrespective of the place originally agreed for payment, unsecured claims against the Comerciante ceased to accrue interest as of the date of the Concurso Judgment and, if not originally denominated in *unidades de inversión* ("UDIs"), are converted into UDIs, following prior conversion into Mexican pesos of any claim denominated in foreign currency, at the exchange rate and equivalence determined by the Banco de México for that date. Secured claims accrue only ordinary interest, and only up to the value of the collateral, and remain denominated in their original currency or unit, but are also converted into UDIs solely for purposes of quantifying voting participation.

41. *Notifications*. The Concurso Court ordered notice by official letter to IFECOM, the Ministry of Finance and Public Credit, the Tax Administration Service, the Mexico City Ministry of Administration and Finance, the Mexican Social Security Institute, the

telecommunications regulator, the National Workers' Housing Fund Institute, and the Federal Center for Labor Conciliation and Registration; and, as to creditors resident abroad, notice also in accordance with applicable law.

42. *Judgment*. The Concurso Court thereafter enters a judgment recognizing, ranking, and prioritizing all claims (the *sentencia de reconocimiento, graduación y prelación de créditos*), which determines the universe of recognized creditors entitled to vote on any restructuring agreement.

## VI. THE CONCURSO PROCEEDING IS A COLLECTIVE JUDICIAL INSOLVENCY PROCEEDING

43. I understand that section 101(23) of the Bankruptcy Code defines a "foreign proceeding" by reference to six characteristics. I address below the features of Mexican law that bear on each, without opining on the United States law question.

44. *Collective*. As described in paragraph 14 above, the LCM requires that the claims of all creditors be determined in a single centralized process, ranks them under a uniform statutory scheme that is indifferent to nationality or residence, stays individual enforcement, and binds dissenting and absent common creditors to a court-approved *convenio*. The Concurso Proceeding is not a remedy available to, or for the benefit of, any single creditor. The Concurso Proceeding does not, on its own, extinguish claims; rather it channels all claims into a claims recognition process, where they may be asserted and adjudicated on equal footing with all other creditors.

45. *Judicial, and conducted in a foreign country*. The Concurso Proceeding is pending before the Concurso Court, a federal court of the Mexican Republic sitting in Mexico City. It was commenced by petition, adjudicated by judgment after an examination by a court-appointed *visitador*, and is administered under the continuing direction of the judge as rector of the proceeding under Article 7 of the LCM.

46. *Under a law relating to insolvency or adjustment of debt*. The LCM is Mexico's federal insolvency statute. The Concurso Judgment was rendered upon a judicial finding of generalized default in payment under Articles 9 and 10 of the LCM.

47. *Assets and affairs subject to the control or supervision of a foreign court*. The effects summarized in Part V above—judicial supervision through the *conciliador*, the suspension of pre-petition payments, the stay of enforcement, the delivery of books and records, the precautionary measures, the *arraigo* of the board, the centralized claims process, the statutory conversion of claims, and the requirement of judicial approval of any *convenio*—demonstrate that TV Azteca's assets and affairs are subject to the control and supervision of the Concurso Court.

48. For the purpose of reorganization or liquidation. The conciliation stage, which may be extended up to a maximum of 365 calendar days, is directed toward the negotiation and execution of a *convenio* between the debtor and its recognized creditors that, once approved by the Concurso Court, terminates the proceeding (Article 3). If no *convenio* is reached within the statutory period, Article 167 of the LCM requires the declaration of *quiebra* and the liquidation of the estate for the benefit of the recognized creditors.

## VII. MEXICO IS THE CENTER OF TV AZTECA'S MAIN INTERESTS

49. The concept of the "center of main interests" is not foreign to Mexican law. Article 279, section II of the LCM defines a "foreign main proceeding" as one pending in the state where the *comerciante* has the center of its main interests (*el centro de sus principales intereses*), and section III defines a non-main proceeding by reference to the existence of an establishment. These definitions are taken from the Model Law.

50. TV Azteca is a *sociedad anónima bursátil de capital variable* organized under the laws of Mexico. Its corporate existence and internal governance are governed by the *Ley General de Sociedades Mercantiles* and the *Ley del Mercado de Valores*, and its status as a *comerciante*

derives from Article 3, section II, of the *Código de Comercio*, as the Concurso Court held in the Second Considerandum of the Concurso Judgment.

51. TV Azteca's statutory domicile (*domicilio social*) is Mexico City. The Concurso Judgment records its domicile as Periférico Sur No. 4121, Colonia Fuentes del Pedregal, Alcaldía Tlalpan, C.P. 14140, Mexico City. Under Mexican law, a company's *domicilio social* is fixed in its bylaws, is a matter of public record in the *Registro Público de Comercio*, and is the connecting factor on which Article 17 of the LCM confers jurisdiction over a *concurso mercantil*.

