**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, New York 10036
Tel: (212) 872-1000
Fax: (212) 872-1002
Michael S. Stamer
Abid Qureshi
David M. Giller

2300 North Field Street, Suite 1800
Dallas, Texas 75201
Tel: (214) 969-2800
Fax: (214) 969-4343
Sarah Link Schultz (*pro hac vice pending*)

*Counsel to The Bank of New York Mellon as Indenture Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| TV AZTECA, S.A.B. DE C.V.,[1] | ) | Case No. 26-12217 (LGB) |
| Debtor in a Foreign Proceeding | ) | |

**MOTION OF THE INDENTURE TRUSTEE**
**FOR RELIEF FROM THE AUTOMATIC STAY**

[1] The last four digits of the Debtor's Mexican federal tax identification number are 4V78. The location of the corporate headquarters and the service address for the Debtor are Periférico Sur 4121, Col. Fuentes de Pedregal, Alcaldía Tlalpan, 14140, Mexico City, Mexico.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 2
JURISDICTION AND VENUE ..... 5
BACKGROUND ..... 5

A. TV Azteca and the Indenture ..... 6
B. TV Azteca Defaults on the Notes and the Notes Are Accelerated ..... 7
C. The Indenture Trustee's Initial Litigation to Recover on the Notes ..... 7
D. TV Azteca Commences Improper Mexican Litigation to Thwart Recovery ..... 8
E. Involuntary Bankruptcy ..... 10
F. The SDNY Litigation Resumes ..... 11

i. Anti-Suit Injunction ..... 11
ii. SDNY Litigation Advances ..... 12

G. TV Azteca's Additional Indenture Violations ..... 13
H. TV Azteca's Scheme to Manipulate the Concurso Mercantil Process ..... 14

i. AlterBank ..... 14

I. Concurso ..... 17

i. Filing and the Timeline for Establishing the Claim Pool ..... 17
ii. Preliminary Actions to Establish the Concurso Claim Pool ..... 20
iii. Conciliator's Provisional Creditor List and the Exclusion of the Trustee ..... 21
iv. TV Azteca's Objection to Other "Indenture Noteholder" Claims ..... 22

J. The Indenture Trustee's Efforts to Address TV Azteca's Misconduct Exposed in the Concurso Filing ..... 23
K. The Chapter 15 Case ..... 25

RELIEF REQUESTED ..... 26
BASIS FOR RELIEF ..... 27

A. If Recognition Is Granted, the Court Should Lift the Automatic Stay to Allow the Summary Judgment Motion to Continue Against TV Azteca ..... 27

i. The Balance of Harms Overwhelmingly Favors the Indenture Trustee ..... 29
ii. The Summary Judgment Motion Is Fully Briefed and Sub Judice ..... 34
iii. No Prejudice to the Debtor Will Result from Continuation of the Summary Judgment Motion ..... 34
iv. The Indenture Trustee Is Likely to Prevail on the Merits ..... 35

B. Lifting the Automatic Stay Will Aid the *Concurso* Court ..... 36
C. The Court Should Deny Certain Additional Relief Under Bankruptcy Code Section 1521 ..... 38
D. The Court Should Waive the Fourteen-Day Stay of Effectiveness ..... 39

RESERVATION OF RIGHTS ..... 39
NOTICE ..... 40
NO PRIOR REQUEST ..... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ABC Learning Centres Ltd.*,
445 B.R. 318 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013)..........................27

*In re Burger Boys, Inc.*,
183 B.R. 682 (S.D.N.Y. 1994)..........................28

*In re Collins*,
118 B.R. 35 (Bankr. D. Md. 1990)..........................35

*Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*,
No. 23-CV-11168, 2024 WL 1743109 (S.D.N.Y. Apr. 23, 2024)..........................33

*In re Ice Cream Liquidation, Inc.*,
281 B.R. 154 (Bankr. D. Conn. 2002)..........................34

*In re Kaplan Breslaw Ash, LLC*,
264 B.R. 309 (Bankr. S.D.N.Y. 2001)..........................32

*In re Martin*,
542 B.R. 199 (B.A.P. 6th Cir. 2015)..........................34

*Martinez v. Bloomberg LP*,
740 F.3d 211 (2d Cir. 2014)..........................33

*In re Maschinenbau*,
664 B.R. 863 (Bankr. N.D. Ga. 2024)..........................27

*In re Moche*,
677 B.R. 592 (Bankr. S.D.N.Y. 2026)..........................34

*New Hampshire v. Maine*,
532 U.S. 742 (2001)..........................35

*Rai v. WB IMico Lexington Fee,*
*LLC*, 802 F.3d 353 (2d Cir. 2015)..........................34

*In re Residential Cap., LLC*,
2012 WL 3249641 (Bankr. S.D.N.Y. Aug. 7, 2012)..........................32

*In re Sivec Srl*,
No. 11-80799-TRC, 2011 WL 3651250 (Bankr. E.D. Okla. Aug. 18, 2011)..........................27

*In re Sonnax Indus., Inc.*,
907 F.2d 1280 (2d Cir. 1990)..........................28, 35

*In re Vitro, S.A.B. de C.V.*,
701 F.3d 1031 (5th Cir. 2012) .......... 33

**Statutes**

11 U.S.C. § 362(d)(1) .......... *passim*

11 U.S.C. § 362(e) .......... 1, 26, 40

11 U.S.C. § 1506 .......... 34

11 U.S.C. § 1519 .......... 5, 26, 40

11 U.S.C. § 1520 .......... 27

11 U.S.C. § 1520(a)(1) .......... 5, 26, 27

11 U.S.C. § 1521 .......... *passim*

11 U.S.C. § 1521(a)(5) .......... 39

11 U.S.C. § 1522(a) .......... 5, 26, 38

11 U.S.C. § 1522(c) .......... *passim*

28 U.S.C. § 157 .......... 5

28 U.S.C. § 157(b)(2)(G) and (P) .......... 5

28 U.S.C. § 1334 .......... 5

28 U.S.C. § 1410(1) .......... 5

28 U.S.C. § 1782 .......... 20, 24

**Other Authorities**

Fed. R. Bankr. P. 2002 .......... 40

Fed. R. Bankr. P. 4001(a)(4) .......... *passim*

The Bank of New York Mellon, in its capacity as Indenture Trustee ("Indenture Trustee" or "Trustee"), by and through its undersigned counsel, hereby files this motion (this "Motion") seeking entry of an order under sections 362(d)(1) and 362(e) of title 11 of the United States Code (the "Bankruptcy Code") granting relief from the automatic stay, to the extent such stay is or may be imposed by any order recognizing TV Azteca's proceedings under Mexico's *Ley de Concursos Mercantiles* (the "*Concurso*" or "*Concurso* Proceedings") as a foreign main proceeding (the "Recognition Order"), to permit the continued prosecution and adjudication of *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V., et al.*, 22-cv-8164 (the "SDNY Litigation") and, specifically, the pending summary judgment motion (the "Summary Judgment Motion") against TV Azteca, S.A.B. de C.V. ("TV Azteca" or the "Debtor"). The Bank of New York Mellon serves as Indenture Trustee under that certain indenture dated as of August 9, 2017, (as amended, restated, supplemented or otherwise modified from time to time, the "Indenture") by and among TV Azteca, certain subsidiary guarantors (the "Guarantors") and the Indenture Trustee, pursuant to which TV Azteca issued its 8.250% Senior Notes due 2024 (the "Notes"). Pursuant to, and as defined in, the Indenture, the Trustee is the authorized representative of the Common Depository as registered Holder of the Notes. Through certain Clearing Agencies (as defined in the Indenture) and intermediaries, certain entities own beneficial interests in the Notes (the "Beneficial Owners"). The requested relief would not authorize execution, collection, enforcement, distribution, or payment based on any judgment absent further order, but only authority to liquidate such claim. Further, this Motion addresses only relief from the automatic stay; the Indenture Trustee reserves all rights with respect to recognition of the *Concurso* Proceedings, which it has opposed in its *Objection of the Indenture Trustee to the Verified Petition for Recognition of Foreign Main Proceeding* (the "Recognition Objection") filed contemporaneously herewith. On October 7, 2026, the Indenture Trustee filed the *Trustee's Motion for Expedited Consideration or To Refer Case to*

*the Bankruptcy Court* (the "Referral Motion"), seeking an order from the United States District Court for the Southern District of New York (the "District Court") referring the SDNY Litigation to this Court for coordination with this chapter 15 case (the "Chapter 15 Case").

In support of this Motion, the Indenture Trustee relies upon and incorporates by reference the Declaration of David M. Giller (the "Giller Dec.") and Declaration of Fernando del Castillo (the "Castillo Dec.") filed contemporaneously herewith. In further support of this Motion, the Indenture Trustee respectfully states as follows:

## PRELIMINARY STATEMENT[1]

1. To the extent the Court enters any form of the Recognition Order, it should immediately lift the automatic stay. TV Azteca is attempting to deprive the Indenture Trustee of its due process right to participate in the liquidation of its claim by weaponizing the U.S. bankruptcy process to block a nearly concluded New York-law dispute while executing a scheme in Mexico that would preclude the Indenture Trustee's participation while stripping value from its largest creditors. For over four years, TV Azteca has deployed every available tactic to avoid paying the debts it owed under the Indenture, including secret *ex parte* injunctions in Mexico, continued litigation in defiance of a federal Anti-Suit Injunction, scorched-earth discovery, hidden asset transfers, fraudulent loans, and now a Chapter 15 bankruptcy filing in this Court timed to freeze a $644 million summary judgment motion on the eve of decision. This, despite TV Azteca's own admission in the *Concurso* Petition that the Notes are a valid debt and that the full amount of principal and at least some amount of interest are owed. The automatic stay is meant to protect legitimate restructurings—not to reward serial abuse of legal process.

[1] Capitalized terms not otherwise defined in the Preliminary Statement shall have the meaning ascribed to such terms below.

2. If the stay is permitted to go into effect, the Indenture Trustee will be prevented, now and forever, from using the District Court's judgment to enforce its claim in the *Concurso* Proceedings. The *Concurso* Court could issue a Recognition of Credits Judgment identifying allowed claims as soon as the end of the month. Almost immediately after that, the Conciliator and TV Azteca will be free to submit a plan to the *Concurso* Court for approval. A decision on the Summary Judgment Motion must be reached *before* the *Concurso* Proceedings are complete (i.e., before a *Concurso* plan is approved) to ensure that the Indenture Trustee's claim is liquidated in accordance with the Indenture. Otherwise, the liquidated amount of the claim *cannot* be used in the *Concurso* or any potential appeal.

