**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, New York 10036
Tel: (212) 872-1000
Fax: (212) 872-1002
Michael S. Stamer
Abid Qureshi
David M. Giller

2300 North Field Street, Suite 1800
Dallas, Texas 75201
Tel: (214) 969-2800
Fax: (214) 969-4343
Sarah Link Schultz (*pro hac vice pending*)

*Counsel to The Bank of New York Mellon as Indenture Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| TV AZTECA, S.A.B. DE C.V.,[1] | ) | Case No. 26-12217 (LGB) |
| Debtor in a Foreign Proceeding | ) | |

**DECLARATION OF FERNANDO DEL CASTILLO IN SUPPORT OF (I) OBJECTION OF THE INDENTURE TRUSTEE TO VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING; AND (II) MOTION OF THE INDENTURE TRUSTEE FOR RELIEF FROM THE AUTOMATIC STAY**

I, Fernando del Castillo, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am an attorney duly admitted to practice in Mexico. I earned my law degree from the Universidad Nacional Autónoma de México in 1993. In 2016, I obtained a Masters in Corporate Law from Universidad Panamericana in Mexico City.

[1] The last four digits of the Debtor's Mexican federal tax identification number are 4V78. The location of the corporate headquarters and the service address for the Debtor are Periférico Sur 4121, Col. Fuentes de Pedregal, Alcaldía Tlalpan, 14140, Mexico City, Mexico.

2. I am a founding partner of Del Castillo y Castro Abogados, a law firm headquartered in Mexico City, Mexico. I have practiced law in Mexico for over 30 years, specializing in insolvency, civil, and mercantile litigation. I am fluent in English and Spanish.
3. I represent The Bank of New York Mellon, in its capacity as indenture trustee (the "Indenture Trustee") for the TV Azteca, S.A.B. de C.V. ("TV Azteca") 8.25% Senior Notes Due 2024 ("Notes"), in connection with proceedings in Mexico, including with respect to TV Azteca's *concurso mercantil* proceeding (the "*Concurso*") initiated in March 2026.

***Concurso* Background**

4. A *concurso* is a commercial insolvency proceeding in Mexico, which begins with an initial examination stage, followed by a conciliation (*conciliación*) stage, in which a court-appointed conciliator (*conciliador*) drafts the provisional and final lists of creditors and the *concurso* court recognizes and gives priority to creditors' claims, and the conciliator seeks to facilitate a plan of reorganization for the company. This stage includes the proof of claim process in which the conciliator prepares the provisional and final lists of creditors and their ranking based on the company's books and records as well as proofs of claim submitted by creditors. The conciliator's determinations are then approved or rejected by the *concurso* court. LCM, Article 132.[2]
5. The conciliation stage lasts 185 days, starting from the date a *concurso* judgment is published in the *Diario Oficial de la Federación* (the "Official Gazette"). The *concurso* court may extend this stage for up to two 90-day periods. The first extension can be requested by the conciliator or recognized creditors that represent more than 50% of the total recognized debt. The second extension must be requested by the debtor and the

[2] LCM refers to the Mexican law on insolvency and bankruptcy (*Ley de Concursos Mercantiles*) ("LCM").

recognized creditors that represent at least 75% of the total recognized debt. LCM, Article 145.

6. If the debtor and a majority of creditors cannot approve a plan in the conciliation period, then a liquidation (*quiebra*) phase begins in which the debtor's assets are subject to mandatory liquidation.

7. In a *concurso*, creditors may challenge debts as fraudulent transfers. Creditors also submit proofs of claim and may appeal the ranking and priority of claims. In those proceedings, the *concurso* court will consider creditors' and debtors' rights and obligations under relevant credit agreements.

**TV Azteca Files the *Concurso***

8. On February 26, 2026, TV Azteca's management group announced that its shareholders had approved filing of the *Concurso*. Attached as **Exhibit 1** is a true and correct English translation of the February 26, 2026 announcement by TV Azteca as well as the original in Spanish.

