Robert J. Giuffra, Jr.
Sergio J. Galvis
James L. Bromley
Christian P. Jensen
Arturo Carlos Schultz
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TV AZTECA, S.A.B. DE C.V.,[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-12217 (LGB) |

**OBJECTION OF THE FOREIGN REPRESENTATIVE TO THE MOTION OF THE INDENTURE TRUSTEE FOR RELIEF FROM THE AUTOMATIC STAY**

[1] The last four digits of the Debtor's Mexican federal tax identification number are 4V78. The location of the corporate headquarters and the service address for the Debtor is Periférico Sur 4121, Col. Fuentes del Pedregal, Alcaldía Tlalpan, 14140, Mexico City, Mexico.

# TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** .....2

**FACTUAL BACKGROUND** .....4

- **A. TV Azteca's Insolvency and the Initiation of the Concurso** ..... 4
- **B. The Trustee's Active Participation in the Concurso** ..... 6
  - 1. The Trustee's Objection to the AlterBank Claim ..... 6
  - 2. The Trustee's Proof of Claim ..... 8
  - 3. The Trustee's Motion to Appoint an Intervenor ..... 12
- **C. U.S. Proceedings** ..... 12
  - 1. The Summary Judgment Motion ..... 12
  - 2. The Chapter 15 Petition ..... 13

**ARGUMENT** .....14

**I. The Trustee Has Failed to Show Cause as to Why the Automatic Stay Should Be Lifted** ..... 14

- **A. Continuing the Litigation Would Interfere with the Foreign Main Proceeding and Prejudice Other Creditors** ..... 15
- **B. Lifting the Stay Would Not Resolve the Issues That the Concurso Court Must Address** ..... 18
- **C. Full Briefing Is Not Readiness for Trial, and Judicial Economy Is Not Served** ..... 20
- **D. The Balance of Harms Favors Keeping the Stay** ..... 23
  - 1. The Trustee Faces No Due Process Deprivation ..... 24
  - 2. The Claimed Harm Is Neither Irreparable Nor Imminent ..... 28
  - 3. Any "Emergency" Is of the Trustee's Own Making ..... 29
  - 4. The Forum Selection Clause Does Not Tip the Balance ..... 29
  - 5. The Trustee Overstates Its Likelihood of Success ..... 32
  - 6. The Trustee's Own Conduct Weighs Against Equitable Relief ..... 33

**II. The Alternative and Ancillary Relief Should Also Be Denied** .................................... 34

**CONCLUSION** .........................................................................................................34

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Ad Hoc Grp. of Vitro Noteholders* v. *Vitro S.A.B. de C.V. (In re Vitro S.A.B. de C.V.)*,
701 F.3d 1031 (5th Cir. 2012) ....................32

*In re Agrokor d.d.*,
591 B.R. 163 (Bankr. S.D.N.Y. 2018)....................16

*In re Broadway Realty I Co., LLC*,
2026 WL 2824056 (S.D.N.Y. Sept. 21, 2026)....................14

*In re Celsius Network LLC*,
642 B.R. 497 (Bankr. S.D.N.Y. 2022)....................21

*In re Compañía de Alimentos Fargo, S.A.*,
376 B.R. 427 (Bankr. S.D.N.Y. 2007)....................27

*Credit Suisse AG* v. *Appaloosa Inv. Ltd. P'ship I*,
2015 WL 5257003 (S.D.N.Y. Sept. 9, 2015)....................31

*In re Eclair Bakery Ltd.*,
255 B.R. 121 (Bankr. S.D.N.Y. 2000)....................14

*Ecoban Fin. Ltd.* v. *Grupo Acerero del Norte, S.A. de C.V.*,
108 F. Supp. 2d 349 (S.D.N.Y. 2000)....................30

*Finanz AG Zurich* v. *Banco Economico S.A.*,
192 F.3d 240 (2d Cir. 1999)....................16

*Forbes IP (HK) Ltd.* v. *Media Bus. Generators, S.A. de C.V.*,
2024 WL 1743109 (S.D.N.Y. Apr. 23, 2024)....................31, 32

*In re Gerova Fin. Grp., Ltd.*,
482 B.R. 86 (Bankr. S.D.N.Y. 2012)....................27

*In re Ice Cream Liquidation, Inc.*,
281 B.R. 154 (Bankr. D. Conn. 2002) ....................22

*In re Iridium Operating LLC*,
285 B.R. 822 (S.D.N.Y. 2002)....................31

*JP Morgan Chase Bank* v. *Altos Hornos de Mex., S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005)....................16, 30

*In re Kaplan Breslaw Ash, LLC*,
264 B.R. 309 (Bankr. S.D.N.Y. 2001) .......... 33

*Lawrence* v. *Motors Liquidation Co.*,
2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010) .......... 18, 19

*Lawsky* v. *Condor Cap. Corp.*,
2015 WL 4470332 (S.D.N.Y. July 21, 2015) .......... 29

*Leopard Marine & Trading, Ltd.* v. *Easy St. Ltd.*,
896 F.3d 174 (2d Cir. 2018) .......... 22

*In re Martin*,
542 B.R. 199 (B.A.P. 6th Cir. 2015) .......... 22, 23

*Martinez* v. *Bloomberg LP*,
740 F.3d 211 (2d Cir. 2014) .......... 32

*In re Mazzeo*,
167 F.3d 139 (2d Cir. 1999) .......... 15

*Mercury Masonry Corp.* v. *Terminal Constr. Corp.*
*(In re Mercury Masonry Corp.)*,
114 B.R. 35 (Bankr. S.D.N.Y. 1990) .......... 31

*In re Moche*,
677 B.R. 592 (Bankr. S.D.N.Y. 2026) .......... 22

*In re N.Y. Classic Motors, LLC*,
2021 WL 2285440 (Bankr. S.D.N.Y. June 4, 2021) .......... 21

*New Hampshire* v. *Maine*,
532 U.S. 742 (2001) .......... 33

*In re Penson Worldwide, Inc.*,
587 B.R. 6 (Bankr. D. Del. 2018) .......... 31

*Rai* v. *WB Imico Lexington Fee, LLC*
802 F.3d 353 (2d Cir. 2015) .......... 23

*In re Residential Capital, LLC*,
2012 WL 3249641 (Bankr. S.D.N.Y. Aug. 7, 2012) .......... 33

*In re Residential Capital, LLC*,
501 B.R. 624 (Bankr. S.D.N.Y. 2013) .......... 17, 19, 33

*In re Sonnax Indus., Inc.*,
907 F.2d 1280 (2d Cir. 1990) .......... *passim*

*In re Spansion, Inc.*,
418 B.R. 84 (Bankr. D. Del. 2009) ........................................ 14

*In re SunEdison, Inc.*,
557 B.R. 303 (Bankr. S.D.N.Y. 2016) ........................................ 18

*In re Tristar Auto. Grp., Inc.*,
141 B.R. 41 (Bankr. S.D.N.Y. 1992) ........................................ 14

*In re TV Azteca, S.A.B. de C.V.*,
2023 WL 8059362 (Bankr. S.D.N.Y. Nov. 20, 2023) ........................................ 29

**Statutes**

11 U.S.C. § 101 ........................................ 13

11 U.S.C. § 362 ........................................ 14

11 U.S.C. § 1517 ........................................ 13

11 U.S.C. § 1520 ........................................ 2, 14

28 U.S.C. § 157 ........................................ 22

28 U.S.C. § 1334 ........................................ 22

28 U.S.C. § 1782 ........................................ *passim*

Rafael Rodríguez Sánchez (the "Foreign Representative"), in his capacity as the authorized foreign representative of TV Azteca, S.A.B. de C.V. ("TV Azteca" or the "Debtor"), a *sociedad anónima bursátil de capital variable* organized under the laws of the United Mexican States, in respect of the Debtor's *concurso mercantil* proceeding (the "Concurso") pending before the First District Court for *Concurso Mercantil* Matters (*Juzgado Primero de Distrito en Materia de Concursos Mercantiles*), sitting in Mexico City and with jurisdiction throughout the Mexican Republic (the "Concurso Court"), Case No. 22/2026-II, under the *Ley de Concursos Mercantiles* (the "LCM"), hereby submits this objection (this "Objection") to the *Motion of the Indenture Trustee for Relief from the Automatic Stay* [D.I. 17] (the "Motion") filed by The Bank of New York Mellon, in its capacity as trustee (the "Trustee") under the indenture dated as of August 9, 2017 (the "Indenture") governing TV Azteca's 8.250% Senior Notes due 2024 (the "Notes"). In support of this Objection, the Foreign Representative relies on the *Verified Petition for Recognition of Foreign Main Proceeding and Related Relief* [D.I. 2] (the "Verified Petition"), the *Declaration of Rafael Rodríguez Sánchez in Support of the Verified Petition for Recognition of Foreign Main Proceeding and Related Relief* [D.I. 3] (the "Rodríguez Sánchez Decl.") and the *Declaration of José Víctor Rodríguez Barrera on Mexican Law in Support of the Verified Petition for Recognition of Foreign Main Proceeding and Related Relief* [D.I. 4] (the "Barrera Decl."), as well as the *Declaration of James L. Bromley in Support of the Foreign Representative's Reply to Objection of Indenture Trustee to Verified Petition for Recognition of Foreign Main Proceeding and Objection of the Foreign Representative to the Motion of the Indenture Trustee for Relief from the Automatic Stay* (the "Bromley Decl."), the *Supplemental Declaration of José Víctor Rodríguez Barrera on Mexican Law in Support of the Verified Petition for Recognition of Foreign Main Proceeding and Related Relief*, Bromley Decl. Ex. 1 (the "Supp. Barrera Decl."), and the