52. The Concurso Court exercised jurisdiction on that basis. It also ordered the registration of the Concurso Judgment in the public registry of commerce corresponding to TV Azteca's domicile, and its publication in the DOF, the official gazette of the Mexican federal government, with effect throughout Mexico.

53. I further understand—and this Court will have before it the evidence supporting these facts—that TV Azteca's headquarters, senior management, accounting and corporate books and records, employees, principal operations, and principal creditors are located in Mexico; and that its broadcasting business is conducted in Mexico under Mexican regulatory authority. Those facts are, in my opinion, consistent with, and confirm, the conclusion that the center of TV Azteca's main interests is Mexico.

54. I am not aware of any parallel insolvency, receivership, or similar proceeding pending with respect to TV Azteca in any other jurisdiction.

## VIII. MEXICAN LAW ON COOPERATION IN INTERNATIONAL PROCEEDINGS: TITLE TWELVE OF THE LCM

55. Title Twelve of the LCM, entitled "*De la cooperación en los procedimientos internacionales*" (On Cooperation in International Proceedings), comprises Articles 278 through 310 and is Mexico's enactment of the Model Law on Cross-Border Insolvency of 1997. Mexico

incorporated the Model Law into the LCM at the time of its enactment in 2000, and was among the first states to do so. Title Twelve is organized in five chapters that follow the Model Law's structure: general provisions (Articles 278–285); access of foreign representatives and creditors to Mexican courts (Articles 286–291); recognition of a foreign proceeding and available relief (Articles 292–303); cooperation with foreign courts and foreign representatives (Articles 304–305); and concurrent proceedings (Articles 306–310).

56. *Scope*. Article 278 provides that Title Twelve applies where a foreign court or foreign representative seeks assistance in Mexico in connection with a foreign proceeding; where assistance is sought in a foreign State in connection with a proceeding under the LCM; where a foreign proceeding and a Mexican c*oncurso mercantil* concerning the same *comerciante* are taking place concurrently; and where foreign creditors or other interested persons have an interest in requesting the commencement of, or in participating in, a proceeding under the LCM. The present application falls within the second of those cases.

57. *Definitions*. Article 279 defines the operative terms in language taken from the Model Law: a foreign proceeding is a collective judicial or administrative proceeding, including an interim proceeding, pursued in a foreign state under a law relating to *concurso mercantil*, bankruptcy, or insolvency of a merchant, in which the merchant's assets and affairs are subject to the control or supervision of the foreign court, for the purpose of reorganization or liquidation; a foreign main proceeding is one pursued in the state where the merchant has the center of its main interests; a foreign non-main proceeding is one pursued in a state where the merchant has an establishment; and the article further defines foreign representative, foreign court, and establishment.

58. *Allocation of functions*. Article 281 provides that the functions referred to in Title Twelve concerning the recognition of foreign proceedings and cooperation with foreign courts are exercised, in accordance with the LCM, by the judge, by IFECOM, or by the person IFECOM designates.

59. *Authority to act abroad*. Article 282 provides that the *visitador*, the *conciliador*, or the *síndico* are empowered to act in a foreign state, to the extent permitted by the applicable foreign law, in representation of a *concurso mercantil* opened in Mexico under the LCM. This provision is Mexico's enactment of Article 5 of the Model Law. It is the statutory source of authority under Mexican law for a representative of the Concurso Proceeding to seek the assistance of this Court.

60. *Preservation of Mexican law and treaties*. Article 283 provides that nothing in Title Twelve may be construed in a manner contrary to Titles I through XI and XIII of the LCM, or in any way contrary to the fundamental principles of law prevailing in Mexico. Article 284 preserves Mexico's obligations under international treaties.

61. *Rule of interpretation*. Article 285 directs that, in interpreting Title Twelve, regard is to be had to its international origin and to the need to promote uniformity in its application and the observance of good faith. This is Mexico's enactment of Article 8 of the Model Law. It is a legislative instruction to Mexican courts to read Title Twelve in harmony with chapter 15 of the Bankruptcy Code and with the enactments of other Model Law jurisdictions, rather than as a purely domestic text.

62. *Access and equal treatment of foreign creditors*. Article 286 provides that, subject to the LCM, every foreign creditor enjoys the same rights as Mexican creditors with respect to the commencement of, and participation in, a proceeding under the LCM. Article 287 provides that

the mere filing of a claim by a foreign creditor does not subject that creditor, or its assets, to the jurisdiction of the Mexican courts for any purpose other than the claim itself.