3. This is not an accident; it is the culmination of TV Azteca's years' long scheme of delay and obstruction, culminating in the *Concurso* and this Chapter 15 Case.[2] As of today, the provisional claims list created by the Conciliator in the *Concurso* proposes *not to recognize the Indenture Trustee's standing to pursue its own claim*, with such decision, upon information and belief and despite the purported neutral role of the Conciliator, stemming from pressure applied by TV Azteca. This is an unprecedented event that ignores the fact that indenture trustees routinely appear and participate in *concursos*. The result is that the Indenture Trustee may be unable to participate in the *Concurso* Proceedings, object to claims, or appeal unfavorable rulings. At the same time, TV Azteca seeks to use the Chapter 15 Case to "safeguard TV Azteca against creditors actively pursuing recovery" in the SDNY Litigation or, said differently, to ignore the forum selection clause and ensure that disputes under the Indenture are never decided in a New York court. The automatic stay should not be used to

[2] For years, TV Azteca has done everything to avoid litigating the amount due under the Indenture in New York, despite a New York forum selection clause, and has violated the Indenture repeatedly by creating new subsidiaries and improperly taking on additional debt. Notably, just days before TV Azteca filed its *Concurso* Petition, it granted security interests in support of an approximately $240 million "loan" from an unknown entity through AlterBank Ltd.—a St. Lucian lender whose affiliate was shut down by Puerto Rico regulators and who only a few years ago had $2.3 million in assets—a blatant violation of the Indenture designed to control the *Concurso*.

redirect adjudication of a dispute to a foreign jurisdiction and away from adjudication in the agreed forum of New York.

4. Recent developments in the *Concurso* demonstrate that a ruling on the Summary Judgment Motion is needed now more than ever. Despite TV Azteca's counsel representing to this Court at the October 5, 2026 status conference that "[n]o one is saying that monies are not due and owing" under the Notes, and its own *Concurso* Petition conceding the amount owed as $532 million, it was uncovered on October 7, 2026 that TV Azteca has objected to approximately $457 million of the approximately $595 million in debt the Conciliator proposed to recognize as owed to the Beneficial Owners under the Notes, arguing that the claim value of the Notes is limited solely to the Notes' distressed trading price of approximately $137 million. When combined with TV Azteca's potential 90% reduction of unsecured claims under its proposed *Concurso* plan, TV Azteca's *Concurso* scheme is fully unveiled: to reduce the at least $644 million "due and owing" under the Indenture to a potential recovery of just $13.7 million or approximately 2%. In furtherance of that scheme, TV Azteca seeks through this Chapter 15 Case to stop a New York court from determining the amount owed under the Indenture while simultaneously asking the *Concurso* Court to determine that same issue, to the detriment and prejudice of the Indenture Trustee and the Beneficial Owners it represents.

5. The Trustee requests that, if recognition is granted, it be allowed to continue litigating the Summary Judgment Motion in New York (as required by the forum selection clause), where the litigation has been ongoing for years. The dispute is fully submitted. This prompt relief is necessary to safeguard the Indenture Trustee's rights and to ensure that the forum selection clause in the Indenture is upheld. If TV Azteca's actions continue to be predicated on eliminating any recovery under the Indenture, the Trustee would seek additional relief in connection with the remainder of the SDNY Litigation. The automatic stay should be

a shield for legitimate debtors—not a sword to prevent the determination of the validity and amount owed under the Indenture in New York (the only permitted jurisdiction under the Indenture for such a determination).

## JURISDICTION AND VENUE

6. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. To the extent the Court enters a Recognition Order in these proceedings, this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) and (P).

7. The statutory predicates for the relief requested herein are Bankruptcy Code section 362(d)(1), which is made applicable to this Chapter 15 Case by section 1520(a)(1), and, to the extent the Court has granted any relief under Bankruptcy Code sections 1519 or 1521 that would otherwise stay or enjoin the SDNY Litigation, section 1522(c), which authorizes the Court to modify or terminate such relief. Section 1522(a) further requires the Court to ensure that any relief granted under Bankruptcy Code sections 1519 and 1521 "sufficiently protect[s]" the interests of the creditors and other interested persons, including the debtor. 11 U.S.C. § 1522(a). The relief requested herein is necessary to satisfy that obligation and to protect the Indenture Trustee's interests while permitting the *Concurso* Proceedings to continue.

8. Venue is proper in this Court under 28 U.S.C. § 1410(1).

## BACKGROUND[3]

9. At its core, this Motion is focused on ensuring that the Indenture Trustee can utilize the results of the Summary Judgment Motion, which under the Indenture's forum selection clause must be decided in New York, in the *Concurso*. This request is time-sensitive in order to ensure that it can actually be used in the *Concurso* and is not barred. It is also the

[3] To the extent not otherwise stated herein, the facts set forth in the Recognition Objection are incorporated by reference.

result of years of delay, obstruction, and malfeasance by TV Azteca. As such, a recitation of the facts that led us here is necessary.

**A. TV Azteca and the Indenture**

10. TV Azteca is one of the largest producers of Spanish-language television programming in the world, operating multiple national television networks in Mexico through more than 300 owned and operated stations across the country. *See* Giller Dec., Ex. 1. TV Azteca is majority-owned and controlled by Mexican billionaire Ricardo B. Salinas Pliego and is a member of Grupo Salinas. *Id*.

11. On August 9, 2017, TV Azteca issued $400 million in debt pursuant to the Indenture. Giller Dec., Exs. 2, 3. Under the terms of the Indenture, TV Azteca is obligated to make semiannual interest payments at a rate of 8.250% per annum on the $400 million principal amount until the Notes matured in August 2024 (the "Maturity Date"). *Id.*, Ex. 2 § 3.1(b), Ex. 3. Interest continues to accrue after default and during any bankruptcy proceeding. *Id.*, Ex. 2 §§ 2.12, 3.1(b). All of TV Azteca's subsidiaries at the time guaranteed the Notes and unconditionally waived all defenses to payment. *Id.*, Ex. 2 § 10.1. The Indenture requires that new subsidiaries created by TV Azteca must also guarantee the Notes. *See* Giller Dec., Ex. 51.

12. The Indenture contains New York choice-of-law and forum selection clauses, which provide that the Indenture "shall be governed by, and construed in accordance with, the law of the State of New York" and that "***any suit, action or proceeding*** against TV Azteca arising from or relating to the Indenture (including the Note Guarantees)" or the Notes "may be instituted in any court of the State of New York or any [U.S.] court sitting, in each case, in the Borough of Manhattan." *Id.*, Ex. 2 § 11.7 (emphasis added). TV Azteca and the Guarantors further agreed to the "***exclusive jurisdiction of any court of the State of New York or any [U.S.] court sitting, in each case, in the Borough of Manhattan***." *Id.* (emphasis added).

13. Under the Indenture, TV Azteca cannot defer or amend its payment obligation without the written consent of the registered Holder of the Notes. *Id.* § 9.2. The Indenture also includes certain limits on TV Azteca's ability to incur additional debt, create unrestricted subsidiaries, transfer assets, or grant additional liens without securing the Notes.[4] In addition, the Indenture requires TV Azteca to provide detailed quarterly financial reports, audited financial statements, and notices of certain changes. As detailed below, TV Azteca breached each of these provisions.

**B. TV Azteca Defaults on the Notes and the Notes Are Accelerated**

14. On February 9, 2021, TV Azteca defaulted on the Notes, announcing that it had unilaterally "deferred" payment on the Notes. *Id.*, Ex. 4. TV Azteca and the Guarantors have made no interest payments since. *Id.*, Ex. 2 §§ 3.18(a), 6.1(b). The Indenture Trustee served TV Azteca with notices of default in March 2021 and March 2022, and notices of acceleration in August 2022. *Id.*, Exs. 5-9. The notices of acceleration made the principal and accrued and unpaid interest on the Notes "immediately due and payable." *Id.*, Ex. 2 § 6.2(a). The Notes matured on August 7, 2024. They remain unpaid.

**C. The Indenture Trustee's Initial Litigation to Recover on the Notes**

15. On August 26, 2022, the Indenture Trustee initiated litigation against TV Azteca and the Guarantors in the Supreme Court of the State of New York, County of New York, with a motion for summary judgment in lieu of complaint—an accelerated proceeding available when an action is based on an instrument for the payment of money. *Id.*, Ex. 10. TV Azteca removed the SDNY Litigation to the District Court. *Id.*, Ex. 11. In response to the Trustee's motion for summary judgment in lieu of complaint, TV Azteca *did not dispute its default* but

[4] Specific reference to relevant Indenture provisions can be found in the Trustee's Memorandum of Law in Support of Its Motion for Leave to File an Amended Complaint & an Expedited Trial, Giller Dec., Ex. 85 at pdf pages 46, 50, 52 ¶¶ 80-85, 97-98, 104-105.

instead challenged the propriety of a motion for summary judgment in lieu of complaint in federal court. *Id*., Ex. 12.

**D. TV Azteca Commences Improper Mexican Litigation to Thwart Recovery**

16. Notwithstanding the forum selection clause in the Indenture, and without notice to the Indenture Trustee or the Beneficial Owners, TV Azteca filed multiple litigations in Mexico seeking to prevent enforcement of the Indenture.

17. Unbeknownst to the Trustee or the Beneficial Owners, on July 8, 2022, TV Azteca filed an undisclosed, *ex parte*, complaint in the Ninth Superior Court of Mexico against certain Beneficial Owners, asserting that the Holder Acceleration Notice "is not legally valid and has no legal effect," and seeking an order that payment of the unpaid principal under the Indenture "is not due and payable." *Id*., Ex. 13 at 4-5 (emphasis omitted). On July 12, 2022, the Ninth Superior Court issued an *ex parte* injunction purporting to prohibit any proceedings to enforce the Notes. *Id*., Ex. 14. This injunction was extended on August 17, 2022, August 23, 2022, and May 17, 2023 (the "July Mexican Litigation"). *Id*., Exs. 15-17. The Indenture Trustee and the Beneficial Owners only became aware of the July Mexican Litigation through TV Azteca's court filings in connection with a subsequent involuntary bankruptcy proceeding before this Court.

18. On September 22, 2022—27 days after TV Azteca was served with the original action in New York state court and one day before it filed its removal papers—TV Azteca secretly commenced litigation against 35 defendants, including certain Beneficial Owners and the Indenture Trustee, in the Sixty-Third Superior Court of Mexico.[5] TV Azteca argued that it did not need to repay the Notes and that the Indenture should be declared "***null and void.***"[6] *Id*.,

[5] The judge in the Sixty-Third Superior Court was identified in Mexican publications as a "friend Judge" to Salinas. Giller Dec., Ex. 55.

[6] Specifically, TV Azteca argued that the court should find that "the early maturity did not take place" and that "it is not appropriate to require the payment of the premium, the accrued and unpaid interest, and other amounts owed under certain 8.250% Senior Bonds maturing in 2024." *Id*., Ex. 18 at 19.

Ex. 18 at 8 (emphasis added). On September 27, 2022, the Sixty-Third Superior Court, relying on the COVID-19 pandemic, issued an *ex parte* injunction that purported to prohibit TV Azteca from making any payments arising from the Indenture and the Indenture Trustee and the defendant Beneficial Owners from "initiat[ing] and/or fil[ing] any proceeding for the collection and/or payment of the unpaid principal of the Bonds" issued under the Indenture. *Id.*, Ex. 19 at 19. It also ordered the "suspension of all enforcement proceedings" and "***suspend[ed] all payment obligations***" arising from the Indenture. *Id.* (emphasis added) (the "September Mexican Litigation" and, together with the July Mexican Litigation, the "Mexican Litigations"). The Indenture Trustee and Beneficial Owners were not notified of the complaint or injunction associated with the September Mexican Litigation.

19. On February 21, 2023—approximately five months after TV Azteca removed the litigation in New York state court—TV Azteca finally served the Indenture Trustee with the complaint and injunction associated with the September Mexican Litigation. Certain Beneficial Owners were served in June and July 2023.