9. On March 10, 2026, TV Azteca filed its *concurso* petition (the "*Concurso* Petition"), which was assigned to Judge Tessy del Rocío Covarrubias Torres of the First District Court for Commercial Insolvency Proceedings in Mexico City (the "*Concurso* Court"). Attached as **Exhibit 2** is a true and correct English translation of the *Concurso* Petition as well as the original in Spanish. The information set forth herein relating to the TV Azteca *Concurso* proceedings is based on my review of public information, including information published on the website of the Mexican Judiciary ("*Órgano de Administración Judicial*"), as well as the *Concurso* Petition, and other materials that have been subsequently filed in the *Concurso* and related proceedings in Mexico.

10. The *Concurso* Petition lists the Notes as TV Azteca's "most relevant and significant" overdue liabilities. Ex. 2 ¶¶ 62-66. The *Concurso* Petition states that TV Azteca owes

$532,000,000, or 9,178,702,400 Mexican pesos, under the Notes, which consists of the Notes' principal ($400,000,000), plus each interest payment that TV Azteca did not pay between February 2021 and the Notes' maturity in August 2024 (eight missed payments of $16,500,000 each). *Id.* ¶ 66. The amount TV Azteca listed does not include accrued interest on the missed principal and interest payments. *Id.*

11. The *Concurso* Petition also states that the amount due on the Notes represents at least 36.92% of TV Azteca's total liabilities and was at that time more than 30 days past due. *Id.* ¶ 66. This threshold is significant. Under the LCM, a debtor must show that it is in default on over 35% of its total debt for at least 30 days and has failed to meet its payment obligations to two or more creditors. LCM, Articles 9-10. TV Azteca therefore relied on the $532,000,000 it contends is owed on the Notes to meet this threshold, with the Indenture Trustee listed as the creditor.

12. The *Concurso* Petition explicitly recognized the Indenture Trustee as the trustee under the indenture governing the Notes. *Id.* ¶ 63 ("THE BANK OF NEW YORK MELLON – *as Trustee* . . . entered into an Indenture, the primary purpose of which was to provide **TV AZTECA** with financing in the amount of USD $400,000,000 . . . through the issuance of senior notes due August 9, 2024[.]") (emphasis in original).

13. TV Azteca also submitted a creditor list as Annex 3 of the *Concurso* Petition. Attached as **Exhibit 3** is a true and correct English translation of an excerpt of Annex 3 of the *Concurso* Petition as well as the original in Spanish. Entry 756 of Annex 3, under the column for creditor name and address, states "Medium Term Note / The Bank of New York Mellon", under the column for amount in national currency, states "9,178,702,400," and includes an "X" under the column for lawsuit pending. Ex. 3 at 5.[3]

[3] Unless otherwise specified, references to page numbers of exhibits cited herein refer to the page number of the PDF, including the Exhibit cover sheet.

14. In Annex 9 to the *Concurso* Petition, TV Azteca proposed a creditor plan that contemplates repaying secured creditors on a preferential basis while discounting the amount owed on the Notes by up to 90% (i.e., the proposed plan that would pay 10% of the amount owed on the Notes). Attached as **Exhibit 4** is a true and correct English translation of Annex 9 of the *Concurso* Petition as well as the original in Spanish. The plan also contemplates the "monetization of the guarantees" for creditors with collateral guarantees. Ex. 4 at 6.

**The Alter Bank, Ltd. Fraud Motion**

15. Entry 4 of Annex 3 of the *Concurso* Petition lists Alter Bank, Ltd., a St. Lucia bank, ("AlterBank") as a creditor of TV Azteca and in the column for amount in national currency, states "4,090,957,292." Ex. 3 at 3. On August 17, 2026, the Indenture Trustee submitted its *Motion to Declare Acts Ineffective Due to Fraud Against Creditors* (the "AlterBank Fraud Motion") to the *Concurso* Court. Attached as **Exhibit 5** is a true and correct English translation of the AlterBank Fraud Motion as well as the original in Spanish. The AlterBank Fraud Motion seeks to have the *Concurso* Court declare that a purported January 29, 2026 loan of approximately $240 million, as amended and restated on March 6, 2026, to TV Azteca (the "AlterBank Loan"), shall be ineffective against the TV Azteca estate, on the grounds, among others, that (i) TV Azteca was insolvent at the time the AlterBank Loan was issued and manifestly unable to repay the AlterBank Loan within the six-month repayment period; and (ii) the AlterBank Loan significantly deviated from market conditions and standard banking and commercial practices. Ex. 5 at 9-10. Both TV Azteca and the Conciliator replied to the AlterBank Fraud Motion, as ordered by the *Concurso* Court, on September 2 and 4, 2026, respectively. To date, there is no public record that AlterBank has appeared before the *Concurso* Court. The Indenture Trustee submitted its replies in further support of the AlterBank Fraud Motion to the *Concurso* Court on September 8 and 11, 2026. Attached as **Exhibit 6** is a true and correct English