*Declaration of José Víctor Rodríguez Barrera on Mexican Law in Reply to Declaration of Juan Pablo Estrada Michel*, Bromley Decl. Ex. 2 (the "Reply Barrera Decl."), filed contemporaneously herewith, each of which, along with any exhibits, is incorporated herein by reference. In further support of this Objection, the Foreign Representative respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The stay is the default consequence of recognition of a foreign main proceeding and serves a central purpose of chapter 15: protecting the foreign restructuring from piecemeal litigation and collection efforts so that creditors' claims can be addressed through a coordinated and consolidated process. The Trustee seeks special permission to depart from that framework and liquidate its unsecured claim outside the Concurso, while other creditors must pursue their claims within it. The Trustee bears the burden of establishing cause for this extraordinary departure; neither the circumstances nor the applicable *Sonnax* factors justify it.

2. The Indenture's forum selection clause, standing alone, does not establish "cause" to lift the stay. If it did, section 1520(a)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") would mean little for a large share of New York-law cross-border debt issuances. The question is whether the circumstances justify allowing this creditor to proceed outside of the collection process that recognition is intended to protect, and which the Indenture and other bond documents expressly contemplate. They do not.

3. *First*, the Notes debt remains recognized in and subject to the Concurso. In the definitive list of claims that the *conciliador* submitted to the Concurso Court on October 16, 2026 (the "Definitive List"), as in the earlier provisional lists, the Notes debt of approximately USD $532 million appears in favor of beneficial owners of the Notes (the "Beneficial Owners"). Reply Barrera Decl. ¶ 10 n.3. What the *conciliador* did not propose was recognition of the Trustee itself as a creditor. The Trustee does not hold the Notes therefore the *conciliador* proposed not to

recognize the Trustee's separate proof of claim because "the creditor fails to demonstrate that it is the holder of all the bonds, a fact evidenced by the individual bondholders who have separately requested recognition of their claims in these proceedings." Castillo Decl. Ex. 19 [D.I. 19-19] at 31; *id.* Ex. 20 [D.I. 19-20] at 29–31; *see infra* ¶¶ 63–64. The Definitive List is a proposal; the Concurso Court, not the *conciliador*, will decide who may assert the Notes claim and in what amount. Supp. Barrera Decl. ¶¶ 17, 20–21. TV Azteca has objected to the amount of certain of those entries, and that dispute, too, is before the Concurso Court. *See infra* ¶ 26. These disagreements concern the Trustee's status as creditor, double counting, and the amount of the claim. It is by no means "creditor elimination."

4. *Second*, the Trustee has not shown that maintaining the stay would cause the "now and forever" harm it asserts. Motion ¶ 2. The Concurso provides the Trustee with procedures to challenge the treatment of its claim: it has already objected to the *conciliador*'s provisional list, and it may appeal the Recognition of Credits Judgment (as defined below) and, thereafter, seek relief through an *amparo* proceeding. Castillo Decl. ¶ 33; Supp. Barrera Decl. ¶¶ 25–26; *see infra* ¶¶ 60–61. The prospect of an adverse claims' determination does not establish that those procedures are inadequate or that a New York judgment is necessary.

5. *Finally*, allowing the Trustee to obtain a separate determination of its claim in New York would fragment the claims process and risk conflicting determinations on issues already pending before the Concurso Court. The Trustee's agreement not to enforce a judgment does not eliminate those concerns. Nor does it eliminate the burden of parallel litigation during the Debtor's restructuring.

6. On balance, the requested relief would undermine the coordinated resolution of claims without sufficiently showing that proceeding in New York is necessary to protect the Trustee's rights. The Motion should be denied.

## FACTUAL BACKGROUND

### A. TV Azteca's Insolvency and the Initiation of the Concurso

7. On March 10, 2026, TV Azteca filed a voluntary petition (the "Concurso Petition") with the Common Correspondence Office of the District Courts Specialized in Commercial Insolvency Matters in Mexico City, seeking a declaration of *concurso mercantil* under the LCM, Mexico's federal commercial insolvency statute. Barrera Decl. ¶¶ 16–17.

8. The Concurso Petition listed the Notes among TV Azteca's "most significant and material matured liabilities" and identified The Bank of New York Mellon as trustee under the Indenture. Rodríguez Sánchez Decl. Ex. E [D.I. 3-5] at 2804–05. The Concurso Petition stated that TV Azteca owes USD $532,000,000 (MXN 9,178,702,400) under the Notes, an amount equal to the USD $400,000,000 in principal plus eight semiannual interest payments of USD $16,500,000 at the 8.250% rate. *Id.* The Concurso Petition further stated that the amount due under the Notes represents at least 36.92% of TV Azteca's total liabilities and was more than 30 days past due. *Id.* at 2805.

9. TV Azteca submitted a creditor list as Annex 3 of the Concurso Petition, which listed approximately 2,000 creditor claims, including the claim of the Trustee. Entry 756 of Annex 3, under the column for creditor name and address, states "Medium Term Note / The Bank of New York Mellon," and, under the column for amount in national currency, states "9,178,702,400." *Id.* at 933. Entry 756 of Annex 3 also identifies the pending litigation concerning the Notes under the column for pending proceedings. *Id.*

10. By order dated March 20, 2026 (the "Admission Order"), the Concurso Court admitted the Concurso Petition and directed the *Instituto Federal de Especialistas de Concursos Mercantiles* ("IFECOM") to designate an examiner (*visitador*) to examine TV Azteca's books and records and render a report (*dictamen*).[2] Rodríguez Sánchez Decl. ¶ 34 & Ex. F [D.I. 3-6]; Barrera Decl. ¶¶ 13, 18.

11. On July 6, 2026, the Concurso Court entered the *Sentencia de Declaración de Concurso Mercantil* (the "Sentencia"). Rodríguez Sánchez Decl. Ex. G [D.I. 3-7]. The Sentencia, citing the *visitador*'s *dictamen*, declared TV Azteca in *concurso mercantil* and declared the opening of the conciliation stage (*etapa de conciliación*). Rodríguez Sánchez Decl. ¶ 36 & Ex. G [D.I. 3-7] at 84. Among other things, the Concurso Court (a) ordered TV Azteca to suspend payment of debts contracted before the Sentencia, other than those indispensable to the ordinary operation of its business, including any credit necessary to maintain ordinary operations and the liquidity required during the proceeding; (b) ordered that, during the conciliation stage, all attachment or enforcement orders against TV Azteca's assets and rights be stayed, except labor attachments for wages corresponding to the two years preceding the Concurso; (c) directed IFECOM to designate a *conciliador* within five days through its random designation procedure; and (d) directed that the *conciliador*, within three days of designation, notify creditors of the appointment and designate a domicile within the Concurso Court's jurisdiction. Barrera Decl. ¶¶ 30, 33, 36–37.

---

[2] IFECOM is an auxiliary organ of the Mexican Federal Judiciary Council. The insolvency officials in a *concurso mercantil*—the *visitador*, the *conciliador*, and, in the event of liquidation, the *síndico*—are court-supervised professionals registered with, and designated by, IFECOM. Designations are made from IFECOM's register through a random selection procedure, and the officials are subject to statutory duties, bonding requirements, and IFECOM's disciplinary authority. Rodríguez Sánchez Decl. ¶ 34 n.2; Barrera Decl. ¶ 13.

12. On July 13, 2026, IFECOM designated Sergio Francisco Hermida Guerrero as *conciliador* from IFECOM's register through its random selection procedure. Rodríguez Sánchez Decl. ¶ 37 & Ex. H [D.I. 3-8]; Barrera Decl. ¶ 13, 30, 72. On July 15, 2026, the Concurso Court confirmed the appointment as effective upon his acceptance. *Declaration of Fernando del* Castillo *in Support of (I) Objection of the Indenture Trustee to the Verified Petition for Recognition of Foreign Main Proceeding; and (II) Motion of the Indenture Trustee for Relief from the Automatic Stay* [D.I. 19] (the "Castillo Decl.") ¶ 19 & Ex. 15 [D.I. 19-15].