63. *Standing of foreign representatives*. Article 288 empowers a foreign representative to request the declaration of *concurso mercantil* of a *comerciante* in Mexico, and Article 289 permits a foreign representative, upon recognition of the foreign proceeding, to participate in a proceeding pending under the LCM.

64. *Notice to foreign creditors*. Articles 290 and 291 govern notice. Where notice must be given to creditors under the LCM, it must also be given to known creditors that do not have an address in Mexico, individually and without letters rogatory or other similar formality; and the notice must state the period for filing claims and the consequences of failing to do so. Article 291 affords creditors resident abroad a period of forty-five calendar days for that purpose. As noted in paragraph 34 above, the Concurso Court applied Article 291 in the Eighth operative provision of the Concurso Judgment.

65. *Recognition in Mexico of foreign proceedings*. Articles 292 through 303 establish the procedure by which a foreign representative may obtain recognition in Mexico of a foreign proceeding, the documentation required, the presumptions that apply, the provisional relief available from the filing of the application, and the relief available upon recognition. In substance, and subject to the differences noted in Articles 293 and 294 depending on whether the *comerciante* has an establishment in Mexico, these provisions afford a foreign representative relief comparable to that which chapter 15 affords in the United States.

66. *Duty of cooperation*. Article 304 provides that, in the matters identified in Article 278, the judge, the *visitador*, the *conciliador*, and the *síndico* must cooperate, in the exercise of their functions and to the extent possible, with foreign courts and foreign representatives, and are

empowered to communicate directly with them without letters rogatory or other formalities. Article 305 provides that such cooperation may be implemented by any appropriate means, and identifies in particular the appointment of a person to act at the direction of the judge, the communication of information by any appropriate means, the coordination of the administration and supervision of the *comerciante*'s assets and affairs, the approval and implementation of agreements concerning the coordination of proceedings, and the coordination of concurrent proceedings concerning the same *comerciante*.

67. These two articles are of particular importance to the relief sought here. Under Mexican law, cooperation with a foreign court is not discretionary comity extended as a matter of grace: it is a statutory duty imposed on the Mexican judge and on the insolvency officials, and it may be discharged through direct communication, without the delay and formality of letters rogatory. Were the positions reversed—were a United States trustee or debtor in possession to seek assistance in Mexico—Articles 304 and 305 would oblige the Mexican court and the *conciliador* to extend that assistance.

68. *Concurrent proceedings*. Articles 306 through 310 address concurrent proceedings. Article 307 directs the Mexican judge to seek to cooperate and coordinate its actions with a foreign proceeding concerning the same *comerciante*. Article 309 provides that, absent proof to the contrary, recognition of a foreign main proceeding constitutes proof that the *comerciante* has generally defaulted on its obligations for purposes of opening a *concurso mercantil* in Mexico. Article 310 contains the hotchpot rule: without prejudice to secured creditors and holders of rights in rem, a creditor that has received partial payment on its claim in a proceeding in another state may not receive a further distribution in the Mexican proceeding while the payment received by other creditors of the same class remains proportionately smaller.

69. In my opinion, therefore, the recognition and assistance sought from this Court would be reciprocal. Mexican law would extend the same cooperation to a United States insolvency proceeding, and Article 285 directs Mexican courts to interpret those provisions with regard to their international origin and the need for uniformity.

## IX. AUTHORITY OF THE FOREIGN REPRESENTATIVE UNDER MEXICAN LAW

70. As set out in paragraph 59 above, Article 282 of the LCM expressly empowers the *visitador*, the *conciliador*, and the *síndico* to act in a foreign State, in representation of a Mexican *concurso mercantil*, to the extent the applicable foreign law so permits. That authority is conferred by statute and does not require a separate grant of power by the *comerciante*.

71. The Concurso Proceeding is currently in the conciliation stage. Under Articles 74 and 75 of the LCM, the *comerciante* ordinarily retains the administration of its enterprise during that stage, under the *conciliador*'s supervision, unless the judge orders its removal under Articles 81 through 83. Accordingly, during conciliation the administration of the estate is shared: the Comerciante manages, and the *conciliador* supervises, in both cases subject to the judge as rector of the proceeding.

72. Sergio Francisco Hermida Guerrero has been appointed as *conciliador* by IFECOM by means of official communication No. IFECOM/DG/1561/2026, dated July 13, 2026.