20. To preserve its rights, the Indenture Trustee opposed the September Mexican Litigation in the Mexican courts, stating, among other things, that the Mexican courts did not have jurisdiction since the Indenture's forum selection clause vests New York courts with exclusive jurisdiction regarding the Indenture. *Id.*, Ex. 20. TV Azteca, continuing its delay tactics, argued that the Mexican courts should not rule on jurisdiction until *all* 35 defendants to the September Mexican Litigation were properly served, despite the fact that TV Azteca was making no attempt to serve all defendants. *Id.*, Ex. 21. On appeal, the Mexican courts ruled in TV Azteca's favor, requiring the Trustee to file a collateral attack known as an *amparo* proceeding. *Id.*, Ex. 22.[7]

---

[7] A more detailed explanation of the procedural history of the Mexican Litigations can be found in the Motion to Enjoin and Reply. Giller Dec., Exs. 23, 24.

21. Meanwhile, in May 2023, the World Health Organization and Mexico issued statements declaring that COVID-19 was no longer a health emergency. *Id.*, Exs. 25, 26. The Trustee filed a motion with the Sixty-Third Superior Court to vacate the injunction in the September Mexican Litigation on the grounds that COVID-19 no longer presented a health emergency in Mexico (the "Motion to Vacate"). *Id.*, Ex. 27. However, on January 25, 2024, the Sixty-Third Superior Court denied the Motion to Vacate on the grounds that "there are still cases of the COVID-19 virus." *Id.*, Ex. 28.

22. On January 8, 2024, at TV Azteca's request, the Sixty-Third Superior Court issued an order directing that Judge Gardephe be notified of the existence and status of the September Mexican Litigation. *Id.*, Ex. 29. The Sixty-Third Superior Court stated that the purpose was to "avoid the possibility of contradictory decisions in [SDNY]" and that Judge Gardephe should "***refrain from issuing a decision*** in case number: 1:22-cv-08164-PGG." *Id.* at 1 (emphasis added).

**E. Involuntary Bankruptcy**

23. On March 20, 2023, certain Beneficial Owners filed an involuntary petition (the "Involuntary Petition") against TV Azteca and the Guarantors in the United States Bankruptcy Court for the Southern District of New York, before this Court. Giller Dec., Ex. 30. TV Azteca responded by filing a motion to dismiss the Involuntary Petition (the "Motion to Dismiss"). During the ensuing litigation, the Beneficial Owners learned of the previously undisclosed July Mexican Litigation.

24. Notably, during the pendency of the involuntary bankruptcy case, TV Azteca never stated that the Notes were not in default or that the $400 million in principal and hundreds of millions in interest was not due and owing. TV Azteca's counsel did state, however, that TV Azteca would *not* comply with Court orders and stated that counsel had "no reason to believe at this point in time that TV Azteca is going to participate here in a consensual proceeding" or

that TV Azteca would engage in a "cooperative proceeding." *Id.*, Ex. 31, Hr'g Tr. at 74:20-23; 75:4-6. In a hearing, the Court highlighted that TV Azteca was making contradictory arguments in Mexico and the United States concerning whether the Notes were due and owing,[8] that TV Azteca had failed to inform Judge Gardephe of the Mexican Litigations,[9] and that the Mexican Litigations were improper in light of the Indenture's forum selection clause.[10]

25. On November 27, 2023, the Court granted TV Azteca's Motion to Dismiss solely on the basis that a bona fide dispute existed as to the liability and amount of the redemption premium under the Indenture.[11]

**F. The SDNY Litigation Resumes**

i. Anti-Suit Injunction

26. On June 28, 2024, the Indenture Trustee moved for an order enjoining TV Azteca from prosecuting or initiating claims in Mexico, in connection with the Indenture.

27. On September 22, 2025, Judge Gardephe entered an Order enjoining TV Azteca and its subsidiaries, officers, agents, servants, employees and attorneys from commencing or prosecuting any action in Mexico concerning the Indenture (the "Anti-Suit Injunction"). *Id.*, Ex. 33. Judge Gardephe ruled that the Mexican Litigations "concern TV Azteca's financial obligations arising out of its alleged default on notes issued under the Indenture" and as such "both actions violate the Indenture's forum selection clause." *Id.* at 23. The Anti-Suit Injunction also required TV Azteca to take all steps necessary to cause the pending Mexican Litigations to be dismissed. *Id.*

---

[8] *Id.*, Ex. 31 at 50:4-6 (Judge Beckerman: "So can you explain why the Debtor is making one argument in the United States and another argument in Mexico?").

[9] *Id.* at 157:3-13 (Judge Beckerman: "What bothered me is that you didn't tell Judge Gardephe. That's a different situation. You've asked him to decide something where there's a contrary process going on in a court outside of the country when your own indenture says really clearly that it's supposed to be going on in front of him. And I don't know what he'd want to do with that, but he doesn't know about it.").

[10] *Id.* at 50:13-17 (Judge Beckerman: "How about there's no jurisdiction based on the contract that you all agreed to in the indenture for the Mexican court to be dealing with any of those issues? And the fact that you all have commenced actions . . . that is in violation of your contract.").

[11] Giller Dec., Ex. 32, Order Granting Motion to Dismiss, *In re: TV Azteca, S.A.B. de C.V.,* No. 23-10385 (LGB) (Bankr. S.D.N.Y.).

28. TV Azteca initially defied that injunction and continued to prosecute the Mexican Litigations. On October 16, 2025, the Indenture Trustee filed a letter requesting that the District Court hold TV Azteca in contempt for failing to dismiss the Mexican Litigations and for filing additional pleadings in Mexico *after* the court issued the Anti-Suit Injunction. *Id.*, Ex. 34. TV Azteca continued to ignore the Anti-Suit Injunction and falsely informed the Mexican courts that the Anti-Suit Injunction was not binding and that a stay was forthcoming. *Id.* As a result, on November 12, 2025, the Indenture Trustee renewed its request to the District Court to hold TV Azteca in contempt. *Id.*, Ex. 35. The District Court ordered a briefing schedule for the contempt motion and TV Azteca finally withdrew the Mexican Litigations—almost two months after the imposition of the Anti-Suit Injunction. *Id.*, Ex. 36. TV Azteca has since appealed the Anti-Suit Injunction to the Second Circuit, where the matter is fully briefed and scheduled for oral argument. TV Azteca did not obtain a stay of the Anti-Suit Injunction pending appeal.

ii. SDNY Litigation Advances

29. On July 11, 2025, the Indenture Trustee filed a complaint in the SDNY Litigation, mooting the parties' dispute about the propriety of the Trustee's summary judgment motion in lieu of complaint. *Id.*, Ex. 37. Following a status conference where Judge Gardephe cautioned TV Azteca that a motion to dismiss could be frivolous, TV Azteca filed an answer. *Id.*, Exs. 38, 39. In its answer, TV Azteca admitted that the Notes were valid. *Id.*, Ex. 40 ¶¶ 2, 49. However, TV Azteca raised twelve affirmative defenses, including that the beneficial ownership of the Notes by U.S. persons rendered the hundreds of millions of dollars it borrowed not recoverable despite marketing the Notes to U.S. investors; an argument that the loan was "usurious" under Mexican law (notwithstanding the New York choice-of-law provision); and an "impossibility" defense accusing Beneficial Owners of somehow conspiring with the President of Mexico to rig a decision of the Mexican Supreme Court. *Id.* at 11-13.

On December 17, 2025, TV Azteca pressed that same conspiracy theory in an improper third-party complaint against certain Beneficial Owners. *Id.*, Ex. 41. On January 22, 2026, the Indenture Trustee filed a motion to strike TV Azteca's third-party claims. *Id.*, Ex. 42.

30. TV Azteca also pursued a scorched-earth discovery strategy. It served 23 sweeping requests for production and six interrogatories on the Indenture Trustee, issued two letters rogatory, and served more than 100 third-party subpoenas. *Id.*, Ex. 43 at 2. TV Azteca demanded the identity and personal details of every Beneficial Owner, regardless of their location or size. None of that discovery had any bearing on the Indenture Trustee's claim for breach of contract based on the undisputed nonpayment of the Notes. To stop TV Azteca's abuses, the Indenture Trustee moved in February 2026 to stay TV Azteca's discovery and requested leave to move for summary judgment. *Id.*, Exs. 43, 44. Three weeks later, the District Court granted the motion after finding that the defendants had engaged in "unduly burdensome and inefficient" discovery to pursue claims that were likely to be dismissed as a matter of law. *Id.*, Ex. 56.

31. On April 17, 2026, the Indenture Trustee filed the Summary Judgment Motion. *Id.*, Ex. 45. That motion is fully briefed and pending. *Id.*, Exs. 45-48. In that briefing, TV Azteca concedes that the Indenture is valid, it issued the Notes, and it failed to repay them but opposes relief based on alleged defenses under Mexican law (notwithstanding the New York choice-of-law clause), an argument that a breach of purported transfer restrictions renders the Notes not "due and owing," and an impossibility defense. *Id.*, Exs. 47, 49.

**G. TV Azteca's Additional Indenture Violations**

32. Even after the SDNY Litigation commenced, TV Azteca continued to violate the Indenture and has failed to disclose those violations to the Indenture Trustee, despite the Indenture's strict reporting requirements. Those violations include the creation of new subsidiaries and the transfer of valuable assets away from creditors.

33. TV Azteca secretly created new subsidiaries and then transferred assets worth hundreds of millions of dollars to those entities without having those entities execute new guarantees to repay the Notes as required under the Indenture. Most glaringly, TV Azteca created a new subsidiary, Televisión Azteca III, S.A. de C.V. ("TVA III"), which purported not to be a guarantor of the Notes, and moved the majority of its consolidated net assets—more than all of TV Azteca's other subsidiaries combined—to that entity. Giller Dec., Ex. 50. This included TV Azteca's single most valuable asset: its government-issued broadcasting license, also known as a concession. *See* Giller Dec., Ex. 51 at 6, 17, 20. This action was prohibited by the Indenture and appears designed solely to move TV Azteca's most valuable assets out of the reach of the Trustee.

34. TV Azteca also repeatedly breached the Indenture's reporting requirements. TV Azteca has not provided the Indenture Trustee with the detailed financial information required by Section 3.18 of the Indenture for over five years, despite repeated requests. The most recent financial information TV Azteca provided the Trustee pursuant to the Indenture was for the year ending December 31, 2019. TV Azteca has also failed to provide the Indenture Trustee with a Certificate of Compliance with its obligations under the Indenture or notice that it has breached its obligations under the Indenture, as the Indenture explicitly mandates. *Id.*, Ex. 2 §§ 3.5, 6.1(b).

**H. TV Azteca's Scheme to Manipulate the Concurso Mercantil Process**

35. Ultimately, TV Azteca filed the *Concurso*. Before doing so, however, it engaged in numerous improper activities in order to manipulate the *Concurso* to ensure that the Trustee and the Beneficial Owners would not recover under the Indenture.

i. AlterBank

36. On January 29, 2026, unbeknownst to the Indenture Trustee or any Beneficial Owner, TV Azteca obtained a secured loan from Alter Bank Ltd. ("AlterBank"), for

approximately $290 million, although only $240 million was disbursed (the "AlterBank Loan"). *See* Castillo Dec., Ex. 8. The circumstances and details of the AlterBank Loan present significant issues involving potential fraudulent conduct.