translation of the September 8, 2026 reply to TV Azteca as well as the original in Spanish. Attached as **Exhibit 7** is a true and correct English translation of the September 11, 2026 reply to the Conciliator as well as the original in Spanish.

16. The *Concurso* Court previously required TV Azteca to disclose certain information about the AlterBank Loan, including the January 29, 2026, and March 6, 2026 agreements between AlterBank and TV Azteca. Attached as **Exhibit 8** is a true and correct copy of the January 29, 2026 loan agreement between TV Azteca and AlterBank. Attached as **Exhibit 9** is a true and correct copy of the March 6, 2026 amendment of the January 29, 2026 loan agreement between TV Azteca and AlterBank. The disclosure of those agreements revealed that TV Azteca agreed to indemnify AlterBank, its shareholders, officers, directors, agents, and attorneys-in-fact and any other lenders for "losses, claims, damages, liabilities and related expenses (including the fees, charges and disbursements of any counsel [ ])" that arise out of or in connection with the execution of the agreement or the agreement itself. Ex. 9 § 8.03 (b). On September 18, 2026, in response to a request from the Indenture Trustee, the *Concurso* Court ordered (the "September 18 Order") that TV Azteca and the Conciliator produce certain documents and information regarding the AlterBank Loan, including "(i) who are the true creditors in the loan contracted with Alter Bank, Limited, and the amount of each of their respective participations, and to produce the documentation evidencing the same, specifying whether he has had access to the Lenders' Register[.]" September 18 Order at 5. Attached as **Exhibit 10** is a true and correct English translation of the *Concurso* Court's September 18 Order as well as the original in Spanish. On September 30, 2026, the *Concurso* Court acknowledged that TV Azteca and the Conciliator had submitted certain documents in response to the September 18 Order and the Trustee had until October 7, 2026 to review and challenge TV Azteca and the Conciliator's submissions.

17. On October 7, 2026, the Indenture Trustee challenged the adequacy of those document submissions and requested that the *Concurso* Court require the Conciliator and TV Azteca to provide additional information regarding the true creditors behind the AlterBank Loan. As part of that filing, the Indenture Trustee also submitted certain documents produced in an action pursuant to 28 U.S.C. § 1782 captioned *In re Application of The Bank of New York Mellon v. Santander et al.*, Case No. 26-23885 (JEM) (S.D. Fla.) to the Conciliator and Concurso Court. Attached as **Exhibit 11** is a true and correct English translation of the Indenture Trustee's October 7, 2026 submission as well as the original in Spanish. The AlterBank Fraud Motion remains pending in the *Concurso* Court.

***Concurso* Proceedings**[4]

18. On March 20, 2026, the *Concurso* Court admitted the *Concurso* Petition and directed the *Instituto Federal de Especialistas de Concurso Mercantiles* ("IFECOM") to appoint a *visitador*. Attached as **Exhibit 12** is a true and correct English translation of the *Concurso* Court's March 20, 2026 order as well as the original in Spanish. In the *Concurso* Petition, TV Azteca requested that the *Concurso* Court extend certain precautionary measures, including a stay of enforcement of judgments in Mexico, to TV Azteca's jointly and severally liable obligors, guarantors and subsidiaries. Ex. 2 at 101-107. This request was initially denied by the *Concurso* Court and, after TV Azteca unsuccessfully moved for reconsideration, subsequently reaffirmed by the *Concurso* Court on May 14, 2026. Attached as **Exhibit 13** is a true and correct English translation of the *Concurso* Court's May 14, 2026 order as well as the original in Spanish.