13. In the claims process, the *conciliador*'s role is to propose provisional and definitive lists of claims to the Concurso Court. Barrera Decl. ¶¶ 26–27. The *conciliador*, who is independent and randomly selected by IFECOM, does not himself decide the recognition, amount, or ranking of any claim; those determinations belong to the Concurso Court. Supp. Barrera Decl. ¶¶ 9–11. The *conciliador* prepares the provisional list on his own initiative, based on TV Azteca's books and records, the information TV Azteca is obliged to provide, the *visitador*'s opinion, and the claim requests submitted to him. Barrera Decl. ¶ 33.

14. On August 10, 2026, the Sentencia was published in the *Diario Oficial de la Federación* and in a newspaper of national circulation. Rodríguez Sánchez Decl. ¶ 36; Barrera Decl. ¶ 24. Upon publication of the Sentencia, TV Azteca's creditors domiciled in Mexico could file their requests for recognition of claims with the *conciliador* through August 30, 2026, and creditors located outside Mexico could file through September 24, 2026. Barrera Decl. ¶¶ 24–25, 34; Castillo Decl. ¶ 21.

**B. The Trustee's Active Participation in the Concurso**

***1. The Trustee's Objection to the AlterBank Claim***

15. On August 17, 2026, the Trustee submitted a motion in the Concurso seeking to have the loan agreement between the Debtor and AlterBank Ltd. ("AlterBank") declared

ineffective as an act in fraud of creditors under Mexican law (the "AlterBank Fraud Motion"). Castillo Decl. Ex. 5 [D.I. 19-5]. Under that agreement, dated January 29, 2026, AlterBank extended to TV Azteca a credit facility of up to MXN 5 billion (the "AlterBank Facility"), under which TV Azteca drew MXN 4.085 billion that same day; on March 6, 2026, the parties amended and restated the AlterBank Facility, capitalizing accrued interest to bring the outstanding principal to MXN 4,156,487,500. Rodríguez Sánchez Decl. Ex. E [D.I. 3-5] at 2806; Castillo Decl. Ex. 19 [D.I. 19-19] at 21. AlterBank did not itself request recognition in the Concurso; the *conciliador* recorded AlterBank's claim under the AlterBank Facility (the "AlterBank Claim") based on TV Azteca's accounting records and the underlying loan and security documents. Castillo Decl. Ex. 19 [D.I. 19-19] at 13, 21. Approximately MXN 4.1 billion (approximately USD $240 million) of the proceeds of the AlterBank Facility were used to satisfy the tax liability owed to the Mexican federal tax authority arising from a November 13, 2025, ruling of the Mexican Supreme Court, as well as financial costs related to the facility. Rodríguez Sánchez Decl. ¶¶ 19–20, 22; *see also* Castillo Decl. Ex. 19 [D.I. 19-19] at 21.

16. TV Azteca and the *conciliador* responded to the AlterBank Fraud Motion on September 2 and 4, 2026, respectively, and the Trustee filed replies on September 8 and 11, 2026. Castillo Decl. ¶ 15 & Exs. 6–7 [D.I. 19-6, 19-7].

17. On September 18, 2026, in response to a request from the Trustee, the Concurso Court ordered TV Azteca and the *conciliador* to produce documents and information regarding the AlterBank Facility, including the identity of the creditors in the loan and the amount of their respective participation. Castillo Decl. Ex. 10 [D.I. 19-10] at 5. The Trustee also sought documents and information directly from AlterBank.

18. On September 30, 2026, the Concurso Court acknowledged that TV Azteca and the *conciliador* had submitted certain documents in response to the September 18, 2026, order requiring TV Azteca and the *conciliador* to produce documents and information regarding the AlterBank Facility, and afforded the Trustee until October 7, 2026, to review and challenge those submissions. Castillo Decl. ¶ 16. On October 7, 2026, the Trustee challenged the adequacy of the submissions, requested additional information, and submitted to the *conciliador* and the Concurso Court documents produced by AlterBank in a Section 1782 proceeding in the Southern District of Florida. *Id.* ¶ 17 & Ex. 11 [D.I. 19-11]. The AlterBank Fraud Motion remains pending in the Concurso Court. *Id.* ¶ 17; Supp. Barrera Decl. ¶ 35.

***2. The Trustee's Proof of Claim***

19. On August 28, 2026, the Trustee filed a proof of claim (*solicitud de reconocimiento de crédito*) (the "Proof of Claim") in the Concurso for all principal and alleged interest outstanding under the Notes as of July 6, 2026, which it asserted totaled USD $644,992,128.36. Castillo Decl. Ex. 17 [D.I. 19-17] at 2–6.

20. On September 10, 2026, the *conciliador* filed with the Concurso Court a provisional list of claims, together with a reasoned report and a list of the claims he proposed not to recognize. Castillo Decl. Ex. 19 [D.I. 19-19].

21. By order dated October 7, 2026, the Concurso Court published objections filed by TV Azteca to the September 22 Provisional List, which objected to claims 14.52, 14.53, 14.54, and 14.56 and did not object to claim 14.55 (approximately USD $137 million). Castillo Decl. ¶ 31 & Ex. 22 [D.I. 19-22]. TV Azteca's objections take the position that the Notes claim should be recognized at the market value of the Notes as of the date of the Sentencia. *Id.* Ex. 22 [D.I. 19-22] at 5.

22. The *conciliador* submitted the Definitive List to the Concurso Court on October 16, 2026, and the Concurso Court acknowledged the Definitive List on October 21, 2026. Supp. Barrera Decl. ¶ 4.

23. In the Definitive List, the *conciliador* proposed not to recognize the Trustee as a creditor in its own name as representative of the holders of the Notes, but he did include the Notes debt, which remains in the Concurso in an amount totaling approximately USD $532 million. Reply Barrera Decl. ¶ 10 & n.3; *see also* Supp. Barrera Decl. ¶¶ 4, 20, 22. As a matter of Mexican law, that proposal concerns who may assert the Notes claim, not whether the Notes debt is included, and it is a question the Concurso Court will decide. Supp. Barrera Decl. ¶¶ 20–21.

24. None of the *conciliador*'s lists, and none of the objections to them, binds the Concurso Court. The provisional lists and the Definitive List are proposals to the Concurso Court and do not themselves recognize or disallow any claim. Supp. Barrera Decl. ¶¶ 11, 23. The *conciliador*, an independent official subject to the direction of the Concurso Court, has rejected positions advanced by TV Azteca and by other creditors in this Concurso. *Id.* ¶ 7(a). As a matter of Mexican law, he was required to take into account all of the objections to the September 22 Provisional List in preparing the Definitive List, including the Indenture Trustee's October 1, 2026 objections to the AlterBank Claim, the Numchi Claim, and the treatment of the Proof of Claim. *Id.* ¶ 17; Reply Barrera Decl. ¶ 13. TV Azteca's objections are likewise submissions in the claims process, and holders of the Notes may contest them in that process. Barrera Decl. ¶¶ 33, 77; Supp. Barrera Decl. ¶¶ 17, 24–25. The Concurso Court, not TV Azteca or the *conciliador*, will make its own determination of the recognition, amount, ranking, and priority of every claim, including the amount at which the Notes claim is recognized, the ranking and priority of the Numchi Claim, and

the AlterBank Claim, as to which the AlterBank Fraud Motion remains pending. Supp. Barrera Decl. ¶¶ 11, 17, 24–25, 35; Reply Barrera Decl. ¶¶ 8, 18; Castillo Decl. ¶ 17.

25. Upon review of the Definitive List, the Concurso Court will issue its judgment on recognition, ranking, and priority of claims (*sentencia de reconocimiento, graduación y prelación de créditos*) (the "Recognition of Credits Judgment"). Barrera Decl. ¶ 27; Supp. Barrera Decl. ¶¶ 11, 24. The Recognition of Credits Judgment, once issued, is subject to appeal. Barrera Decl. ¶¶ 27, 77; Supp. Barrera Decl. ¶ 25.

### *3. The Trustee's Motion to Appoint an Intervenor*

26. On September 22, 2026, the Trustee filed a motion in the Concurso to have an intervenor (*interventor*) appointed. Castillo Decl. ¶ 23. Under Mexican law, a creditor or group of creditors representing at least ten percent of the claims against the debtor, according to the provisional list, the definitive list, or the Recognition of Credits Judgment, may request that the judge appoint an *interventor*, at the requesting creditors' expense, to represent creditor interests and to review the debtor's books and records and the conduct of the insolvency officials. Supp. Barrera Decl. ¶¶ 27–28; Barrera Decl. ¶ 79; LCM art. 63 (Supp. Estrada Decl. Ex. 2).

27. `On September 24, 2026, the Concurso Court reserved consideration of the motion until the Trustee appears in the list of creditors submitted by the *conciliador* or in the Recognition of Credits Judgment. Castillo Decl. Ex. 18 [D.I. 19-18] at 6.