73. On August 13, 2026, TV Azteca granted the authority for Mr. Rafael Rodríguez Sánchez to act as a Foreign Representative of TV Azteca, S.A.B. de C.V. before this Court. In my opinion, that authority is valid and effective under Mexican law, and Rafael Rodríguez Sánchez is a person authorized to act as a representative of the Concurso Proceeding within the meaning of Article 282 of the LCM. A copy of the resolutions of TV Azteca's Board of Directors and a copy of the power of attorney, together with certified English translations, are attached as exhibit B and exhibit C, respectively, to the Rodríguez Declaration.

74. Nothing in Mexican law prohibits or restricts a representative of a Mexican *concurso mercantil* from seeking recognition and assistance abroad. To the contrary, as explained in Part VIII, the LCM contemplates and encourages it.

## X. TREATMENT OF CREDITORS AND PROCEDURAL PROTECTIONS

75. The Concurso Proceeding affords creditors, including creditors resident outside Mexico, the following protections under Mexican law.

76. *Notice*. The Concurso Judgment is published in the DOF and in a newspaper of national circulation (Articles 43 and 44), recorded in the public registry of commerce, and—as to known creditors without an address in Mexico—notified individually under Article 290. The Concurso Judgment is a public document, and the record of the Concurso Proceeding is available through the Federal Judiciary Council's electronic case system.

77. *Filing and litigation of claims*. Creditors may file claim requests under Article 125. Creditors resident abroad have forty-five calendar days under Article 291. The *conciliador* must also include, on its own initiative, claims appearing in the *comerciante*'s books and records (Articles 121 and 123), so that a creditor's failure to file does not by itself extinguish a recorded claim. Creditors may object to the provisional list under Article 129, and the recognition, ranking, and priority judgment is appealable under Articles 135 through 142.

78. *Equal treatment*. The statutory ranking of Articles 217 through 224 does not distinguish among creditors by nationality, residence, or the currency or governing law of their claims. Article 286 guarantees foreign creditors the same rights of access and participation as Mexican creditors, and Article 287 protects them from being subjected to Mexican jurisdiction for unrelated purposes by reason of filing a claim.

79. *Participation and voice*. Creditors representing the percentages set out in Article 63 may appoint *interventores* to represent creditor interests and to review the *comerciante*'s books

and the officials' conduct (Article 64). A *convenio* requires the affirmative subscription of recognized common and subordinated creditors representing more than fifty percent of the relevant claim amounts under Article 157, is subject to veto by recognized common creditors in the circumstances of Article 163, and takes effect only upon judicial approval under Articles 164 through 166.

80. *Independence and supervision of officials*. The *visitador*, *conciliador*, and *síndico* are not chosen by the debtor. They are registered with IFECOM, designated at random, subject to statutory duties of independence and to grounds of disqualification and recusal (Articles 328 through 331), required to post a bond (Article 327), and subject to removal and sanction (Articles 56, 57, and 336 through 338).

81. *Constitutional review*. Any party whose rights are affected by a determination in the Concurso Proceeding may seek review through the recourse of appeal where the LCM provides for it and, where it does not, through the constitutional amparo action, which permits any party (including foreign parties) to seek relief in federal court against judicial orders or government acts that allegedly violate rights under Mexico's Constitution.

82. For these reasons, in my opinion the Concurso Proceeding is conducted under a legal framework that provides notice, an opportunity to be heard, a neutral judicial forum, court-supervised and independent insolvency officials, and equal treatment of foreign and domestic creditors.

## XI. CONCLUSION

83. For the reasons set out above, it is my opinion, as a matter of Mexican law, that: (a) the Concurso Proceeding is a collective proceeding pending before a Mexican federal court under Mexico's federal insolvency statute, in which TV Azteca's assets and affairs are subject to the control and supervision of that court, for the purpose of reorganization or, failing that,

liquidation; (b) Mexico is the center of TV Azteca's main interests; (c) Rafael Rodríguez Sánchez is authorized under Mexican law, and in particular under Article 282 of the LCM, to act abroad in representation of the Concurso Proceeding; (d) Title Twelve of the LCM, Mexico's enactment of the Model Law, obliges Mexican courts and insolvency officials to cooperate with foreign courts and foreign representatives and to communicate with them directly; and (e) the Concurso Proceeding affords foreign creditors notice, access, and treatment equal to that of Mexican creditors.

84. I remain available to assist the Court with any question of Mexican law arising in connection with the Verified Petition.

IN WITNESS WHEREOF, I declare, under penalty of perjury under the laws of the United States of America, that the information set forth above is based on my current knowledge, information and belief after reasonable inquiry and, in contemplation of and subject to supplementation, true and correct.

Dated: September 9, 2026
Mexico City, Mexico

José Víctor Rodríguez Barrera