37. The most pressing issue, and the one which TV Azteca and AlterBank have worked the hardest to avoid coming to light (*infra* ¶ 57-58), is the fact that the AlterBank Loan appears to be nothing more than a sham passthrough loan by affiliates of TV Azteca. The AlterBank Loan documents explicitly acknowledged that AlterBank was only an "administrative conduit" and the "record holder on behalf of the Lenders;" that "[a]ll extensions of credit are made by the Lenders," who were not identified in either of the AlterBank Loan documents. Castillo Dec., Ex. 9 at § 2.01, § 5. However, the Indenture Trustee has recently learned that at least $120 million of the $240 million disbursed as part of the AlterBank Loan was provided by Arrendadora Internacional Azteca ("Arrendadora"), which as of November 2025 was *99% owned by the same company that owns a majority of TV Azteca -- Comunicaciones Avanzadas, S.A. de C.V.* Giller Dec., Ex. 64 at 5; Chapter 15 Petition for Recognition of a Foreign Proceeding [Dkt. No. 1] at PDF 126. Arrendadora also separately owned 3.10% of TV Azteca as of November 2025. *Id.*, Ex. 65. Specifically, on January 26, 2026, *three days before AlterBank disbursed the loan*, Arrendadora opened an AlterBank account with an initial deposit of $120 million, and projected outgoing transfers of up to $100 million per month. *Id.*, Ex. 66 at 1-6. Notably, AlterBank's internal records show the exact amount disbursed to TV Azteca, MXN 4.085 billion pesos or $240 million at the time, as funds held in "Client Custody" and not as a loan or investment of its own. *Id.*, Ex. 67.

38. Two other TV Azteca subsidiaries also opened accounts at AlterBank: Lasimex and Operadora Mexicana De Televisión, S.A. de C.V. *Id.*, Exs. 68, 69. The amount those subsidiaries transferred to AlterBank at that time is unknown. Rafael Rodríguez Sánchez (the "Foreign Representative") was an authorized signatory on behalf of Lasimex. *Id.*, Ex. 69 at 5.

In addition, TV Azteca itself opened an account in November 2025. The Foreign Representative is listed as the authorized signatory on behalf of TV Azteca. *Id.*, Ex. 70 at 2-3.

39. Significant effort has been made to conceal the true source of the AlterBank funds. In a resolution purportedly dated December 26, 2025, the ownership of Arrendadora was transferred to two Texas LLCs created in the preceding months, Sappodilla LLC and Zaragola LLC. Giller Dec., Ex. 75; *id.*, Ex. 66 at 12. Zaragola, incorporated only eleven days earlier, purportedly capitalized an $80 million loan to acquire ownership of Arrendadora. *Id.*, Exs. 75, 66 at 2. However, the metadata and DocuSign page for the December 26 resolution show that the file was in fact created and signed on January 29, 2026—the day of the AlterBank Loan. *Id.*, Ex. 75 at 822. In addition, although the AlterBank account opening documents listed Sappodilla and Zaragola as Arrendadora's owners, Arrendadora did not disclose any indirect or beneficial owners even though the account registration form called for that information. *Id.*, Ex. 75.

40. There are multiple additional reasons to question the AlterBank "loan":

- AlterBank, a St. Lucian "alternative financial institution," had only ***$2.3 million in total assets*** as of March 31, 2024, up from $0.87 million on December 31, 2022, no history of making loans of similar size, and no history of lending to distressed entities. Giller Dec., Ex. 57 at 86-87. The approximately $240 million AlterBank Loan was more than ***104x*** the total assets of AlterBank less than two years prior.

- The AlterBank Loan purported to create a lien on the assets of TVA III which, as described above, was a subsidiary created in secret by TV Azteca to be the recipient of TV Azteca's most valuable asset, its television concession.

- At the time the AlterBank Loan was issued, TV Azteca had been in default under the Notes for nearly five years and was commercially insolvent under Mexican law. Castillo Dec., Ex. 14 at 17.

- The AlterBank Loan had a maturity date of July 29, 2026, *only six months* after it was originally extended. Castillo Dec., Ex. 8 at 5.[12]

[12] Notably, it also had an annual fixed interest rate of 17.5%. Castillo Dec., Ex. 8 at 4.

- The funds were immediately disbursed on January 29, 2026, by AlterBank to TV Azteca, *prior* to the perfection of any security interest granted by TV Azteca. *Id.,* § 5.05; Castillo Dec., Ex. 9 at 2.

- The AlterBank Loan was amended on March 6, 2026 (the "March 6 Amendment"), just over a week after TV Azteca announced that its shareholders had approved its filing for a *Concurso* and four days before that filing. Castillo Dec., Exs. 1, 9. At the time of execution of the March 6 Amendment, TV Azteca was *already* in default under multiple provisions governing debt restrictions and insolvency, among others. Castillo Dec., Ex. 9 §§ 6.01(b), (c), (h) and (i).

- Puerto Rico's bank regulator, the Office of the Commissioner of Financial Institutions (the "OCIF"), shut down AlterBank's affiliate, Nodus International Bank, Inc. ("Nodus"), for defrauding depositors. Giller Dec., Ex. 58 at 3-4. The OCIF also noted that AlterBank was "not ready to receive new customers, as it did not possess the licenses required to operate in Saint Lucia nor the infrastructure necessary to fulfill its obligations to the Receiver." *Id.* ¶ 130.

41. The result of the loan is that AlterBank is allegedly now TV Azteca's largest secured creditor with a claim for more than $240 million in connection with TV Azteca's *Concurso*.

**I. Concurso**

i. Filing and the Timeline for Establishing the Claim Pool

42. On February 26, 2026, TV Azteca's management group announced that its shareholders had authorized filing the *Concurso*, a commercial bankruptcy proceeding in Mexico. *See* Castillo Dec., Ex. 1. TV Azteca subsequently filed its *Concurso* petition on March 10, 2026 (the "*Concurso* Petition") and on March 20, 2026, the judge of the First District for *Concurso* matters (the "*Concurso* Court") admitted the *Concurso* Petition and directed the *Instituto Federal de Especialistas de Concursos Mercantiles* ("IFECOM") to appoint a *visitador*. *Id.*, Ex. 9 at 3. The *Concurso* Court denied TV Azteca's request in the *Concurso* Petition to extend the enforcement stay to TV Azteca's jointly and severally liable obligors,

guarantors and subsidiaries and, after TV Azteca unsuccessfully moved for reconsideration, the *Concurso* Court affirmed its decision on May 14, 2026. *Id.*, Ex. 13 at 3-7, 11-12.

43. On July 6, 2026, the *Concurso* Court declared TV Azteca commercially insolvent, retroactive to October 9, 2025, and opened the conciliation stage. *Id.*, Ex. 14 at 17. On July 13, 2026, IFECOM designated Sergio Francisco Hermida Guerrero as the *conciliador* (the "Conciliator"), and on July 15, 2026, the *Concurso* Court approved the appointment. *Id.*, Ex. 15 at 2. As part of any *Concurso,* the Conciliator prepares a provisional creditor list and ranks creditors based on the company's books and records as well as proofs of claim submitted by creditors. *Id.* ¶ 4. All such determinations must be approved by the *Concurso* Court. *Id.*

44. On August 10, 2026, the *Concurso* judgment was published in the *Diario Oficial de la Federación* and in a national newspaper, commencing the 185-calendar-day conciliation stage (the "Initial Conciliation Period"). *Id.*, Ex. 16. The *Concurso* Court may extend the Initial Conciliation Period for up to two 90-day periods, subject to certain requirements. *Id.* ¶ 5.

45. The *Concurso* Petition lists the Notes as TV Azteca's "most relevant and significant" overdue liabilities and acknowledges that TV Azteca owes $532,000,000 under the Notes. *Id.,* Ex. 2 ¶ 63-67. This consists of the Notes' principal ($400,000,000), plus the interest payments that TV Azteca did not pay between February 2021 and the Notes' maturity in August 2024 (eight missed payments of $16,500,000 each). *Id.* ¶ 66. This amount does *not* include interest that accrued after maturity or the default interest payments required by the Indenture. *Id.* The *Concurso* Petition states that the Notes represent at least 36.92% of TV Azteca's liabilities[13] and recognizes the role of the Indenture Trustee under the Indenture. *Id.* ¶ 66. In addition, Annex 3 of the *Concurso* Petition identifies the pending litigation surrounding the Notes. *Id.*, Ex. 3 at 5.

[13] Notably, under Mexican bankruptcy and insolvency law (*Ley de Concursos Mercantiles*) (the "LCM"), a debtor must show that it is in default on more than 35% of its total debt for at least 30 days. Castillo Dec. ¶ 11. TV Azteca relied on the $532,000,000 owed on the Notes to meet this threshold and listed the Trustee as creditor. *Id.*

46. The *Concurso* Petition also includes TV Azteca's proposed creditor plan, which relies on intercompany claims and reducing the Trustee's voting power. It also contemplates repaying alleged secured creditors, such as AlterBank, in full and leaving TV Azteca's equity holders' interests intact, while discounting the claims of unsecured creditors, including the claims under the Notes, by up to 90% (i.e., the proposed plan would pay 10% of the amount determined to be owed on the Notes).[14] *Id.*, Ex. 4 at 6. A creditor plan can be approved if it is approved by creditors holding a majority of TV Azteca's debt and the majorities required under the LCM. Castillo Dec. ¶ 34. If the debtor and creditors holding over 50% of the debt cannot approve a plan during the conciliation period, then there is a liquidation (*quiebra*) of the debtor's assets. *Id.* ¶ 6.

47. After the Initial Conciliation Period commences:[15]

- Creditors domiciled in Mexico have 20 calendar days to submit proofs of claim and creditors domiciled outside of Mexico have 45 calendar days. *Id.* ¶ 21.
- The Conciliator has 30 calendar days from the commencement of the Initial Conciliation Period to submit a provisional list of creditors to the *Concurso* Court to "recognize" or allow claims for voting and distribution purposes. *Id.*
- Parties then have five business days to object to the provisional list. *Id.*
- The Conciliator has ten business days from the deadline to submit objections to the provisional list to submit a final list to the *Concurso* Court for approval. *Id.*
- The *Concurso* Court has five business days from receipt of the final list to issue an order recognizing the creditors and the ranking of their debt (the "Recognition of Credits Judgment") (although it often takes longer in practice). *Id.* ¶ 33.
- Before the Recognition of Credits Judgment is issued, if the *Concurso* Court is provided with a *final* judgment for a disputed claim, the *Concurso* Court will use that judgment to determine the amount of the

[14] The initial *Concurso* plan may be modified by the Conciliator and TV Azteca prior to its submission to the *Concurso* Court after the Recognition of Credits Judgment (defined below) is entered. Castillo Dec. ¶ 34.
[15] All deadlines in the *Concurso* are subject to extension by the *Concurso* Court. Castillo Dec. fn 4.

disputed claim. *Id.* ¶ 35. If it is not final, the *Concurso* Court may consider the judgment in its discretion. *Id.*