19. On July 6, 2026, TV Azteca was declared commercially insolvent by the *Concurso* Court, retroactive to October 9, 2025 (the "*Concurso* Declaration"). Attached as **Exhibit 14** is a

[4] The deadlines set forth herein are subject to extension by the *Concurso* Court.

true and correct English translation of the *Concurso* Declaration as well as the original in Spanish. On July 13, 2026, IFECOM designated Sergio Francisco Hermida Guerrero as the *conciliador* (the "Conciliator") and on July 15, 2026, the *Concurso* Court deemed the appointment of the Conciliator to have taken effect upon his acceptance. Attached as **Exhibit 15** is a true and correct English translation of the *Concurso* Court's July 15, 2026 order as well as the original in Spanish.

20. On August 10, 2026, the *Concurso* Declaration was published in the Official Gazette and in a newspaper of national circulation, commencing the 185-calendar-day conciliation stage, *i.e.* through February 11, 2027 (the "Initial Conciliation Period"). Attached as **Exhibit 16** is a true and correct English translation of an excerpt of the August 10, 2026 publication in the Official Gazette as well as the original in Spanish. The *Concurso* Court may extend the Initial Conciliation Period for up to two 90-calendar-day periods, if certain requirements are met.

21. After the Initial Conciliation Period commences, creditors domesticated in Mexico have 20 calendar days, here August 30, 2026, and creditors outside of Mexico have 45 calendar days, here September 24, 2026, to submit proofs of claim in the *Concurso* before the Conciliator. LCM, Article 122, Section I and Article 291. The Conciliator has 30 calendar days after the publication of the *Concurso* Declaration in the Official Gazette to submit the provisional list of creditors to the *Concurso* Court and, upon publication of the provisional list by the *Concurso* Court, creditors have five business days to submit objections to claims, here October 1, 2026. LCM, Articles 121 and 129. Creditors may also submit proofs of claim in connection with an objection to the provisional list. LCM, Article 122, Section II.

22. On August 28, 2026, the Indenture Trustee, pursuant to the authority granted to the Indenture Trustee under the Notes and Mexican *concurso* law, submitted a proof of claim filing in the *Concurso* for all principal and interest outstanding under the Notes as of July

6, 2026, totaling $644,992,128.36 (the "Indenture Trustee Proof of Claim"). Attached as **Exhibit 17** is a true and correct English translation of the Indenture Trustee Proof of Claim in the *Concurso* as well as the original in Spanish. The Indenture Trustee submitted the Indenture Trustee Proof of Claim, among other reasons, as a protective measure and to recover the additional interest owed by TV Azteca under the Notes but not accounted for in Annex 3 of the *Concurso* Petition.

23. On September 22, 2026, the Indenture Trustee moved for the appointment of an intervenor in the *Concurso.* Under the LCM, creditors representing 10% of a debtor's debt, according to the provisional list, final list or the Recognition of Credits Judgment (as defined below), may request the mandatory appointment of an intervenor, who represents the interests of creditors and has the authority to request information from and oversee both the Conciliator and the business operations of TV Azteca. LCM, Articles 62 and 63. On September 24, 2026, the *Concurso* Court reserved consideration of the appointment of an intervenor until the Indenture Trustee appears in the list of creditors submitted by the Conciliator or in the Recognition of Credits Judgment from the *Concurso* Court. Attached as **Exhibit 18** is a true and correct English translation of the *Concurso* Court's September 24, 2026 order as well as the original in Spanish.

24. By an order dated September 17, 2026, the *Concurso* Court published the provisional list of creditors submitted by the Conciliator. Attached as **Exhibit 19** is a true and correct English translation of an excerpt from the Conciliator's September 17, 2026 provisional list of creditors (the "September 17 Provisional Creditor List") as well as the original in Spanish. The September 17 Provisional Creditor List identified the amount of the Indenture Trustee's claim at 1,179,802,181.96 UDIs, or approximately $595 million, an amount approximately $50 million less than asserted in the Indenture Trustee Proof of Claim. Ex. 19 at 7. In the September 17 Provisional Creditor List, the Conciliator appears to propose

to not recognize the Indenture Trustee Proof of Claim (even at an improperly reduced amount), providing a one-sentence reason that "[t]he reason for not recognizing this claim is that the creditor fails to demonstrate that it is the holder of all the bonds, a fact evidenced by the individual bondholders who have separately requested recognition of their claims in these proceedings." Ex. 19 at 31. The Conciliator then lists as cause for non-recognition of the Indenture Trustee's Proof of Claim that, among other things:

> The cause of non-recognition of claims is the issuance of bonds in the United States of America, as follows: I.- The calculation and award of interest remain PENDING resolution in a dispute initiated by the Holders in a different court. The calculation and award of interest are matters within the scope of Case No. 1:22-cv-08164-PGG, which the Trustee elected to pursue in the Southern District of New York—a forum where no final judgment has been entered and the claims asserted remain pending resolution. Consequently, there are no liquid and enforceable amounts to date. Recognizing the ancillary assets at this stage would prejudge a pending dispute and create a risk of conflicting rulings between the two forums; conversely, declining to recognize them deprives the Trustee of nothing, as its avenues for challenge and the outcome of its own lawsuit remain preserved.

*Id.* The Conciliator further stated in the September 17 Provisional Creditor List that as a "consequence":

> Only the undisputed claim, comprising the principal and ordinary coupons at a simple rate of 8.250%, consistent with the security and the Merchant's accounting records, is to be recognized as an ordinary claim; no ruling is made regarding items (b) and (c) or the requested reclassification of the claim's rank, leaving those contested matters to the appropriate legal challenges and the outcome of the proceedings the claimant currently has underway.

*Id.* at 33.

25. In the September 17 Provisional Creditor List, the Conciliator proposed to recognize the AlterBank claim in the amount of 4,405,010,815.00 Mexican pesos. *Id.* at 5. This proposed recognition amount is approximately 315 million Mexican pesos more than the amount TV Azteca asserted was owed to AlterBank in Annex 3 of the *Concurso* Petition. Ex. 3 at 3.

26. By an order dated September 22, 2026, the *Concurso Court* published a revised provisional creditor list (the "September 22 Provisional Creditor List") submitted by the Conciliator to the *Concurso* Court, asserting that the Indenture Trustee's Proof of Claim is a "duplicate entry" of other claims. Attached as **Exhibit 20** is a true and correct English translation of an excerpt from the September 22 Provisional Creditor List as well as the original in Spanish. The September 22 Provisional Creditor List still contains the same explanation as provided in the September 17 Provisional Creditor List regarding the Conciliator's determination that the Indenture Trustee's Proof of Claim should not be recognized. Ex. 20 at 29-31. The September 22 Provisional Creditor List, however, clarifies the Conciliator's position that the Indenture Trustee's Proof of Claim should be disallowed in its entirety. *Id.* at 25. The Conciliator's proposed recognition of the AlterBank claim, however, remained unchanged. *Id.* at 5.

27. The September 22 Provisional Creditor List also proposes recognition of Numchi Servicios, S.A.P.I. de C.V. ("Numchi") as a secured creditor holding a claim in the amount of 1,858,977,048.00 pesos (approximately $102 million dollars) (the "Numchi Claim"). Ex. 20 at 5.

28. On October 1, 2026, the Indenture Trustee filed an objection to, among other things, the proposed recognition of the AlterBank claim and disallowance of the Indenture Trustee Proof of Claim on the September 22 Provisional Creditor List with the *Concurso* Court (the "Indenture Trustee Provisional Creditor List Objection"). Attached as **Exhibit 21** is a true and correct English translation of the Indenture Trustee Provisional Creditor List Objection as well as the original in Spanish. The Indenture Trustee has objected to the Numchi Claim, as the September 22 Provisional Creditor List does not propose to subordinate the Numchi Claim as a related party claim, despite the Numchi Claim's undisputed origination from a loan between related parties Banco Azteca and TV Azteca. Ex. 21 at 34-48; Ex. 20 at 5,

21. Under the LCM, claims held by certain parties related to the debtor are classified as subordinated claims. Pursuant to the LCM, where the subordinated claims represent at least 25% of the aggregate amount of recognized claims considered for purposes of approving a *concurso* plan, such claims must be excluded from the calculation of the required majority. In such circumstances, the *concurso* plan must be executed by the debtor and recognized creditors representing at least 50% of the recognized claims, excluding those specified subordinated claims. LCM, Articles 157 and 222 Bis.