## C. U.S. Proceedings

### *1. The Summary Judgment Motion*

28. On August 26, 2022, the Trustee filed a summary judgment motion in lieu of complaint against TV Azteca and thirty-four direct and indirect subsidiaries of TV Azteca as joint and several guarantors of the Notes (the "Subsidiary Guarantors") in New York Supreme Court, which was removed to the United States District Court for the Southern District of New York (the

"District Court"). *Bank of N.Y. Mellon* v. *TV Azteca, S.A.B. de C.V.*, No. 22-cv-08164 (PGG) (S.D.N.Y.) (the "SDNY Litigation"); Verified Petition ¶ 36. Following the Notes' maturity in August 2024, the Trustee withdrew the summary judgment motion and filed a formal complaint on July 11, 2025, naming as defendants TV Azteca and the Subsidiary Guarantors and seeking approximately USD $580 million in unpaid principal and interest. *Bank of N.Y. Mellon*, No. 22-cv-08164 [D.I. 80]. TV Azteca answered and, on December 17, 2025, filed an amended answer with third-party complaint asserting claims against certain bondholders. *Id.* [D.I. 166]; Rodríguez Sánchez Decl. ¶ 25.

29. The Trustee's pending motion for summary judgment on the Notes (the "Summary Judgment Motion") has not been decided, and discovery was stayed by the magistrate judge pending summary judgment. *Bank of N.Y. Mellon*, No. 22-cv-08164 [D.I. 241] (S.D.N.Y. Mar. 17, 2026) (Moses, M.J.); *Declaration of David M. Giller* [D.I. 18] (the "Giller Decl.") Ex. 56 [D.I. 18-56] at 23–24; Rodríguez Sánchez Decl. ¶ 26. The Trustee has also moved to amend its complaint to add four new causes of action, relating to subsidiary guarantees, debt incurrence (including the AlterBank Facility), lien treatment, and intercompany-debt voting in the Concurso. *Bank of N.Y. Mellon*, No. 22-cv-08164 [D.I. 288]. On October 7, 2026, the Trustee asked the District Court to issue expedited rulings on the Summary Judgment Motion and the motion to amend or, in the alternative, to refer the case to this Court as "related to" TV Azteca's chapter 15 case. *Id.* [D.I. 311]. On November 12, 2026, the Indenture Trustee filed a further letter with the District Court, asking the Court to rule on the pending motion for leave to file an amended complaint and for an expedited trial . *Id.* [D.I. 321]. On November 17, 2026, the Indenture Trustee filed a motion for a preliminary injunction, expedited discovery, and a speedy hearing. *Id.* [D.I. 322]. Those motions remain pending.

### *2. The Chapter 15 Petition*

30. On September 16, 2026, the Foreign Representative filed the Verified Petition, seeking entry of an order (i) recognizing the Concurso as a "foreign main proceeding" under section 1517(b)(1) of the Bankruptcy Code and granting all related relief under section 1520 of the Bankruptcy Code; (ii) recognizing the Foreign Representative as a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code and authorizing the Foreign Representative to act on behalf of TV Azteca in this chapter 15 case (the "Chapter 15 Case"); and (iii) granting comity and full force and effect to the Sentencia and the Admission Order, and entrusting the Foreign Representative with the administration and realization of all property of TV Azteca within the territorial jurisdiction of the United States, including prosecution of causes of action, under section 1521(a)(5). Verified Petition ¶ 12.

31. On October 13, 2026, the Trustee filed its objection to the Verified Petition [D.I. 16] and the Motion [D.I. 17], supported by the *Declaration of David M. Giller* [D.I. 18] and the *Declaration of Fernando del Castillo* [D.I. 19].

## ARGUMENT

### I. The Trustee Has Failed to Show Cause as to Why the Automatic Stay Should Be Lifted

32. The Trustee has not shown cause to obtain relief from the automatic stay to continue to prosecute the SDNY Litigation. The broad protection of the automatic stay "promotes judicial economy by allowing the bankruptcy court to centralize disputes concerning property in the debtor's estate, so that reorganization can proceed efficiently and 'unimpeded by uncoordinated proceedings in other cases.'" *In re Broadway Realty I Co., LLC*, 2026 WL 2824056, at *2 (S.D.N.Y. Sept. 21, 2026). This concept applies no less to a debtor that is undergoing a restructuring outside the U.S. and has obtained a recognition order pursuant to chapter 15 of the

Bankruptcy Code. *See In re Spansion, Inc.*, 418 B.R. 84, 90 (Bankr. D. Del. 2009) ("While it is without dispute that Section 362(a) applies in the Chapter 11 Debtors' case, the automatic stay also applies to protect the Foreign Debtor.").

33. Pursuant to Section 362(d) of the Bankruptcy Code, which is made applicable to this Chapter 15 Case by section 1520(a)(1), a movant must demonstrate sufficient cause to justify lifting or modifying the stay. *See* 11 U.S.C. § 362(d); *In re Eclair Bakery Ltd.*, 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000). Importantly, unsecured creditors like the Trustee are not entitled to relief from the automatic stay "unless [they] can establish extraordinary circumstances." *In re Tristar Auto. Grp., Inc.*, 141 B.R. 41, 44 (Bankr. S.D.N.Y. 1992). The burden is on the movant "to make an initial showing of 'cause' for relief from the stay," and "[o]nly if the movant makes such a showing does any burden shift to the debtor." *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999). Absent that showing, "the court should simply deny relief from the stay," *id.*, "without requiring any showing from the debtor that it is entitled to continued protection," *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990).

34. In *Sonnax*, the Second Circuit identified twelve factors to be considered when deciding whether "cause" exists to lift the automatic stay. *See Sonnax*, 907 F.2d at 1286.[3] Not all of the factors will be relevant in every case, *Mazzeo*, 167 F.3d at 143, and the inquiry is "very fact-specific," requiring "the weighing of numerous factors peculiar to the particular case," *Sonnax*, 907 F.2d at 1288; *see also Mazzeo*, 167 F.3d at 142 (noting that the "facts of each request will

[3] Those factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *Id.*

determine whether relief is appropriate under the circumstances" (quoting *Sonnax*, 907 F.2d at 1286)).

35. The Trustee alleges that the following *Sonnax* factors weigh in favor of lifting the stay. *See* Mot. ¶ 63. These are: (i) the second and seventh factors, whether the other litigation interferes with the bankruptcy case or prejudices other creditors, *see id.* ¶¶ 75, 78–80; (ii) the first factor, whether relief would result in a partial or complete resolution of the issues, *see id.* ¶¶ 64, 78–80; (iii) the tenth and eleventh factors, the interests of judicial economy and the other litigation's readiness for trial, *see id.* ¶¶ 73–74; and (iv) the twelfth factor, the balance of harms, *see id.* ¶¶ 66–72. None of these factors weigh in favor of lifting the stay; rather, each supports the Debtor's position that the automatic stay should remain in place following the recognition and as the Concurso proceeds.

### A. Continuing the Litigation Would Interfere with the Foreign Main Proceeding and Prejudice Other Creditors

36. Lifting the stay to allow the Trustee to proceed with the SDNY Litigation would interfere with the Concurso, not aid it, for two reasons. It would: (i) disregard the principle of comity that U.S. courts extend to foreign insolvency proceedings by allowing the disruption of the Concurso's orderly, centralized claims process, and (ii) prejudice TV Azteca's other creditors.

37. *First*, the Second Circuit "ha[s] repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding," because "the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding." *JP Morgan Chase Bank* v. *Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) (quoting *Finanz AG Zurich* v. *Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999)); *see also In re Agrokor d.d.*, 591 B.R. 163, 184 (Bankr. S.D.N.Y. 2018). The Notes claim is exactly such a claim. The Trustee has filed a Proof

of Claim in the Concurso for all principal and alleged interest under the Notes, and it concedes that the amount due under the Indenture is "squarely before the Concurso Court." Motion ¶¶ 49, 79. Nonetheless, the Trustee asks this Court to allow it to pursue a liquidation of that claim in New York, bypassing the claims reconciliation and recognition process to which it has already been submitted. This view of comity would allow claims that interfere with the Concurso to be determined in separate proceedings despite the very policy behind that principle: centralizing and adjudicating claims in a single forum. *See Finanz*, 192 F.3d at 246.

38. Running a parallel liquidation of one of the claims already before the Concurso interferes with the Concurso Court's "equitable and orderly distribution of [TV Azteca's] property." *Altos Hornos*, 412 F.3d at 424. The Concurso is already well advanced: the *conciliador* has submitted the Definitive List, and the Concurso Court will soon issue the Recognition of Credits Judgment, which fixes the recognition, ranking, and priority of every claim. With the SDNY Litigation stayed, determination of the claim under the Indenture will remain where it belongs, before the Concurso Court, to be resolved under the LCM through the Concurso's collective processes.

39. The SDNY Litigation is also part of a pattern. The Trustee is pursuing parallel U.S. proceedings, including the pending section 1782 application in the Southern District of Florida, aimed at issues that are already before the Concurso Court. *See In re Bank of N.Y. Mellon*, No. 26-mc-23885-JEM (S.D. Fla.). Each proceeding, with its particular procedures and schedules, diverts time and other resources of the Debtor away from the Concurso. Courts routinely refuse to lift the stay where litigation elsewhere would pull the debtor's resources and personnel away from the centralized proceeding. *See In re Residential Capital, LLC*, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013) ("[L]ifting the stay is connected to and will interfere with the Debtors' chapter 11

cases . . . Litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases").