- After issuance of the Recognition of Credits Judgment but any time before the *Concurso* is finalized, a party can utilize an incident proceeding (*incidente*) to provide the *Concurso* Court with additional evidence regarding contested proofs of claim or appeal the Recognition of Credits Judgment. *Id.* If the *Concurso* closes without that information being provided, it cannot be used in any future appeal. *Id.*

ii. Preliminary Actions to Establish the Concurso Claim Pool

48. On August 17, 2026, the Trustee submitted a motion to exclude the AlterBank claim as a fraudulent transfer under Mexican law (the "AlterBank Fraud Motion"). *Id.*, Ex. 5. The AlterBank Fraud Motion seeks to have the *Concurso* Court declare that the AlterBank Loan is void. *Id.* Both TV Azteca and the Conciliator replied to the AlterBank Fraud Motion, as ordered by the *Concurso* Court, on September 2 and 4, 2026, respectively. *Id.* ¶ 15. The Trustee submitted its replies in further support of the AlterBank Fraud Motion to the *Concurso* Court on September 8 and 11, 2026. *Id.*, Exs. 6 and 7. On September 18, 2026, in response to a request from the Trustee, the *Concurso* Court ordered that TV Azteca and the Conciliator produce certain documents and information regarding the AlterBank Loan, including the true creditors in the loan and the amount of their respective participation. *Id.*, Ex. 10 at 5. On September 30, 2026, TV Azteca and the Conciliator submitted certain documents in response to the September 18 order, and the *Concurso* Court ordered that the Trustee had until October 7, 2026 to review and challenge TV Azteca's and the Conciliator's submissions. *Id.* ¶ 16. On October 7, 2026, the Trustee challenged the adequacy of those document submissions and requested that the *Concurso* Court require the Conciliator and TV Azteca to provide additional information regarding the true creditors behind the AlterBank Loan. *Id.*, Ex. 11. As part of that filing, the Trustee also submitted certain documents produced in the Section 1782 proceeding to the Conciliator and *Concurso* Court. *Id.* The AlterBank Fraud Motion remains pending in the *Concurso* Court. Castillo Dec. ¶ 16.

49. On August 28, 2026, the Trustee submitted a proof of claim in the *Concurso* for all principal and interest outstanding under the Notes as of July 6, 2026, totaling $644,992,128.36 (the "Trustee Proof of Claim"). Castillo Dec., Ex. 17 at 2. On September 22, 2026, the Trustee filed a motion to have an intervenor appointed. Castillo Dec. ¶ 23. An intervenor is an advocate for creditors who can supervise the Conciliator and is allowed to request information from both the Conciliator and TV Azteca. *Id.* Creditors representing 10% of a debtor's debt may request the appointment of an intervenor, and such appointment is mandatory. *Id.* On September 24, 2026, the *Concurso* Court reserved consideration until the Indenture Trustee appears on the list of creditors submitted by the Conciliator or in the Recognition of Credits Judgment from the *Concurso* Court. *Id.*, Ex. 18 at 6.

iii. Conciliator's Provisional Creditor List and the Exclusion of the Trustee

50. On September 17, 2026, the *Concurso* Court published the provisional list of creditors submitted by the Conciliator (the "September 17 Provisional Creditor List"). *Id.*, Ex. 19. The September 17 Provisional Creditor List proposed to recognize the AlterBank claim in the amount of 4,405,010,815 Mexican pesos, over $240 million. *Id.* at 5. This proposed recognition amount is approximately 315 million Mexican pesos more than the amount TV Azteca asserted was owed to AlterBank. *Id.*, Ex. 3 at 3. The September 17 Provisional Creditor List identified the amount of the Trustee's claim at 1,179,802,181.96 UDIs, or approximately $595 million, an amount approximately $50 million less than asserted in the Trustee Proof of Claim, but *also* stated that it was *not* recognizing the Trustee Proof of Claim because "the creditor fails to demonstrate that it is the holder of all the bonds, a fact evidenced by the individual bondholders who have separately requested recognition of their claims in these proceedings." *Id.*, Ex. 19 at 31. In addition, the Conciliator stated that since the "calculation and award of interest remain PENDING" in a different court, he did not want to "create a risk of conflicting rulings between the two forums." *Id.* (capitalization in original).

51. On September 22, 2026, the *Concurso* Court published a revised provisional creditor list (the "September 22 Provisional Creditor List") submitted by the Conciliator. *Id.* Ex. 20. The September 22 Provisional Creditor List explicitly states that the *Trustee's claim should be disallowed in its entirety*. *Id.* at 29. The reason is the same as outlined in the September 17 Provisional Creditor List: the Trustee has "not demonstrated that it is the holder of all the bonds."

52. Crucially, if the Indenture Trustee's claim is disallowed, the Trustee *will not* have standing and thus will not be allowed to participate in the *Concurso*. This means it cannot maintain its pending objection to the allowance of the AlterBank claim, seek appointment of the intervenor, have its claim taken into account when calculating the majorities required for the approval of the plan proposed by the Conciliator and TV Azteca, or appeal any adverse decisions. Castillo Dec. ¶33.

iv. TV Azteca's Objection to Other "Indenture Noteholder" Claims

53. Although the September 22 Provisional Creditor List submitted by the Conciliator seeks to disallow the Indenture Trustee's claim in its entirety, it did identify debt related to the Note issuance in the amount of $594,677,513.00 or 1,179,212,281.9 UDIs, divided between five separate claims: 14.52, 14.53, 14.54, 14.55 and 14.56. Castillo Dec., Ex. 20 at 7.

54. On October 7, 2026, the *Concurso* Court published objections filed by TV Azteca to the September 22 Provisional Creditor List (the "TVA Objection").[16] Castillo Dec., Ex. 22. The TVA Objection objects to claims 14.52, 14.53, 14.54 and 14.56, which comprise approximately $457 million of the approximately $595 million. TV Azteca did not object to claim 14.55, of approximately $137 million. TV Azteca contends that *only* claim 14.55 is a valid claim for the value of the Notes because it reflects "the market value of the credit right

[16] The TVA Objection appears to violate the Anti-Suit Injunction and the Indenture Trustee reserves its rights to seek appropriate relief. Such relief would not be barred by the automatic stay, even if it were ultimately in place.

incorporated in the [Notes] as of the date of the commercial bankruptcy judgment[,]" i.e., the market price of the Notes. *Id*. at 5.[17] If TV Azteca's objections are upheld, then the *maximum* claim amount that the Beneficial Owners could obtain in connection with the Note issuance would be approximately $137 million. However, if TV Azteca's proposed plan of restructuring is approved, due to the 90% reduction the actual recovery could be as little as $13.7 million.

### J. The Indenture Trustee's Efforts to Address TV Azteca's Misconduct Exposed in the Concurso Filing

55. On June 8, 2026, the Indenture Trustee filed a pre-motion letter in the SDNY Litigation seeking to amend its complaint to include new information the Trustee learned after the *Concurso* was filed (the "Amended Complaint"). Giller Dec., Ex. 53. As discussed in more detail above, TV Azteca hid its prior bad acts and violations of the Indenture from the Indenture Trustee. Those violations directly relate to TV Azteca's goal to manipulate the *Concurso* to deny recovery to the Indenture Trustee and Beneficial Owners. In addition to relief in connection with the Notes, the Amended Complaint seeks injunctive relief requiring TV Azteca to name subsidiaries as guarantors and a declaratory judgment that TV Azteca breached its (i) obligation to name subsidiaries as guarantors, (ii) restriction on incurring additional debt beyond the Notes, (iii) restriction on incurring liens or security interests, and (iv) restrictions on intercompany debt voting. *Id.* The Indenture Trustee asked TV Azteca and its *Concurso* counsel to confirm its compliance with its voting obligations in a June 4 letter, but TV Azteca did not respond. *Id.* The Indenture Trustee also requested an expedited trial due to the threat of irreparable harm arising from the *Concurso*. The District Court permitted the Indenture Trustee to file a motion for leave to file the Amended Complaint, which was fully briefed on July 15, 2026, and remains pending.

---

[17] TV Azteca further claims that interest on the Notes is not due because, among other things, it is "the subject of a pending lawsuit" and that the appropriate value is the "market price of a defaulted bond is the price of the entirety of the rights that the security confers principal, interest, and expectation of return[.]" Castillo Dec., Ex. 22 at 9, 11.

56. On June 2, 2026, the Indenture Trustee filed an *ex parte* application under 28 U.S.C. § 1782 in the United States District Court for the Southern District of Florida, seeking leave to serve subpoenas on AlterBank and its current and former directors and officers for discovery to use in the *Concurso* Proceedings, including to challenge the AlterBank Loan as a fraudulent transaction.[18] On July 14, 2026, AlterBank filed a motion to quash, and on August 3, 2026, TV Azteca filed a non-party expedited motion to intervene. On September 18, 2026, the District Court for the Southern District of Florida denied the motion to quash, ordered depositions to occur "IMMEDIATELY," and held that TV Azteca could intervene in part. *Id.*, Ex. 54. On September 22 and 23, 2026, AlterBank and an individual respondent filed notices of appeal, and on September 23 and 25, 2026, AlterBank and the individual respondent filed motions to stay pending appeal.[19] *Id.*, Exs. 59-61. Most recently, AlterBank filed a "notice of correction" in the Southern District of Florida and withdrew its appeal after acknowledging that sworn statements by AlterBank's CEO to contest personal jurisdiction in the Section 1782 proceeding were false and that the March 31, 2026 resignation letter of a former AlterBank director was backdated and was actually signed on July 2, 2026. Giller Dec., Ex. 78. On September 29, 2026, TV Azteca filed a renewed motion for a protective order and to stay discovery arguing, among other things, that whether AlterBank and TV Azteca intended to defraud creditors is irrelevant. *Id.*, Ex. 62.[20] The motion to stay and for a protective order are pending, with a court conference scheduled for Wednesday, October 14, 2026.

57. To date, the Indenture Trustee has received some documents from AlterBank's co-founder and former chief business officer, a portion of which identify the real lenders to the

---

[18] *In re Application of The Bank of New York Mellon* v. *Santander et al.*, Case No. 26-23885 (JEM) (S.D. Fla. June 2, 2026) (the "1782 Application"). As set forth in greater detail in the 1782 Application, AlterBank largely conducted its business in Florida and many of its directors and employees also reside there.

[19] TV Azteca agreed to indemnify AlterBank, its shareholders, officers, directors, agents, and attorneys-in-fact and any other lenders for "losses, claims, damages, liabilities and related expenses (including the fees, charges and disbursements of any counsel [ ])" that arise out of the AlterBank Loan. Castillo Dec., Ex. 9 § 8.03.

[20] TV Azteca also recently requested that the parties enter into a protective order to limit the use of any discovery outside of the 1782 Application and the *Concurso*.

AlterBank Loan and are attached to this Motion. Notably, on October 10, 2026, the Trustee was informed that AlterBank and the individual directors would not produce documents on the previously agreed upon timetable and demanded that relevant non-privileged documents, including those identifying lenders to the AlterBank Loan, should be destroyed. *Id.*, Ex. 80. On October 12, 2026, the Trustee filed a motion to compel AlterBank and certain officers and directors to produce documents and appear at a deposition, and to reject any effort to claw back already produced documents. *Id.*, Ex. 86.