29. The Numchi Claim originated with Banco Azteca, a member of Grupo Salinas, and was later assigned to Numchi (the "Numchi Claim Assignment"). Ex. 21 at 35. In the 2024 audited financial statements attached to the *Concurso* Petition, TV Azteca itself had objected to the Numchi Claim Assignment as unlawful under the original loan agreement and on the ground that it "lacks basis and formality." *Id.* As noted by the Conciliator, this purported dispute was settled on February 19, 2026, one week prior to TV Azteca's announcement of its *Concurso* filing authorization. Ex. 20 at 21.

30. Although the September 22 Provisional Creditor List disallowed the Indenture Trustee's claim in its entirety, it did identify debt held by the beneficial owners of the Notes (the "Beneficial Owners") in the amount of $594,677,513.00 USD or 1,179,212,281.86 UDIs, divided between five separate claims: 14.52, 14.53, 14.54, 14.55 and 14.56. Ex. 20 at 7. According to the Conciliator, the five claims should be recognized as follows:

- Claim 14.52 ($86,429,963.40): The difference in interest between the purchase price of the Notes and the Bloomberg Terminal derived market value of 0.3449 as of the August 9, 2024 maturity date of the Notes;
- Claim 14.53 ($45,504,036.60): Interest on the Notes as of the August 9, 2024 maturity date of the Notes based on a Bloomberg Terminal derived market value of 0.3449;

- Claim 14.54 ($261,908,980): The difference between the purchase price of the Notes and the Bloomberg Terminal derived market value of 0.3449, as of the July 6, 2026 declaration of the *Concurso*;
- Claim 14.55 ($137,891,020.00): The purchase price of the Notes at a Bloomberg Terminal derived market value of 0.3449, as of the July 6, 2026 declaration of the *Concurso*; and Claim 14.56 ($62,943,513.00): Interest on the Notes from the August 9, 2024 maturity date to the July 6, 2026 declaration of the *Concurso*.

*Id.* at 15-19.

31. On October 7, 2026, the *Concurso* Court published objections filed by TV Azteca to the September 22 Provisional Creditor List (the "TVA Objection"). Attached as **Exhibit 22** is a true and correct English translation of the TVA Objection as well as the original in Spanish. The TVA Objection objects to claims 14.52, 14.53, 14.54 and 14.56, which comprise approximately $457 million of the approximately $595 million in claims the Conciliator proposes to recognize as held by the Beneficial Holders. TV Azteca did not object to claim 14.55, of approximately $137 million. TV Azteca contends that only claim 14.55 is a valid claim for the value of the Notes because it reflects "the market value of the credit right embodied in the [Notes] as of the date of the commercial bankruptcy judgment[.]" Ex. 22 at 4. TV Azteca further specifically argues that claim 14.56, which provides for interest on the Notes from August 2024 through July 6, 2026, "lacks a contractual basis and is the subject of pending litigation in the forum chosen by [the Indenture Trustee]" and that because TV Azteca has defaulted on the Notes, "the market price of a defaulted bond is the price of the entirety of the rights that the security confers: principal, interest, and expectation of return[.]" *Id.* at 9, 11.

32. After objections to the September 22 Provisional Creditor List were submitted to the *Concurso* Court on October 1, 2026, under the LCM the Conciliator has ten business days,

i.e. until October 16, 2026, to review and assess the objections and submit a final list of creditors to the *Concurso* Court for approval. In practice, this date can be extended by the *Concurso* Court to allow time for the Conciliator to obtain copies of the objections. There is no procedural mechanism for creditors to object to the Conciliator's final list of creditors once submitted to the *Concurso* Court. LCM, Articles 129, 130 and 132.