40. *Second*, the Concurso is a universal proceeding in which every creditor, domestic and foreign, must have its claim recognized and ranked by the Concurso Court, and the Sentencia stays enforcement against TV Azteca's assets during the conciliation stage. The Trustee asks this Court to be treated differently. Specifically, it seeks a dollar figure, obtained outside the Concurso, that it can use to enlarge its claim there. Its Proof of Claim asserts USD $644,992,128.36, against roughly USD $532 million of Notes debt on the Definitive List. Motion ¶ 49; Reply Barrera Decl. ¶ 10 n.3. Every dollar of that increase comes out of the recoveries of creditors who are not before this Court but are advancing their claims in the appropriate forum: the Concurso Court.

41. Furthermore, forcing TV Azteca to defend the SDNY Litigation, including the new claims in the pending amended complaint, during the conciliation stage would spend estate resources that would otherwise be used to negotiate a restructuring for the benefit of all creditors. Courts in this District have found exactly that risk of prejudice to weigh against stay relief. *See In re SunEdison, Inc.*, 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) ("Prosecution of the Merger Litigation at this time will interfere substantially with the progress of the bankruptcy case . . . and prejudice the interests of the other creditors . . . by diverting the Debtors' resources and personnel at a critical time in the case"); *Lawrence* v. *Motors Liquidation Co.*, 2010 WL 4630327, at *4–5 (S.D.N.Y. Nov. 8, 2010) (affirming that *Sonnax* factors weighed against relief from automatic stay because "proceed[ing] with [the pre-petition] suit would force [the debtor] to expend estate resources to defend that action" and thus relief "would prejudice the interests of other creditors").

### B. Lifting the Stay Would Not Resolve the Issues That the Concurso Court Must Address

42. The Trustee contends that the judgment resulting from the Summary Judgment Motion would answer the "pending" question that the *conciliador* identified: what is the "liquidated and due amount" owed under the Indenture? Motion ¶ 80. But that narrow question is already being addressed in the Concurso. The *conciliador* has proposed recognition of the Notes debt in the Definitive List, Supp. Barrera Decl. ¶¶ 4, 20–22; the Trustee has filed its objections to the *conciliador*'s treatment of that debt, Castillo Decl. ¶ 28 & Ex. 21 [D.I. 19-21]; and the Concurso Court will make its own determination, under Mexican insolvency law, of the amount at which the Notes claim should be recognized in the Concurso through the Recognition of Credits Judgment, Supp. Barrera Decl. ¶¶ 11, 17, 24. A judgment resulting from the Summary Judgment Motion is not necessary for the Concurso Court to make that determination.

43. Moreover, several related issues remain open and would need to be addressed in the Concurso, including the Beneficial Owners' participation rights, claim priorities, voting rights, and the ultimate amounts available for distribution to the Beneficial Owners or the Trustee. Supp. Barrera Decl. ¶¶ 21–22, 33–34, 36–38; Reply Barrera Decl. ¶¶ 19-20, 22. Therefore, the central "issue" that remains in this case is broader than what the Trustee suggests. Resolving the claim amounts in the SDNY Litigation would do little to clarify the main issue—who receives a recovery and in what quantum.

44. The Motion's own reservations confirm that the judgment arising from the Summary Judgment Motion would only partially address the issues before the Concurso Court. The Trustee "reserves all rights to seek further relief from the stay related to other aspects of the SDNY Litigation in order to address other issues in the Concurso," including with respect to Concurso voting. Motion ¶ 60 n.25. In addition, the Trustee's motion to amend the complaint in

the SDNY Litigation also remains pending. *Bank of N.Y. Mellon*, No. 22-cv-08164 [D.I. 288]. The Trustee's proposed amended complaint includes four new causes of action against the Debtor, *id.* [D.I. 288-1 ¶¶ 134–175], for which the Trustee has said that it will seek discovery, *id.* [D.I. 288 at 24; D.I. 294 at 5–6].[4] And on November 17, 2026, the Trustee filed a motion for a preliminary injunction in the SDNY Litigation, further expanding that litigation beyond the Summary Judgment Motion. *Id.* [D.I. 322].

45. Courts have frequently refused to lift the stay in situations where the relief would not fully resolve the issues between the debtor and the movant. *See Lawrence*, 2010 WL 4630327, at *4 (concluding that bankruptcy court correctly found that *Sonnax* factor regarding "'whether relief would result in a partial or complete resolution of the issues' weighed against relief because allowing the ERISA suit to proceed would merely enable [another court] to resolve the pending cross motions for summary judgment"); *Residential Capital*, 501 B.R. at 644 (holding that "stay relief might not result in a partial or complete resolution of the issues" because "[e]ven if [the claimant] were to win an appeal of the dismissal of the [pre-petition litigation], he would still have to come back to this Court to prove the merits of his claim").

46. Furthermore, the extraordinary relief of lifting the automatic stay is not warranted where the Concurso Court may not even consider a decision on the Summary Judgment Motion. As a matter of Mexican law, nothing obligates the Concurso Court to defer to a non-final foreign ruling in determining a creditor's claim. Supp. Barrera Decl. ¶ 43; Reply Barrera Decl. ¶ 21. The Motion itself acknowledges that, absent a final judgment, the Concurso Court "may consider the judgment in its discretion." Motion ¶ 47. And the Trustee's own Mexican counsel concedes that

[4] The Trustee requested that the District Court bifurcate these four new claims. *Bank of N.Y. Mellon*, No. 22-cv-08164 [D.I. 288 at 21–24]. But the separation of claims for trial is reserved for "exceptional circumstances," and it is far from certain that the District Court will grant the Trustee's request. *See Bank of N.Y. Mellon*, No. 22-cv-08164 [D.I. 289 at 23.

a non-final judgment in the SDNY Litigation could be considered by the Concurso Court only in its discretion "as supervening evidence," Castillo Decl. ¶ 35; *see* Supp. Barrera Decl. ¶ 43, and its Mexican-law expert likewise acknowledged that such a decision "could be used by the Mexican courts in their discretion" and would at most "provide persuasive evidence," *Declaration of Juan Pablo Estrada Michel in Support of (I) Objection of the Indenture Trustee to Verified Petition For Recognition of Foreign Main Proceeding and (II) the Indenture Trustee's Motion for Relief from the Automatic Stay* (the "Estrada Decl.") ¶ 18. That a ruling may be offered as evidence does not mean the Concurso Court must give it any weight, let alone treat it as binding. *See* Reply Barrera Decl. ¶ 21. If the Concurso Court declines to consider a decision issued in the SDNY Litigation, lifting the stay will have accomplished nothing, and the issue that the Trustee has repeatedly asserted would be resolved by the lifting of the stay would remain unresolved.

**C. Full Briefing Is Not Readiness for Trial, and Judicial Economy Is Not Served**

47. The Trustee asserts that the Summary Judgment Motion is "fully briefed and ready for resolution," and that TV Azteca has acknowledged as much. Motion ¶ 73 (citing Rodríguez Sánchez Decl. ¶ 26); *see also id.* ¶ 63 (identifying "whether the litigation is ready for trial" as a relevant *Sonnax* consideration). The Trustee argues that staying it would not "advance judicial economy," given that it would require the parties to "duplicate work in another forum." *Id.* ¶ 74. It also claims that "Courts routinely grant stay relief where litigation is this far advanced." *Id.* But the Trustee overstates the status of the SDNY Litigation.

48. Although the Summary Judgment Motion is pending in the SDNY Litigation, resolving it would not bring the Trustee any closer to resolution on the amounts it seeks to claim in the Concurso. As discussed above, the Trustee has moved to amend its complaint in the SDNY Litigation to include additional causes of action against the Debtor. That motion also remains pending, and if granted, will result in further discovery. *See supra* ¶ 44.

49. The Trustee's additional argument that staying the SDNY Litigation would require it to duplicate work in other proceedings is undermined by the Trustee's own actions in the U.S. District Court for the Southern District of Florida and in the Concurso. To date, the Trustee has: (i) sought broad discovery in connection with the section 1782 proceeding in Florida that relates to the AlterBank Claim, Motion ¶ 56; (ii) filed an *incidente* alleging fraud in the Concurso related to the same transaction, *id.* ¶ 48; (iii) filed and appeared in the Concurso with respect to its Proof of Claim, *id.* ¶ 49; and (iv) objected to several preliminary findings of the *conciliador*, *id.* ¶ 68 n.29.