### K. The Chapter 15 Case[21]

58. On September 16, 2026, TV Azteca filed the Chapter 15 Petition, seeking relief under chapter 15 of the Bankruptcy Code and recognition of TV Azteca's *Concurso* Proceedings as a foreign main proceeding.[22] TV Azteca noted in the Chapter 15 Petition that it "obtained a credit facility from AlterBank Ltd." to "satisfy the tax liability owed to the Mexican federal tax authority" and to "avoid seizure of the Company's operations assets."[23] Sánchez Dec. [Dkt. No. 3], ¶ 20. In addition, TV Azteca stated that the Chapter 15 Case was commenced specifically to "safeguard TV Azteca against creditors actively pursuing recovery," a reference to the SDNY Litigation. *Id.*, ¶ 46.

59. On October 5, 2026, the Court held a status conference to discuss the Trustee's request to file a motion for lift stay relief and to have a joint evidentiary hearing combined with recognition. During the status conference, the Court noted that it was "concerning…that there was the possibility that somebody would have the view that the Indenture Trustee couldn't have a claim there because of the fact there were other noteholders that had asserted claims as well and disallow it on those grounds potentially" and that "one would think that perhaps, at least

[21] As of October 6, 2026, ten of TV Azteca's subsidiaries, including seven guarantors of the Notes, have filed *concurso* petitions, all of which have been transferred to the *Concurso* Court. Castillo Dec. ¶ 36; *Id.*, Ex. 23. To date, those proceedings have not been recognized and are not part of this Chapter 15 Case.

[22] *Verified Petition for Recognition of Foreign Main Proceeding and Related Relief* [Dkt. No. 2].

[23] *See Declaration of Rafael Rodríguez Sánchez in Support of the Verified Petition for Recognition of Foreign Main Proceeding and Related Relief* (the "Sánchez Dec.") [Dkt. No. 3], ¶ 20.

with respect to principal and some of the interest that there wouldn't be a disagreement here." Giller Dec., Ex. 79 at 9:12-17; 10:19-21. Notably, counsel for TV Azteca stated that "[n]o one is saying that monies are not due and owing. The question is which court and which forum is going to be the one to deal with it." *Id*. at 18:3-5. Subsequently, the Court issued a scheduling order providing that an evidentiary hearing on this Motion would occur simultaneously with the recognition hearing, if the Trustee objected to recognition, on November 9 and 10, 2026. *Id.*, Ex. 81.[24]

**RELIEF REQUESTED**

60. The Indenture Trustee respectfully requests, pursuant to Bankruptcy Code sections 362(d)(1) and 362(e) (as made applicable by section 1520(a)(1)) and, in the alternative and to the extent the Court has granted any relief under Bankruptcy Code sections 1519 or 1521 that would otherwise stay or enjoin the SDNY Litigation, section 1522(c), that the Court grant final relief from the automatic stay, to the extent such stay is imposed by any Recognition Order, to permit the continued prosecution of the Summary Judgment Motion against TV Azteca.[25] Given the running of the 185-day conciliation period in the *Concurso* and the imminent Recognition of Credits Judgment, immediate and final relief is necessary. The Indenture Trustee further requests that the Court waive the fourteen-day stay of effectiveness under Bankruptcy Rule 4001(a)(4). To the extent the Recognition Order also grants discretionary relief under Bankruptcy Code section 1521, such relief should be limited to satisfy the Court's obligation under section 1522(a) to ensure that creditor interests are

---

[24] On October 7, 2026, the Indenture Trustee filed the Referral Motion in the District Court. *See* Giller Dec., Ex. 82.

[25] The Trustee reserves all rights to seek further relief from the stay related to other aspects of the SDNY Litigation in order to address other issues in the *Concurso* such as if TV Azteca seeks to improperly use intercompany debt in *Concurso* voting.

sufficiently protected. In addition, the Indenture Trustee requests that, if Judge Gardephe grants the Referral Motion, this Court address the merits of the Summary Judgment Motion.[26]

**BASIS FOR RELIEF**

**A. If Recognition Is Granted, the Court Should Lift the Automatic Stay to Allow the Summary Judgment Motion to Continue Against TV Azteca**

61. Chapter 15 imports, rather than independently creates, the automatic stay. Upon recognition of a foreign main proceeding, Bankruptcy Code section 1520(a)(1) provides that "section 362 applies with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(1). Because the stay arises by operation of Bankruptcy Code section 1520(a)(1), relief is available under section 362(d)(1), which applies by incorporation.[27]

62. The Indenture Trustee seeks relief from the stay on a conditional basis—that is, to the extent the Court enters a Recognition Order. This is not inconsistent with Bankruptcy Code section 1520 where, as here, there is an urgent need for relief. Further, other courts have entertained motions for stay relief filed concurrently with, or in advance of, recognition, addressing both at the same hearing and granting conditional relief in the event recognition is granted. *See In re Maschinenbau*, 664 B.R. 863, 874 n.13 (Bankr. N.D. Ga. 2024) (addressing lift-stay motion concurrently with recognition despite debtor's argument that motion was "technically" premature because debtor had "ample notice and opportunity to oppose"); *In re Sivec Srl*, No. 11-80799-TRC, 2011 WL 3651250, at *1 (Bankr. E.D. Okla. Aug. 18, 2011) (granting recognition and stay relief simultaneously); *In re ABC Learning Centres Ltd.*, 445

[26] To be clear, absent further Court order, to the extent both recognition and this Motion are granted, the Indenture Trustee does not intend to and will not take any action to enforce any judgment resulting from the Summary Judgment Motion during the pendency of the Chapter 15 Case.

[27] Since TV Azteca is the sole Debtor in this Chapter 15 Case, the automatic stay only applies to TV Azteca and in relation to the SDNY Litigation claims against TV Azteca. To the extent TV Azteca seeks to extend the automatic stay to other parties or actions, the Indenture Trustee reserves all rights.

B.R. 318, 339 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013). Accordingly, the relief requested herein is properly before the Court.

63. Bankruptcy Code section 362(d)(1) provides that the Court shall grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). Because "cause" is not defined, courts determine it on a case-by-case basis by balancing the totality of the circumstances. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285-86 (2d Cir. 1990). Relevant *Sonnax* considerations include whether relief will resolve some or all of the issues, whether the other litigation interferes with the bankruptcy case or prejudices other creditors, whether the litigation is ready for trial, the interests of judicial economy and prompt resolution, and the balance of harms. *Id.* at 1286. Not every factor must be present, and courts give substantial weight to litigation that is already well advanced in another forum. *See In re Burger Boys, Inc.,* 183 B.R. 682, 688 (S.D.N.Y. 1994).

64. The Trustee has more than met its burden to demonstrate "cause" to lift the automatic stay in connection with the Summary Judgment Motion. TV Azteca has admitted that the purpose of the Chapter 15 Case is to prevent the District Court from adjudicating claims under the Indenture. In fact, this Chapter 15 Case is nothing more than the culmination of TV Azteca's years-long pattern of bad acts designed to achieve its overarching goal—ensuring that no court in New York or the United States ever decides the amount owed under the Indenture and that the Beneficial Owners are denied any meaningful recovery. This long-standing litigation has suffered through multiple delays due to the obstructionist tactics of TV Azteca, but now finally stands at the brink of resolution with the fully briefed Summary Judgment Motion. Resolution of the fully briefed Summary Judgment Motion in a New York court is not only required under the Indenture but a prompt decision will aid the *Concurso* Court in determining the appropriate value of this claim, the value of which is disputed by both TV Azteca and the Conciliator. Notably, the Conciliator himself identified the issue and risk of

"conflicting rulings" in connection with determining the Indenture Trustee's claim. Castillo Dec., Ex. 19 at 31.

65. To be clear, time is of the essence. Right now, a decision on the Summary Judgment Motion liquidating the Indenture Trustee's claims can be used by the *Concurso* Court without any additional litigation. Castillo Dec. ¶ 35. If a decision is reached on the Summary Judgment Motion after the *Concurso* Court issues a Recognition of Credits Judgment—which can occur as early as October 23, 2026—then the Trustee will need to file an incident proceeding in the *Concurso*, which still permits the *Concurso* Court to use the Summary Judgment Motion decision. *Id.* A *Concurso* plan can, though, be proposed *immediately* after the Recognition of Credits Judgment. *Id.* ¶ 34. If the *Concurso* concludes before a decision on the Summary Judgment Motion, the Trustee will *never* be able to use that judgment in the *Concurso*, and perhaps ever, completing TV Azteca's plan and functionally eliminating the Indenture's forum selection clause. *Id.* ¶¶ 34-35. As a result of the time constraints in the *Concurso*, the Indenture Trustee has submitted the Referral Motion to Judge Gardephe to either consider the motions pending before him on an expedited basis or refer the SDNY Litigation, including the Summary Judgment Motion, to this Court. This will allow for prompt resolution of the Summary Judgment Motion to the extent the District Court has not ruled on it prior to recognition, assuming recognition is granted over the Recognition Objection.

i. <u>The Balance of Harms Overwhelmingly Favors the Indenture Trustee</u>

66. The balance of harms overwhelmingly favors the Indenture Trustee. The attendant stay associated with this Chapter 15 Case is simply the latest part of TV Azteca's scheme to not only ensure that the Beneficial Owners never recover what they are owed, but that the claims brought under the Indenture are never decided in a New York court. For over four years, TV Azteca has taken every action possible to avoid a New York court determining the amount of its liability and issuing a judgment against TV Azteca for Notes that it has failed

to pay under the Indenture. First, TV Azteca used procedural gamesmanship to avoid a decision on the underlying merits. Then, TV Azteca filed secret *ex parte* injunctions in an attempt to prevent Judge Gardephe from ruling on the Notes, a blatant violation of the Indenture's forum selection clause that required the imposition of the Anti-Suit Injunction. Next, TV Azteca sought harassing worldwide discovery solely to delay resolution of litigation surrounding its nonpayment of the Notes under the Indenture. Subsequently, TV Azteca filed a *Concurso* petition to ensure that the Beneficial Owners would never recover what they are owed. Finally, after there was a fully briefed Summary Judgment Motion, and in a blatant attempt to avoid an adverse judgment by a New York court, TV Azteca filed this Chapter 15 Case. This is not speculative. The Chapter 15 Petition states that the reason for the filing was to prevent resolution of the SDNY Litigation, including the Summary Judgment Motion, and the TVA Objection and TV Azteca's proposed *Concurso* plan would impose a combined 90% haircut on the Notes, while leaving TV Azteca's equity holder interests and secured debt, including the fraudulent AlterBank Loan, practically untouched. Castillo Dec., Ex. 4 at 6; Castillo Dec., Ex. 22 at 4.

67. This is not an accident. It is TV Azteca's design. As discussed above, before filing the *Concurso*, TV Azteca engaged in repeated bad acts to manipulate the *Concurso* process and ensure that the Indenture Trustee—and by extension the Beneficial Owners—who holds by far the largest claim, is not able to collect. This occurred through improper loans from purported third parties such as AlterBank and the improper creation of additional subsidiaries in violation of the Indenture. The AlterBank Loan is particularly glaring and is clearly designed to ensure that TV Azteca can control the *Concurso* process. The purported $240 million loan was ***over a hundred and four times larger than AlterBank's total assets*** only two years ago, was made while TV Azteca was insolvent, and had a purported maturity date of only six

months.[28] *See supra* ¶ 36-41. And it is this purported loan rather than the Beneficial Owners, that TV Azteca intends to pay back in full in its proposed *Concurso* plan. TV Azteca also incurred several hundred million dollars of intercompany indebtedness without notifying the Indenture Trustee and without requiring those intercompany creditors to agree to comply with the Indenture's voting requirements, creating millions in debt that TV Azteca can control in the *Concurso*.