33. Assuming the final list is submitted by the Conciliator to the *Concurso* Court on October 16, 2026, within five business days, i.e. by October 23, 2026, the *Concurso* Court would issue an order recognizing the creditors of TV Azteca and the ranking of their debt (the "Recognition of Credits Judgment"). LCM, Article 132. In practice, it often takes the *Concurso* Court longer than five business days to issue the Recognition of Credits Judgment. If the Indenture Trustee Proof of Claim is not recognized by the *Concurso* Court in the Recognition of Credits Judgment, the Indenture Trustee may appeal such determination; however, it will not have standing to participate in the *Concurso*, including maintaining the AlterBank Fraud Motion and its pending objection to the allowance of the AlterBank claim and Numchi Claim, having its claim be taken into account when calculating the majorities required for the approval of the plan proposed by the Conciliator and TV Azteca, obtaining the appointment of an intervenor, or appealing any adverse rulings by the *Concurso* Court until it is recognized as a creditor in the corresponding appeal or through a subsequent *amparo* proceeding. LCM, Article 4.

34. The Conciliator and TV Azteca then have until the end of the Initial Conciliation Period, absent any extension, to propose a plan of reorganization (the "*Concurso* Plan"), but the *Concurso* Plan can be proposed immediately after the entry of the Recognition of Credits Judgment for approval by the *Concurso* Court. LCM, Article 145. Once the proposed *Concurso* Plan is submitted, creditors would then have 15 business days to provide comments on the *Concurso* Plan or subscribe to it. LCM, Article 161. If, by the end of the

aforementioned 15 business day period, the creditors holding the majority of TV Azteca's debt, as determined by the Recognition of Credits Judgment and the majorities provided for in the LCM, subscribe to the *Concurso* Plan, the Conciliator then has ten business days to submit the *Concurso* Plan to the *Concurso* Court for approval. LCM, Article 161. Creditors then have five business days to file objections to the *Concurso* Plan with the *Concurso* Court regarding the specific matters established in LCM, Article 162 and the *Concurso* Court also reviews the *Concurso* Plan for compliance with Mexican public policy and *concurso* law, and if satisfied, enters an order approving the *Concurso* Plan (the "*Concurso* Plan Approval Order"). LCM, Articles 162 and 163. The *Concurso* Court could then immediately enter the *Concurso* Plan Approval Order. Once the *Concurso* Plan Approval Order is entered, the *Concurso* Court is divested of jurisdiction of matters related to the *Concurso,* with limited exceptions. LCM, Article 166.

35. Under Mexican *concurso* law, a final, non-appealable judgment in the *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V., et al.*, 22-cv-8164 (the "SDNY Litigation") would be binding on the *Concurso* Court, if it is submitted to the *Concurso* Court prior to the issuance of the Recognition of Credits Judgment. LCM, Articles 130 and 132. A non-final, appealable judgment in the SDNY Litigation may still be considered by the *Concurso* Court at its discretion as supervening evidence, if issued prior to the Recognition of Credits Judgment, even though it is non-binding. If a judgment in the SDNY Litigation were issued after the Recognition of Credits Judgment, but prior to the entry of the *Concurso* Plan Approval Order, the Indenture Trustee would have grounds and may file an incident proceeding (*incidente*) with the *Concurso* Court, subject to its discretion, or appeal of the Recognition of Credits Judgment in connection with the Indenture Trustee Proof of Claim. LCM, Article 136.

**Other Related *Concurso* Proceedings**

36. As of October 6, 2026, ten of TV Azteca's subsidiaries, (i) Editorial Mandarina, S.A.; (ii) Alta Empreasa, S.A. de C.V.; (iii) LASIMEX, S.A. DE C.V.; (iv) Servicios Especializados Taz, S.A. de C.V.; (v) Servicios y Mantenimiento del Futuro en Televisión, S.A. de C.V.; (vi) Ganador Azteca, S.A.P.I. de C.V.; (vii) Servicios Aéreos Noticiosos, S.A. de C.V.; (viii) Operadora Ganador TV Azteca, S.A. de C.V.; (ix) Azteca Novelas II, S.A.P.I. de C.V.; and (x) Inmobiliaria Roca del Pedregal, S.A. de C.V, of which (i) through (vii) are guarantors under the Notes, have filed *concurso* petitions, all of which have been transferred to the *Concurso* Court. Attached hereto as **Exhibit 23** is a true and correct screenshot from October 8, 2026 of the publicly available *concurso* list published by the First District Court for Commercial Bankruptcy Proceedings in Mexico City.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: October 13, 2026
Mexico City, Mexico

Fernando del Castillo E.