50. Judicial economy is best served by resolving each of these disputes in a single proceeding that is designed to adjudicate collectively the issues and claims against a particular entity, *i.e.*, the Concurso. *See Sonnax*, 907 F.2d at 1287 (judicial economy supported denial of stay relief because the bankruptcy proceeding "provides a single, expeditious forum for resolution of the disputed issues"); *In re Celsius Network LLC*, 642 B.R. 497, 503 (Bankr. S.D.N.Y. 2022) (denying stay relief and agreeing with debtors that creditors' claims "must be addressed through the centralized bankruptcy process, not through individual lawsuits"); *In re N.Y. Classic Motors, LLC*, No. 21-10670 (MG), 2021 WL 2285440, at *5 (Bankr. S.D.N.Y. June 4, 2021) (denying stay relief where debtor argued that litigating "in separate forums" would impose an "undue and unnecessary financial burden" and that the bankruptcy court was "the most economical and expeditious forum"); *see also Leopard Marine & Trading, Ltd.* v. *Easy St. Ltd.*, 896 F.3d 174, 190 (2d Cir. 2018) (foreign bankruptcy proceedings are the "one discrete category of foreign litigation that generally requires the dismissal of parallel district court actions") (citation omitted).

51. The authorities cited by the Trustee are inapposite. In *Moche*, discovery had been substantially completed, and the only remaining matter was a determination of the parties' property

rights via the equitable distribution and dissolution of marriage. *In re Moche*, 677 B.R. 592, 610 (Bankr. S.D.N.Y. 2026). The court explained that "[t]he purpose of th[e] [eleventh *Sonnax*] factor is to avoid restarting litigation in a new forum when the original proceeding is near resolution." *Id.* at 610. But here the Trustee is actively seeking to restart litigation on four new claims in the SDNY Litigation and delaying resolution in that case. Additionally, as to the fourth *Sonnax* factor concerning specialized tribunals—which is not relevant to this proceeding—the court found that relief should be granted because the state matrimonial court "possesses specialized expertise in matrimonial matters" and "routinely adjudicates equitable distribution, support, and marital property rights under New York Domestic Relations Law § 236." *Id.* at 608–09.[5]

52. In *Ice Cream*, petitioners sought stay relief in order to litigate claims that fell within the ambit of 28 U.S.C. § 157(b)(5) as "personal injury tort" claims to which abstention pursuant to 28 U.S.C. § 1334(c)(1) was also considered in connection with the court's decision to lift the automatic stay. *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 159–64 (Bankr. D. Conn. 2002). The out-of-circuit decision in *Martin* is also distinguishable, because "the fraud issues in the underlying adversary proceeding involved parties who were not a party to the bankruptcy court proceeding" and the party seeking relief from the stay had made a jury demand. *See In re Martin*, 542 B.R. 199, 201–02 (B.A.P. 6th Cir. 2015). Here, in contrast, the Trustee is the plaintiff in the SDNY Litigation—and a participant in the underlying Concurso proceeding—where it has made no jury demand in its complaint or proposed amended complaint. *See Bank of N.Y. Mellon*, No. 22-cv-08164 [D.I. 177 at 4] (Discovery and Case Management Order stating that "[t]he parties have not requested a jury trial"). *Martin* also involved a chapter 7 petition, not chapter 15. *Martin*,

[5] As to the tenth factor of judicial economy, the court similarly held that this factor favored relief because requiring the bankruptcy court "to undertake an equitable distribution analysis under New York Domestic Relations Law would duplicate proceedings and expend judicial resources unnecessarily," given that "[t]he core issue—allocation of marital property and support obligations—falls squarely within the matrimonial court's expertise." *Id.* at 609.

542 B.R. at 201. Indeed, *none* of the cited authorities holds that an advanced proceeding must continue notwithstanding a foreign collective proceeding like the Concurso.

53. In addition, judicial economy is not served when the ruling in the SDNY Litigation would leave issues open and invite duplication that would have to be addressed in the Concurso.[6] As discussed above, the Trustee's own motions would continue to remain pending in the SDNY Litigation even if the Summary Judgment Motion is granted, including its motion to amend the complaint to add new claims and its motion to refer the SDNY Litigation to this Court. Rodríguez Sánchez Decl. ¶ 26; *Bank of N.Y. Mellon*, No. 22-cv-08164 [D.I. 288]; *id.* [D.I. 311]; Motion ¶ 59 n.24.

**D. The Balance of Harms Favors Keeping the Stay**

54. Contrary to the Trustee's assertions, the balance of harms favors keeping the stay in place because (i) the Trustee faces no due process deprivation in the Concurso; (ii) the Trustee's claimed harm is neither irreparable nor imminent; (iii) the Trustee's purported emergency is of the Trustee's own making; (iv) the forum selection clause does not tip the balance; (v) the Trustee overstates its likelihood of success in the SDNY Litigation; and (vi) the Trustee's own conduct weighs against equitable relief.

***1. The Trustee Faces No Due Process Deprivation***

55. The Trustee asserts that it was deprived of its due process rights because it "cannot participate in the *Concurso* . . . [and] also . . . cannot object to claims (such as the AlterBank Loan),

[6] The Trustee cites *Rai* v. *WB Imico Lexington Fee*, LLC, 802 F.3d 353, 368 (2d Cir. 2015) for the proposition that judicial economy is advanced when "the issues to be decided are legal in nature." Motion ¶ 74 (quoting *Rai*, 802 F.3d at 368). But *Rai* is not a bankruptcy case, and the phrase cited by the Trustee arises in the context of the appellate court deciding whether to consider an argument not addressed by the district court—not in the context of granting stay relief. *Rai*, 802 F.3d at 368–69 ("Were we to remand this case to the district court to determine which party should retain the interest, there is no reason to think that the district court would arrive at a different conclusion. . . . Doing so would therefore only result in delay and in additional, and unnecessary, expenditure of time and resources by the parties, by the district court, and eventually by this Court on a subsequent appeal").

seek to appoint an intervenor, or appeal an adverse decision" as a result of not being included in the *conciliador*'s creditor list. Motion ¶ 68. That is wrong. The Trustee has not been silenced at all. To the contrary, it has been an active participant in the Concurso. *See supra* ¶¶ 15–34. Specifically, the Trustee filed its Proof of Claim in the Concurso for all principal and alleged interest outstanding under the Notes, objected to the *conciliador*'s September 22 Provisional List, submitted the AlterBank Fraud Motion in the Concurso, and filed a motion to appoint an intervenor, which the Concurso Court has reserved rather than denied. Castillo Decl. Exs. 5, 17, 18, 21 [D.I. 19-5, 19-17, 19-18, 19-21]; Bromley Decl. Ex. 5 at 25:15–26:8, 120:3–21. The Trustee's Mexican counsel himself refused to characterize the intervenor request as having been denied, testifying instead that "up until the time the indenture trustee appears in the provisional, final, or the credit judgment, the appointment cannot be made or denied." Bromley Decl. Ex. 5 at 132:11–21. The Concurso Court will not rule on the intervenor motion until the Trustee appears in the list of creditors submitted by the *conciliador* or in the Recognition of Credits Judgment, neither of which has happened yet, and the rest of the Trustee's submissions—including its objections to the September 22 Provisional List and the AlterBank Fraud Motion—were admitted and remain pending before the Concurso Court. *Id.* 132:11–21, 46:18–47:14, 109:21–110:4; Bromley Decl. Ex. 1 ¶¶ 29, 35; Bromley Decl. Ex. 2 ¶ 15; *see also* Estrada Decl. ¶¶ 16, 19. Moreover, the Trustee requested, and the Concurso Court granted, the production of certain information related to the AlterBank Loan from the Debtor, the *conciliador*, and AlterBank itself. Castillo Decl. Ex. 10 [D.I. 19-10] at 5, Bromley Decl. Ex. 8.

56. As to the right of appeal, the Trustee's own Mexican counsel said in his declaration and testified at his deposition that if the Trustee's Proof of Claim is not recognized in the Recognition of Credits Judgment, the Trustee may still appeal such determination. *See* Castillo

Decl. ¶ 33; Bromley Decl. Ex. 5 at 111:12–18 (Q. "Is [paragraph 33 of your declaration] still accurate?"; A. "Yes.;" Q. "So you state that the Trustee may appeal such determination if the Proof of Claim is not recognized in the Recognition of Credits Judgment?;" A. "Yes."). Mr. del Castillo further confirmed that neither the provisional lists nor the Definitive List binds the Concurso Court, which must independently issue the Recognition of Credits Judgment, that the judgment "may or may not follow the *conciliador*'s proposal," and that it "is subject to appeal" by the affected creditor. Bromley Decl. Ex. 5 43:2–14, 44:5–7, 45:1–46:6. And if the Trustee exhausts its appellate rights, the Trustee may then seek relief through an *amparo* proceeding, a "constitutional remedy available for parties in judicial proceedings." *Id.* 126:13–127:9 ("In the context of an appeal against the Recognition of Credit[s] Judgment, an *amparo* is a remedy available after that resolution.").