68. Recent developments in Mexico, which upon information and belief are at TV Azteca's behest, only highlight the Indenture Trustee's concern. As described above, it is the Conciliator's responsibility to create a provisional creditor list that identifies the proposed amount of each claim for both payment and voting purposes in the Concurso. Castillo Dec. ¶ 21. In line with that, the Conciliator issued the September 22 Provisional Creditor List.[29] Notably, the September 22 Provisional Creditor List recognizes the AlterBank Loan but does *not* recognize the Indenture Trustee's claim, based, at least in part, on the pending Summary Judgment Motion. Castillo Dec., Ex. 20 at 5, 29-31. This unprecedented action means not only that the Trustee cannot participate in the *Concurso*, but also that it cannot object to claims (such as the AlterBank Loan), seek to appoint an intervenor, or appeal an adverse decision, which as discussed in the Recognition Objection, is a blatant denial of due process. Castillo Dec., ¶ 33.

69. As noted above, recent developments in both this Court and the *Concurso* Court confirm exactly why stay relief is necessary. On October 7, 2026, TV Azteca filed the TVA Objection, objecting to approximately $457 million of the Beneficial Owners' claims that the Conciliator proposes to recognize and instead asking the *Concurso* Court to recognize approximately $137 million based on the distressed trading price of the Notes, approximately

[28] The AlterBank Loan is currently the subject of an objection in the *Concurso*. Castillo Dec., Ex. 5.

[29] The Indenture Trustee has objected to the September 22 Provisional Creditor List in the *Concurso*. Castillo Dec. ¶ 25.

23% of the amount asserted in the Trustee Proof of Claim. TV Azteca is attempting to have the value of the Notes decided in Mexico while simultaneously using the Chapter 15 Case to prevent the New York court chosen by the parties from deciding the same issue. The automatic stay should not be used to pause litigation in the parties' agreed upon forum while TV Azteca attempts to obtain a more favorable determination of the same issues elsewhere.

70. TV Azteca's improper actions to prevent determination of the Trustee's claims in New York, and thereby gain strategic advantages in the *Concurso* Proceedings, should not be permitted by this Court. It is well established that a debtor cannot utilize the automatic stay as both a sword and a shield or to thwart a creditor's lawful obligations and remedies. *In re Residential Cap., LLC*, 2012 WL 3249641, at *2 (Bankr. S.D.N.Y. Aug. 7, 2012) (noting that "the stay is a shield, not a sword") (internal quotation marks omitted); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 320 (Bankr. S.D.N.Y. 2001) (granting relief from stay where the "case was filed as a tactical step in connection with the Debtor's battles with the Mortgageholder, to sidestep the Debtor's obligations for money that was actually borrowed, and used by the Debtor in the manner that the Debtor had intended" and "the Debtor sought to exploit section 362's automatic stay not for a temporary 'breathing spell,' but, rather, as a means to maintain ownership of the Warehouse without satisfying the debt associated with it, and to effect delay, and, if possible, a total blockage, of Mortgageholder remedies."). That is exactly what TV Azteca is now attempting to do through the TVA Objection.

71. By TV Azteca's own admissions, the Chapter 15 Case was commenced specifically to "safeguard TV Azteca against creditors actively pursuing recovery" in the SDNY Litigation.[30] Chapter 15 Petition [Dkt. No. 2] ¶ 5. But the goal here is not to protect the Debtor from collateral attack in a foreign jurisdiction, it is to ensure that TV Azteca avoids

[30] TV Azteca's recent exuberance for the U.S. bankruptcy courts is particularly jarring because, the last time TV Azteca was in this Court, its counsel stated that it had "no reason to believe at this point in time that TV Azteca is going to participate here in a consensual proceeding." Giller Dec., Ex. 31, Hr'g Tr. 74:20-23, *In re: TV Azteca, S.A.B. de C.V.*, No. 23-10385 (LGB) (Bankr. S.D.N.Y.).

and never pays its contractual obligations. If not lifted, the result of the Chapter 15 Case and the automatic stay will be to prevent resolution of the Summary Judgment Motion. If the Court is not able to rule on those issues before the *Concurso* is concluded, then those issues will become moot. That development makes stay relief more—not less—necessary: prompt resolution of the Summary Judgment Motion will liquidate the Notes claim and clarify the parties' rights under New York law before those rights are overtaken by the Mexican claims process.

72. This is especially important because absent relief from the automatic stay, the Indenture's forum selection clause will be rendered obsolete. It is well established that "there is a strong public policy in enforcing forum selection clauses." *Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*, No. 23-CV-11168 (JGLC), 2024 WL 1743109, at *5 (S.D.N.Y. Apr. 23, 2024). The Second Circuit has held that the "presumptive enforceability of forum selection clauses reflects a strong federal public policy of its own, which would likewise be undermined if another body of law were allowed to govern the enforceability of a forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014). Notably, Judge Gardephe has already ruled on the applicability and importance of the Indenture's forum selection clause through the Anti-Suit Injunction, which remains in effect. Lifting the stay as to the Summary Judgment Motion will allow the parties to resolve this issue in the place that they agreed years ago it should be litigated: New York. The principles of comity that underlie chapter 15 reinforce, rather than defeat, the relief sought. Comity is reciprocal: if this Court respects the Mexican forum for purposes of the *Concurso*, it should also respect the New York-law claims that the parties agreed would be resolved under New York law. Chapter 15 does not require United States courts to abdicate jurisdiction over disputes governed by United States law; it requires cooperation between forums. *See In re Vitro, S.A.B. de C.V.*, 701 F.3d

1031, 1069 (5th Cir. 2012); 11 U.S.C. § 1506. Enforcing the contractual choice-of-law provisions to which TV Azteca agreed serves both proceedings.

ii. The Summary Judgment Motion Is Fully Briefed and Sub Judice

73. The SDNY Summary Judgment Motion currently pending before Judge Gardephe is fully briefed and ready for resolution, as acknowledged by TV Azteca. *See* Sánchez Dec. [Dkt. No. 3] ¶ 26.

74. At this stage, staying the Summary Judgment Motion would discard substantial judicial and party resources, not advance judicial economy, and require the parties to duplicate work in another forum—which as addressed above is an improper violation of the forum selection clause. Courts routinely grant stay relief where litigation is this far advanced. *In re Moche*, 677 B.R. 592, 610 (Bankr. S.D.N.Y. 2026) (lifting a stay where the only remaining issue was a fully briefed equitable distribution hearing to determine the parties' property rights and result in a judgment); *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 166-67 (Bankr. D. Conn. 2002) (lifting a stay where cross-motions for summary judgment were fully briefed and only oral argument remained); *In re Martin*, 542 B.R. 199, 203 (B.A.P. 6th Cir. 2015) (affirming the bankruptcy court's grant of stay relief where the state court litigation was further along than the bankruptcy court and involved state law fraud issues, additional parties not involved in the bankruptcy court proceeding, and a jury demand). Further, judicial economy is advanced when, as here, the issues to be decided are legal in nature. *Rai v. WB IMico Lexington Fee, LLC*, 802 F.3d 353, 368 (2d Cir. 2015) (noting "the question of entitlement to that interest, which is governed by statutory and contractual provisions, presents a purely legal issue" and that "[c]onfronting the question now would also further the interest of judicial economy.").

iii. No Prejudice to the Debtor Will Result from Continuation of the Summary Judgment Motion

75. Proceeding with the fully briefed Summary Judgment Motion will not prejudice TV Azteca. There is no merit to TV Azteca's assertion in the Chapter 15 Petition that the

automatic stay provided by recognition of the Chapter 15 Case would "prevent piecemeal enforcement that would prejudice the orderly restructuring." [Dkt. No. 2], ¶ 57. For the avoidance of doubt, the Indenture Trustee will not seek to enforce any decision associated with the Summary Judgment Motion during the pendency of the Chapter 15 Case, and thus there is no potential of "piecemeal enforcement." Instead, the decision on the Summary Judgment Motion will be utilized in the *Concurso*, resolving a problem identified by the Conciliator, the potential for competing judgments, by providing an answer to a pending question—the amount owed under the Indenture. TV Azteca consented to the exclusive jurisdiction of New York courts in adjudicating disputes under the Indenture and it can hardly claim to be prejudiced in being held to its bargain. To the extent that courts determine that there is prejudice to defendants, it is often because the litigation itself is in the early stages, which is not the case here. *See In re Sonnax Indus.*, 907 F.2d at 1287 (declining to lift stay in part because "the litigation in state court has not progressed even to the discovery stage"); *In re Collins*, 118 B.R. 35, 38 (Bankr. D. Md. 1990) (declining to lift the stay where parties in state court proceeding had not yet begun discovery).

iv. The Indenture Trustee Is Likely to Prevail on the Merits

76. Likelihood of success further supports relief. In the SDNY Litigation, TV Azteca concedes that it entered into the Indenture, issued the Notes, and failed to pay them when due. Giller Dec., Ex. 47 at 9-11 and Ex. 49 at 18. The *Concurso* Petition admits that the Notes are valid and that the full amount of principal and interest, apart from default interest, is owed.[31] Those admissions provide a strong basis for applying judicial estoppel to TV Azteca's contrary position in the SDNY Litigation, and the Summary Judgment Motion, that the Notes are not "due and owing." *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001)

[31] This is also consistent with TV Azteca's statements in the involuntary bankruptcy which focused on the dispute surrounding the redemption premium. Giller Dec., Ex. 31 Hr'g Tr. 159:12-160:5.

(holding that judicial estoppel bars a party from asserting a position "clearly inconsistent" with a position in a prior proceeding).

77. To the extent TV Azteca's arguments are not estopped, and to be clear they are, TV Azteca's remaining defenses do not justify continued maintenance of the stay. TV Azteca's defenses rely on Mexican law, which is precluded by the Indenture's New York choice-of-law clause, or on an incorrect understanding of who is the "Holder" of the Notes. In addition, there is no support for TV Azteca's impossibility argument that somehow the Beneficial Owners convinced the President of Mexico to rig a Supreme Court decision to force Salinas to pay taxes he already owed. These fanciful defenses do not establish a genuine dispute sufficient to justify freezing a nearly completed action.

**B. Lifting the Automatic Stay Will Aid the *Concurso* Court**

78. In addition to there being more than adequate "cause" to lift the automatic stay as to the Summary Judgment Motion, such relief will aid the *Concurso* Court. This is not conjecture; it is the view of the Conciliator, who has the responsibility for creating the provisional creditor list. He explained that part of his decision not to recognize the Indenture Trustee's claim was because the "calculation and award of interest remain PENDING resolution in a dispute initiated by the Holders in a different court." Castillo Dec., Ex. 19 at 31 (emphasis in original). Further, since "no final judgment has been rendered…as of today, there are no liquidated and due amounts" and "[r]ecognizing the ancillary assets at this stage would ***prejudge a pending dispute and create a risk of conflicting rulings between the two forums***[.]" *Id.* at 33 (emphasis added).

79. The risk of conflicting rulings is significant. TV Azteca has now asked the *Concurso* Court to reduce the recoverable value of the Notes by approximately $457 million and determine that only the distressed trading price of the Notes should be recognized as their

value. That objection puts squarely before the *Concurso* Court the same issue that is pending in the Summary Judgment Motion: the amount due under the Indenture.