57. Nor does the Trustee contend that the Concurso is unfair. Its own Mexican counsel, who represents the Trustee in the Concurso, conceded he does not believe the Concurso Judge is biased or lacks independence. *Id.* 24:23–25:7, 35:6–36:7 (A. "I have not said that she's biased . . . At this point given what I've seen, I don't think she's biased," Q. "And you don't believe she lacks independence?;" A. "I don't."). The Trustee's Mexican counsel also said that Mexican bankruptcy courts "can resolve the[] issues" before it, *id.* 36:16–37:16 and agreed that "*concurso* courts do routinely handle complex and sophisticated restructurings involving foreign creditors." *Id.* 39:6–40:17.[7]

[7] In addition, Mr. del Castillo said he has no information that TV Azteca influenced the appointment of the *conciliador*, and the Trustee has filed nothing either (i) seeking the *conciliador*'s removal or disqualification, or (ii) challenging any of the *conciliador*'s decisions as subject to bias or undue influence. *Id.* 34:14–35:5, 58:19–59:8. To the contrary, Mr. del Castillo has had direct access to both the *conciliador* and the Concurso Judge and her clerk, with whom he met to explain the substance of the Trustee's objections and the AlterBank Fraud Motion—a practice he described as common in Mexico. *Id.* 13:6–14:16, 16:16–19:7. Mr. del Castillo also conceded that recognized bondholders, including those he represents, "can appear in the case." *Id.* 113:17–25.

58. As explained above, being excluded from the Definitive List means the Trustee, unless and until it is recognized by the Concurso Court, does not have the status as a creditor who may vote on the Concurso plan and cannot request an *interventor*. Bromley Decl. Ex. 1 ¶¶ 7(c), 20, 23, 25–26, 29. Although the Definitive List does not identify the Trustee as a creditor, the Notes debt asserted in its Proof of Claim—principal and ordinary interest of approximately USD $532 million—remains in the Concurso through the claims filed by Beneficial Owners themselves. Bromley Decl. Ex. 1 ¶¶ 20–22; *see supra* ¶¶ 18–31. TV Azteca's objection to the amount of certain of those entries does not change the analysis: it is pending before the Concurso Court and may be contested there. *See supra* ¶ 27.

59. The Trustee cannot show any cognizable due process harm resulting from lack of recognition as a creditor in the Concurso. Even if the Trustee were ultimately not recognized as a creditor after exhausting the various available objections and appeals, there would be no harm because the Beneficial Owners—who hold the actual economic stake in the Notes and in whose interest the Trustee purports to act—retain full rights to participate in the Concurso directly. Many already have. The Trustee's corporate representative, Alex Chang, conceded that nothing in the Indenture bars holders from filing their own claims, and confirmed that certain Beneficial Owners have in fact filed their own claims in the Concurso. Bromley Decl. Ex. 6 at 23:4–24:7, 75:6–15. Therefore, neither the Trustee's nor the bondholders' rights are deprived by requiring the Beneficial Owners to participate in the Concurso on their own behalf instead of through the Trustee. U.S. courts have repeatedly recognized that a foreign proceeding recognized under chapter 15 need not emulate the U.S. procedure. *In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 95 (Bankr. S.D.N.Y. 2012) ("[I]t is well-accepted that a foreign nation's bankruptcy laws need not mirror those of the United States for its proceedings to be recognized under chapter 15." (citations

omitted)); *In re Compañía de Alimentos Fargo, S.A.*, 376 B.R. 427, 437 (Bankr. S.D.N.Y. 2007) ("A foreign bankruptcy system need not, however, 'mirror' United States law for comity to be granted, so long as foreign law is substantially similar and not repugnant to United States law." (citation omitted).

60. Moreover, while trustees of notes may sometimes be recognized as a common representative in a *concurso mercantil* proceeding on behalf of bondholder creditors, *see* Motion ¶ 3, the Indenture does not authorize the Trustee "to vote in respect of the claim of any Holder in any such [insolvency] proceeding." Giller Decl. Ex. 2 [D.I. 18-2] § 6.9(b). Even if the Trustee were recognized as a creditor, it would be unable to vote on any reorganization plan given the limits on its rights under the Indenture. *Id.* The Trustee's corporate representative conceded as much, testifying that the Trustee has no authority to vote on, consent to, or approve a plan. Bromley Decl. Ex. 6 19:15–23, 26:10–27:8, 38:16–21. This is fully consistent with creditors' expectations under Mexican law. Article 122 of the LCM provides that a "common representative" can file proofs of claim, but Article 161 Bis of the LCM provides that, for such common representative to vote on a "collective debt," either (i) the rules of the indenture governing that collective debt apply, or (ii) the common representative must hold a meeting of holders with at least a 75% quorum so that the holders may vote on how to proceed. Barrera Decl. Ex. A [D.I. 4-2] at 29; Bromley Decl. Ex. 3 (Translation of Article 161 Bis.).[8]

### *2. The Claimed Harm Is Neither Irreparable Nor Imminent*

61. The Definitive List that excludes the Trustee is a proposal subject to the Concurso Court's determination; it is not a final judgment. Reply Barrera Decl. ¶¶ 7(a), 8, 17. Moreover,

[8] Indeed, the Trustee's own Mexican-law expert, Mr. Juan Pablo Estrada Michel, conceded that Article 122 does not expressly define "common representative" to include a foreign indenture trustee. Bromley Decl. Ex. 7 (Estrada Dep. Tr.) 129:23–131:6. Mr. del Castillo likewise conceded that the Trustee's Proof of Claim does not refer to Article 122 or automatically establish the Trustee as a common representative of the holders. Bromley Decl. Ex. 5 74:18–23.

as the Trustee itself conceded, even after the Recognition of Credits Judgment, the Trustee can still object, including through an appeal of the Recognition of Credits Judgment or an incidental proceeding (*incidente*) before the Concurso Court. Motion ¶¶ 65, 81; Supp. Barrera Decl. ¶¶ 25–26. Accordingly, the harm arising from the Trustee's exclusion from the list, if there is one, cannot be characterized as irreparable.

62. In addition, the Trustee argues that the Debtor's "proposed *Concurso* plan would impose a combined 90% haircut on the Notes." Motion ¶ 66. But this "haircut" is not imminent, either. This "preliminary proposal" was set forth in the Debtor's initial Concurso plan that has not been voted on yet. Castillo Decl. Ex. 4 [D.I. 19-4] at 6. That initial proposal is not the final plan: the *conciliador* and TV Azteca may modify it before any plan is submitted to the Concurso Court, which can occur only after the Recognition of Credits Judgment determines the recognized creditors and the majorities required to approve a plan. Castillo Decl. ¶ 34; Motion ¶ 46 n.14; Barrera Decl. ¶ 27. To be actualized, the proposal requires the approval of a majority of the recognized creditors. Supp. Barrera Decl. ¶¶ 7(e), 36–39. Moreover, that vote is subject to judicial approval. *Id.* Given the risk's contingent nature, such alleged harm cannot be considered imminent. *See Lawsky* v. *Condor Cap. Corp.*, 2015 WL 4470332, at *11 (S.D.N.Y. July 21, 2015) (explaining—in the preliminary injunction context—that "because [defendant]'s perceived loss is contingent on several future events that are uncertain, he cannot establish that his alleged harm is either actual or imminent").

***3. Any "Emergency" Is of the Trustee's Own Making***

63. The Trustee asserts that "time is of the essence." Motion ¶ 65. However, the facts of this Chapter 15 Case and the related proceedings suggest that the time-sensitive nature of the relief sought by the Trustee is largely of its own making.

64. The SDNY Litigation has been pending since August 2022. *See supra* ¶¶ 33–34. The Trustee filed the Summary Judgment Motion in July 2026. *Bank of N.Y. Mellon*, No. 22-cv-08164 [D.I. 258, 259]; Giller Decl. Ex. 45 [D.I. 18-45]. The Concurso was declared in July 2026, and the Trustee has participated in it since at least August 17, 2026. Castillo Decl. Ex. 5 [D.I. 19-5]. Nothing in this sequence of events conveys the urgency that the Trustee is insisting on. Through the Motion, the Trustee recasts a proceeding that it has been aware of for months as an emergency in which every passing day matters.

65. In addition, the Trustee focuses on how if "the Concurso concludes before a decision on the Summary Judgment Motion, the Trustee will *never* be able to use that judgment in the Concurso." Motion ¶ 65 (emphasis added). As discussed above, despite what the Trustee claims, there is nothing preventing the Trustee from participating in the Concurso, and its participation does not depend on having an expedited judgment from the SDNY Litigation. Supp. Barrera Decl. ¶¶ 7(c), 25–26, 43; *see also* Castillo Decl. ¶ 35.

***4. The Forum Selection Clause Does Not Tip the Balance***

66. In 2023, the Beneficial Owners relied on the New York forum selection clause to bring an involuntary chapter 11 case against TV Azteca before this Court. *See In re TV Azteca, S.A.B. de C.V.*, 2023 WL 8059362, at *6 (Bankr. S.D.N.Y. Nov. 20, 2023). That forum selection clause is not sufficient to make New York the forum for this dispute. On July 6, 2026, the Concurso Court declared TV Azteca in *concurso mercantil*, and all of TV Azteca's creditors' claims, including the claims on the Notes, are now being reconciled in that single proceeding. Rodríguez Sánchez Decl. Ex. G [D.I. 3-7] at 83; Barrera Decl. ¶ 33. Whatever role the Indenture's forum selection clause plays in an ordinary contract dispute, it does not entitle a single creditor to have its claim liquidated outside a collective proceeding that chapter 15 is designed to protect.