80. This is not a case where the stay against TV Azteca of the Summary Judgment Motion is necessary in order to effectuate an orderly distribution of estate assets. In fact, the opposite is true. A resolution of the fully briefed and pending Summary Judgment Motion will answer the key question that the Conciliator himself noted is "pending"—what is the "liquidated and due amount" of what TV Azteca owes under the Indenture. That question, under the Indenture's forum selection clause, must be settled in New York. Nor is this a case where the Indenture Trustee is asking this Court to issue an order that would affect or otherwise direct the *Concurso* Court. Lifting the automatic stay will instead permit Judge Gardephe, or this Court if the Referral Motion is granted, to expeditiously decide the Summary Judgment Motion and allow the Indenture Trustee to use that judgment in the *Concurso*. It is TV Azteca that is improperly seeking to use the stay to effectively void the Indenture's forum selection clause. Indeed, the TVA Objection in the *Concurso* demonstrates that a prompt ruling on the Summary Judgment Motion would assist the *Concurso* Court in resolving questions that TV Azteca itself has now placed in dispute.

81. However, and as noted above, for the judgment resulting from the Summary Judgment Motion to be used in the *Concurso*, it must arrive soon. Currently, a decision on the Summary Judgment Motion, even if it is non-final, can be used by the *Concurso* Court without any additional litigation necessary. Castillo Dec. ¶ 29. If a decision is reached on the Summary Judgment Motion after the *Concurso* Court issues a Recognition of Credits Judgment, then it can still be considered by the Concurso Court, but the Trustee will need to file an incident proceeding in the *Concurso* or file an appeal. *Id.* But, if the automatic stay is permitted to go into effect and it is not lifted, then there will be *no* opportunity for the judgment to *ever* be used

in the *Concurso*.[32] *Id*. TV Azteca will then seek to approve a *Concurso* plan, first in Mexico and then in the United States, that wipes out the value of the Indenture Trustee's and the Beneficial Owners' claims. This improper result would reward years of TV Azteca delay and obstruction, void the forum selection clause in the Indenture, and forever harm the Indenture Trustee and Beneficial Owners.

### C. The Court Should Deny Certain Additional Relief Under Section 1521

82. To the extent the Court grants recognition and provides discretionary relief under Bankruptcy Code section 1521, section 1522(a) requires the Court to ensure that such relief "sufficiently protect[s]" the interests of the creditors. 11 U.S.C. § 1522(a); *see also* 11 U.S.C. § 1522(c) (authorizing modification of such relief). Granting the sweeping, unspecified relief sought in the Chapter 15 Petition would do the opposite. *See* [Dkt. No. 2], ¶ 60 ("recognize and enforce . . . any other orders issued by the Concurso Court prior to the date of the entry of the [Recognition] Order"). Unlike the automatic stay, it is unclear how the *Concurso* Court orders would impact ongoing proceedings in the United States, including with respect to the automatic stay or the relief sought herein. Granting TV Azteca such broad relief at this stage would likely do the opposite of protecting the interests of creditors, as it could impede the determination of the Indenture Trustee's claim in the proper forum while TV Azteca races to complete a *Concurso* process that could wipe out 98% of its recovery. The Conciliator already proposes not to recognize the Indenture Trustee's claim, and TV Azteca has now objected to the substantial majority of the already reduced claims under the Indenture that the Conciliator proposes to recognize. If the stay remains in place, or similar relief is obtained through the additional relief sought under Bankruptcy Code section 1521, the Indenture Trustee

---

[32] As noted above, the Indenture Trustee has filed the Referral Motion with Judge Gardephe to either consider the motions pending before him on an expedited basis or refer the SDNY Litigation to this Court, including the Summary Judgment Motion. As TV Azteca and the Conciliator acknowledge, the SDNY Litigation, and especially the Summary Judgment Motion, are relevant in connection with the *Concurso* and this Court will be able to resolve such motions expeditiously.

may find itself excluded from the *Concurso* Proceedings entirely while the Summary Judgment Motion sits idle and recoveries under the Indenture are functionally eliminated. That is not creditor protection; it is creditor elimination. The Court should not permit it and should decline to exercise its discretion to grant the additional relief sought in paragraph 60 of the Chapter 15 Petition.[33]

**D. The Court Should Waive the Fourteen-Day Stay of Effectiveness**

83. The Court should waive the fourteen-day stay of effectiveness under Bankruptcy Rule 4001(a)(4) and make the order granting stay relief effective immediately. The Summary Judgment Motion is fully briefed and pending. Further delay would prejudice the Indenture Trustee after more than four years of litigation. TV Azteca's course of conduct—including years of improper *ex parte* Mexican litigation, delayed compliance with the Anti-Suit Injunction, scorched-earth discovery tactics, and the eve-of-bankruptcy AlterBank Loan—shows that any procedural gap may be used to delay the Summary Judgment Motion. Immediate effectiveness is therefore necessary to prevent further prejudice and allow the litigation to proceed without interruption. *See* Fed. R. Bankr. P. 4001(a)(4).

## RESERVATION OF RIGHTS

84. The Indenture Trustee hereby reserves all rights, claims, and defenses it may have against the Foreign Representative, the Debtor, and any other party, whether or not asserted in this Motion. Nothing in this Motion shall be deemed a waiver of any such rights, claims, or defenses.

85. The Indenture Trustee further reserves the right to supplement, amend, or modify this Motion, and to file additional objections, briefs, or other papers addressing any issues raised in the Motion or related proceedings.

---

[33] To the extent recognition is granted, the Indenture Trustee does not object to the Foreign Representative's request that the Court "entrust him with the administration and realization of all property of TV Azteca within the territorial jurisdiction of the United States pursuant to section 1521(a)(5) of the Bankruptcy Code." [Dkt. No. 2], ¶ 61.

86. The Indenture Trustee further reserves the right to object to any future motion by the Foreign Representative to extend the automatic stay or any other protection to non-debtor subsidiaries, guarantors, or other affiliates of the Debtor.

## NOTICE

87. Notice of this Motion has been provided to (i) the Chambers of the Honorable Lisa G. Beckerman, (ii) the Debtor, (iii) Sullivan & Cromwell LLP, as counsel for the Debtor, (iv) the Office of the United States Trustee for the Southern District of New York, and (v) all other parties entitled to notice pursuant to Bankruptcy Rule 2002. The Indenture Trustee submits that such notice is sufficient, and no other or further notice need be provided.

## NO PRIOR REQUEST

88. No previous application for the relief requested in this Motion has been made in this or any other court in the United States.

89. **WHEREFORE**, the Indenture Trustee respectfully requests that the Court enter the proposed order, substantially in the form attached hereto as **Exhibit A**, granting the Indenture Trustee final relief from the automatic stay pursuant to Bankruptcy Code sections 362(d)(1) and 362(e), and, in the alternative and to the extent the Court has granted any relief under Bankruptcy Code sections 1519 or 1521 that would otherwise stay or enjoin the SDNY Litigation, section 1522(c), to the extent the automatic stay is imposed by any Recognition Order, to continue the prosecution of the Summary Judgment Motion against the Debtor, waiving the fourteen-day stay of effectiveness under Bankruptcy Rule 4001(a)(4), and granting such other and further relief as the Court deems just and proper.

*[Remainder of page intentionally left blank]*

Dated: October 13, 2026

Respectfully submitted,

*/s/ Michael Stamer*
Michael S. Stamer
Abid Qureshi
David M. Giller
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, New York 10036
Tel: (212) 872-1000
Fax: (212) 872-1002
Email: mstamer@akingump.com
aqureshi@akingump.com
dgiller@akingump.com

Sarah Link Schultz (*pro hac vice pending*)
2300 North Field Street, Suite 1800
Dallas, Texas 75201
Tel: (214) 969-2800
Fax: (214) 969-4343
Email: sschultz@akingump.com

Justin M. Ellis
Mark Kelley
Zachary R. Ingber
Eric J. Rolston
**MOLOLAMKEN LLP**
430 Park Avenue, 6th Floor
New York, NY 10022
Tel.: (212) 607-8160
Email: jellis@mololamken.com
mkelley@mololamken.com
zingber@mololamken.com
erolston@mololamken.com

Curtis M. Plaza, Esq.
**FOX ROTHSCHILD LLP**
49 Market Street
Morristown, New Jersey 07960
Telephone: (973) 326-7118
cplaza@foxrothschild.com

*Counsel to The Bank of New York Mellon as Indenture Trustee*

# EXHIBIT A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| TV AZTECA, S.A.B. DE C.V.,[1] | ) | Case No. 26-12217 (LGB) |
| Debtor in a Foreign Proceeding | ) | |

**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

Upon consideration of the *Motion of the Indenture Trustee for Relief from the Automatic Stay* (the "Motion") filed by the Indenture Trustee[2] seeking relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code (as made applicable to this Chapter 15 case by section 1520(a)(1) of the Bankruptcy Code) and, to the extent the Court has granted any relief under sections 1519 or 1521 of the Bankruptcy Code that would otherwise stay or enjoin the SDNY Litigation, modification of such relief pursuant to section 1522(c) of the Bankruptcy Code, to permit the continued prosecution of the SDNY Litigation; and the Court having reviewed the Motion, any responses or objections thereto, and the record in this case; and the Court having considered the arguments of counsel at the hearing on the Motion; and the Court having determined that the relief requested is in the best interests of creditors and other interested parties, that there is cause to grant relief from the automatic stay, and that the interests of creditors are sufficiently protected; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

[1] The last four digits of the Debtor's Mexican federal tax identification number are 4V78. The location of the corporate headquarters and the service address for the Debtor are Periférico Sur 4121, Col. Fuentes de Pedregal, Alcaldía Tlalpan, 14140, Mexico City, Mexico.
[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

1. The Indenture Trustee is granted relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code (as made applicable to this Chapter 15 case by section 1520(a)(1) of the Bankruptcy Code) and, to the extent the Court has granted any relief under sections 1519 or 1521 of the Bankruptcy Code that would otherwise stay or enjoin the SDNY Litigation, such relief is hereby modified pursuant to section 1522(c) of the Bankruptcy Code, to permit the continued prosecution of the Summary Judgment Motion pending before the Honorable Paul G. Gardephe in *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V.*, *et al.*, Case No. 22-cv-8164 (S.D.N.Y.) (the "Summary Judgment Motion").

2. For the avoidance of doubt, the relief granted herein permits the Indenture Trustee to take all actions necessary to prosecute the Summary Judgment Motion to a final judgment, including liquidation of its claims in the *Concurso*, but does not authorize the Indenture Trustee to otherwise enforce any money judgment against property of the Debtor's estate without further order of this Court.

3. The fourteen-day stay of effectiveness provided by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is hereby waived, and this Order shall be effective immediately upon entry.

4. Nothing in this Order shall be construed as a determination of the merits of the Summary Judgment Motion, the SDNY Litigation, or as a finding regarding the validity, priority, or amount of any claim asserted therein.

5. Nothing in this Order shall prejudice the rights of any party in interest to seek modification or further relief from this Court, including modification of this Order for cause shown.

6. This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: New York, New York
____________, 2026

______________________________________
THE HONORABLE LISA G. BECKERMAN
UNITED STATES BANKRUPTCY JUDGE