67. The bondholders and the Trustee were well aware that their claims could be subject to a Mexican insolvency proceeding. The offering circular, through which the Debtor offered and marketed the Notes (the "Offering Circular"), expressly stated that there is a risk of limited payment of the Notes "[i]f TV Azteca or any of the Guarantors is declared bankrupt by a Mexican [c]ourt or becomes subject to a reorganization or *concurso mercantil* proceeding in a Mexican court," and that "uncertainty exists as to how a Mexican court would measure the claims of holders of the notes." Giller Decl. Ex. 51 [D.I. 18-51] at 31–32. The bondholders' insistence on the application of the forum selection clause cannot hold where the Offering Circular makes clear that the Notes may become subject to the jurisdiction of a *concurso mercantil*.

68. Moreover, the Second Circuit has addressed this precise situation in a Mexican *concurso*, holding that forum selection clauses "[do] not preclude a court from deferring on grounds of international comity to a foreign tribunal where deference is otherwise warranted." *Altos Hornos*, 412 F.3d at 429; *see id.* ("[R]egardless of the parties' pre-litigation agreement, once a party declares bankruptcy in a foreign state and a foreign court asserts jurisdiction over the distribution of assets, U.S. courts may defer to the foreign bankruptcy proceeding on international comity grounds"); *see also Ecoban Fin. Ltd.* v. *Grupo Acerero del Norte, S.A. de C.V.*, 108 F. Supp. 2d 349, 354 (S.D.N.Y. 2000) ("It is well settled in this Circuit that such forum selection clauses will not preclude the exercise of comity."), *aff'd sub nom. Ecoban Fin. Ltd.* v. *Altos Hornos de Mex., S.A. de C.V.*, 2 F. App'x 80 (2d Cir. 2001).

69. Courts outside the chapter 15 context have reached similar results. While "there is a strong policy favoring the enforcement of forum selection clauses in this Circuit, this policy is not so strong as to mandate that forum selection clauses be adhered to where the dispute is [a] core [bankruptcy proceeding]." *In re Iridium Operating LLC*, 285 B.R. 822, 837 (S.D.N.Y. 2002). In

fact, courts have declined to enforce forum selection clauses in the context of a chapter 11 proceeding due to "the public interest in centralization of bankruptcy proceedings weigh[ing] heavily." *Id.*; *see also Mercury Masonry Corp.* v. *Terminal Constr. Corp. (In re Mercury Masonry Corp.)*, 114 B.R. 35, 39 (Bankr. S.D.N.Y. 1990) ("Additionally, enforcement of the forum selection clause would violate the public's interest in centralizing bankruptcy proceedings in the bankruptcy court where the case is pending."); *Credit Suisse AG* v. *Appaloosa Inv. Ltd. P'ship I*, 2015 WL 5257003, at *11 (S.D.N.Y. Sept. 9, 2015) ("[E]nforcing the forum selection clause here would not serve the interests of justice. The palpable conflict between this action and the Bankruptcy Case evokes a public interest sufficient to outweigh the forum selection clause" where "[t]he rights that plaintiff seeks to enforce . . . undercut the power of the [insolvency proceeding] and jeopardize the legitimacy of the Debtors' reorganization"); *In re Penson Worldwide, Inc.*, 587 B.R. 6, 14 (Bankr. D. Del. 2018) ("In bankruptcy proceedings . . . forum selection clauses are generally unenforceable in core proceedings . . . . [C]ourts highlight 'the strong public policy favoring centralization of bankruptcy proceedings in a bankruptcy court.'" (citations omitted).

70. The case law that the Trustee cites for the contrary proposition is inapposite. Motion ¶ 72. The Trustee cites *Forbes IP (HK) Ltd.* v. *Media Bus. Generators, S.A. de C.V.*, 2024 WL 1743109, at *1 (S.D.N.Y. Apr. 23, 2024), and *Martinez* v. *Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014) for the proposition that public policy favors enforcement of forum selection clauses. Motion ¶ 72. But neither *Forbes* nor *Martinez* addressed the enforcement of forum selection clauses with respect to whether relief from the automatic stay in a chapter 15 action should be granted; indeed, neither arose in the bankruptcy context. *See Forbes*, 2024 WL 1743109, at *1 (addressing motion for injunctive relief in aid of arbitration and motions to seal); *Martinez*, 740 F.3d at 214 (evaluating decision on motion to dismiss for improper venue under Rule 12(b)(3) of

the Federal Rules of Civil Procedure). The Fifth Circuit's decision in *In re Vitro, S.A.B. de C.V.* is similarly inapplicable to the present case because the court was not deciding whether to grant relief from an automatic stay. *Ad Hoc Grp. of Vitro Noteholders* v. *Vitro S.A.B. de C.V. (In re Vitro S.A.B. de C.V.)*, 701 F.3d 1031, 1042–44 (5th Cir. 2012).

***5. The Trustee Overstates Its Likelihood of Success***

71. Although the Trustee asserts that its likelihood of success in the SDNY Litigation further supports lifting the stay, likelihood of success of a separate litigation is not among the *Sonnax* factors. Even if the likelihood of success were relevant, the Trustee overstates it by mischaracterizing the Debtor's defenses in the SDNY Litigation.

72. The Debtor disputes the amounts claimed in the SDNY Litigation, but the merits of that dispute are for the District Court or the Concurso Court, not for resolution on this Motion, and likelihood of success is not a *Sonnax* factor.

73. Nor does the Trustee's judicial estoppel argument supply cause. *See* Motion ¶ 76. The Trustee has already presented that argument to the District Court in reply on the Summary Judgment Motion, Giller Decl. Ex. 48 [D.I. 18-48] at 7–8, and its resolution belongs there or in the Concurso Court's claims process, not on a motion for stay relief. In any event, listing the Notes in the Concurso Petition, which also identified the pending litigation concerning the Notes, is not "clearly inconsistent" with disputing the amount due under the Indenture. Rodríguez Sánchez Decl. Ex. E [D.I. 3-5] at 922, 2805; *see New Hampshire* v. *Maine*, 532 U.S. 742, 750–51 (2001).

***6. The Trustee's Own Conduct Weighs Against Equitable Relief***

74. The Trustee's own conduct suggests that the Trustee is the one wielding the automatic stay as a sword. Specifically, the Trustee is attempting to use the automatic stay as a shield to protect its own share of assets vis-à-vis other creditors, while at the same time attempting

to gain advantage over those same creditors by undermining the Concurso and seeking redress in the SDNY Litigation.

75. The Trustee's reliance on *In re Residential Capital, LLC,* 2012 WL 3249641, at *1 (Bankr. S.D.N.Y. Aug. 7, 2012), and *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309 (Bankr. S.D.N.Y. 2001), is misplaced. *See* Motion ¶ 70. In *In re Residential Capital, LLC*, Judge Glenn's warning that "the stay is a shield, not a sword" was to prevent the debtor from using the automatic stay to bar a creditor from prosecuting its claims or counterclaims against the debtor while the debtor simultaneously proceeded with its own claim against that debtor. 2012 WL 3249641, at *1, *4. The Debtor is engaging in no such behavior. In *In re Kaplan Breslaw Ash*, the court found a bad-faith chapter 11 filing by a single-asset entity with no employees, income, or meaningful creditor body, in what was essentially a two-party dispute with its mortgagee. 264 B.R. at 333–35. In any event, each of the disputes the Trustee raises—including its challenges to the AlterBank Claim and the Numchi Claim and to the treatment of its own Proof of Claim—can be resolved in the Concurso, where creditors may challenge transactions as made in fraud of creditors, object to the recognition and ranking of claims, and appeal the Recognition of Credits Judgment. Castillo Decl. ¶¶ 7, 33; Supp. Barrera Decl. ¶¶ 11, 17, 25, 35.

## II. The Alternative and Ancillary Relief Should Also Be Denied

76. Waiving the fourteen-day stay is additional relief that must be justified separately. The Trustee concedes that remedies remain and that it will not enforce any judgment during the Chapter 15 Case. Motion ¶¶ 65, 75, 81.

## CONCLUSION

77. For the foregoing reasons, this Court should deny the Trustee's Motion.

Dated: November 20, 2026
New York, New York

Respectfully submitted,

*/s/ James L. Bromley*

Robert J. Giuffra, Jr.
Sergio J. Galvis
James L. Bromley
Christian P. Jensen
Arturo Carlos Schultz
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: giuffrar@sullcrom.com
galviss@sullcrom.com
bromleyj@sullcrom.com
jensenc@sullcrom.com
schultzart@sullcrom.com

*Counsel to the Foreign Representative*